**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    U.S. Department of Justice<br>    950 Pennsylvania Avenue, Northwest<br>    Washington, D.C. 20530<br><br>                    *Plaintiff*,<br><br><br>                    *v.*<br><br><br>HAMILTON P. FOX III, in his official capacity<br>as District of Columbia Disciplinary Counsel,<br><br>THEODORE (JACK) METZLER, in his<br>official capacity as District of Columbia<br>Senior Assistant Disciplinary Counsel,<br><br>D.C. OFFICE OF DISCIPLINARY COUNSEL,<br><br>ROBERT L. WALKER, in his official capacity<br>as Chair of the Board on Professional<br>Responsibility,<br><br>D.C. BOARD ON PROFESSIONAL<br>RESPONSIBILITY,<br><br>ANNA BLACKBURNE-RIGSBY, in her<br>official capacity as Chief Judge of the District<br>of Columbia Court of Appeals,<br><br>D.C. COURT OF APPEALS, and<br><br>THE DISTRICT OF COLUMBIA,<br><br>                    *Defendants*. | Civil Action No. __-____<br><br><br><br><br><br><br><br><br><br><br><br><br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1. The D.C. Court of Appeals' disciplinary authorities are punishing a former Department of Justice official for preparing a deliberative and pre-decisional draft letter that was never issued. No one disputes that the letter reflected the official's sincere view of the law and facts; instead, Defendants are punishing him over an internal disagreement that remains the subject of litigation nearly six years later. Weaponizing state bar discipline against Executive Branch attorneys in this way chills them from giving candid legal advice to others in the Executive Branch, including the President and Attorney General. To permit these proceedings is to allow state bar authorities to control the Executive Branch. That is not the law.

2. The Supremacy Clause of the U.S. Constitution bars States and the District of Columbia from regulating, obstructing, or otherwise interfering with Federal officials in the performance of their official duties. U.S. Const. art. VI, cl. 2; *see McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819). Neither any State nor the District of Columbia may exclude the Federal Government "from the exercise of any authority conferred upon it by the Constitution, obstruct its authorized officers against its will, or withhold from it, for a moment, the cognizance of any subject which that instrument has committed to it." *Tennessee v. Davis*, 100 U.S. 257, 263 (1879).

3. The President is entitled to absolute immunity "for conduct within his exclusive sphere of authority," *Trump v. United States*, 603 U.S. 593, 609 (2024), because there "exists the greatest public interest in providing the President with the maximum ability to deal fearlessly and impartially with the duties of his office," *id.* at 611 (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 752 (1982)) (internal quotation marks omitted). The President's constitutionally required immunity would provide little protection if Executive Branch attorneys could be targeted for internal Executive Branch deliberations.

1

4.      The D.C. Office of Disciplinary Counsel, Disciplinary Counsel Hamilton P. Fox III, Senior Assistant Disciplinary Counsel Theodore (Jack) Metzler, and the D.C. Court of Appeals Board on Professional Responsibility are transgressing these bedrock constitutional principles by punishing former Assistant Attorney General Jeffrey Bossert Clark for his official acts as a Senate-confirmed Executive Branch attorney.

5.      Defendants are punishing Mr. Clark because he tried to persuade his superiors within the Department of Justice that they should issue a draft letter that he felt reflected the actual law and facts about the 2020 election.  The Board acknowledged that the punishment was not premised on "whether [Mr. Clark] believed there were problems with the election" but instead "whether the *Justice Department*" agreed with his views.  Report & Recommendation of the Board of Professional Responsibility at 78, *In the Matter of Jeffrey B. Clark*, Bd. Docket No. 22-BD-039, Disc. Docket 2021-D193 (July 31, 2025) (Board Recommendation).

6.      But D.C. disciplinary authorities may not punish a United States official for disagreeing with a superior or coworker or for sharing an opinion just because those disciplinary authorities disagree with it.

7.      As applied to Mr. Clark, Defendants' disciplinary proceedings violate the Supremacy Clause by unlawfully regulating and discriminating against the Federal Government.

8.      The McDade–Murtha Amendment, 28 U.S.C. § 530B, which subjects Federal Government attorneys to state and local ethical standards, does not give States and the District of Columbia carte blanche to punish Federal officials for internal Executive Branch deliberations.

9.      Defendants Fox's and the Office of Disciplinary Counsel's investigation and prosecution of Mr. Clark were improperly based on their disagreement with Mr. Clark's performance of his discretionary Executive Branch duties, particularly with respect to a pre-

decisional and deliberative document about potential election fraud in Georgia, which remains the subject of criminal investigation and civil litigation years later.

10. Defendant Board on Professional Responsibility's adjudication of the charges against Mr. Clark is similarly unlawful.

11. D.C. disciplinary authorities have no authority to impede, obstruct, and punish a Federal Executive Branch official for drafting and advocating for the dissemination of a pre-decisional and deliberative draft document, not to mention other privileged Executive Branch deliberations.

12. Defendants have unlawfully regulated the Federal Government by treating some Federal Government attorneys differently than other Federal Government attorneys based on factors other than sound judicial administration.

13. For example, Defendants treated convicted felon and former FBI attorney Kevin Clinesmith far more leniently than Mr. Clark even though Mr. Clinesmith pled guilty to falsifying a document used to obtain a surveillance warrant against a political campaign advisor, Carter Page, as part of the discredited Crossfire Hurricane investigation. Although Defendants recommended that Mr. Clinesmith get a slap on the wrist (a retroactive one-year suspension) for the lies for which he pled guilty, they recommended without precedent that Mr. Clark be *disbarred* for "attempting to tell a lie." *Board Recommendation* at 42. But unlike Mr. Clark's pre-decisional and deliberative draft letter premised on his actual belief that was never issued, Mr. Clinesmith's acts inflicted actual harm on an American citizen, Mr. Page, by suborning unlawful surveillance in violation of the Fourth Amendment.

14. Even two members of the Board disagreed with its draconian punishment against Mr. Clark, admonishing the majority that its recommendation "must be guided by the imperative

3

to avoid inconsistent dispositions for comparable conduct." *See* Separate Recommendation as to Sanction at 1, *In the Matter of Jeffrey B. Clark*, Bd. Docket No. 22-BD-039, Disc. Docket 2021-D193 (July 31, 2025) (Separate Recommendation) (internal quotation marks and citation omitted).

15.    Defendants' practice of partial and differential treatment of Federal Government attorneys based on factors other than sound judicial administration is textbook unlawful regulation of the Federal Government.

16.    During and after prosecuting Mr. Clark, one member of the Office of Disciplinary Counsel, Assistant Disciplinary Counsel Jack Metzler, posted dozens of ideological messages demonstrating his and the Office of Disciplinary Counsel's bias and poor judgment.

17.    For example, while serving as Assistant Disciplinary Counsel, Mr. Metzler—

- Posted that "It is *unethical* to engage with anti-vaxxers and people who claim there is a debate about birthright citizenship.  Some ideas are so toxic the only permissible response is shunning and perhaps ridicule" (emphasis added),

- Called Justice Alito a "Natural Born Fool,"

- Explained that "every Justice except Jackson is dead to [him],"

- Bemoaned that "We are so cooked" on one of many occasions that the D.C. Circuit recently vacated an order by Chief Judge Boasberg, and

- Quipped that "SCOTUS be like oh we don't care if u disappear people off the street."

18.    On Mr. Metzler's very same social media feed, he solicited applications to join the Office of Disciplinary Counsel.

19.    The brazen partisan behavior of members of the Office of Disciplinary Counsel underscores the Office's bias in prosecuting Mr. Clark and other Federal officials.

20.     Other partisans have also boasted that bar disciplinary proceedings should be used against those they see as political rivals.

21.     For example, in a recent interview, former FBI Special Agent Michael Feinberg threatened that President Donald J. Trump's former lawyer, Dr. John Eastman, was "disbarred and the appeal of his disbarment was denied, so [Acting Attorney General] Todd Blanche should watch his step."   *See* Jeff Clark (@JeffClarkUS), X (May 4, 2026, 11:34 AM), https://x.com/jeffclarkus/status/ 2051324471944815068.

22.     Similarly, in the lead up to his 2020 Democrat primary campaign in which he failed to receive a single pledged elector, progressive activist Tom Steyer "launch[ed] a campaign to try to disbar Attorney General William P. Barr from practicing law."  R. Bade, "Tom Steyer, proponent of impeaching Trump, pushes campaign to disbar attorney general," Wash. Post (May 3, 2019), https://www.washingtonpost.com/politics/tom-steyer-proponent-of-impeaching-trump-pushes-campaign-to-disbar-attorney-general/2019/05/03/763ee6e2-6dc4-11e9-9d56-1c0cf2c7ac04_story.html.

23.     Moreover, legal activist groups have organized to transparently abuse the state bar disciplinary process.   For example, a "dark money group with ties to Democratic Party heavyweights" is spending millions of dollars "to expose and try to disbar more than 100 lawyers who worked on Donald Trump's post-election lawsuits."  L. Markay & J. Swan, *Scoop: High-powered group targets Trump lawyers' livelihoods*, Axios (Mar. 7, 2022), https://www.axios.com/2022/03/07/trump-election-lawyers-disbar.  This group's advisor said that the idea is to "not only bring the grievances in the bar complaints, but shame them and make them toxic in their communities and in their firms" and bragged that "the littler fish are probably more vulnerable to what we're doing.  You're threatening their livelihood."  *Id.*  This group has filed

over ninety complaints, many of which target Federal officials. *See* "Legal Actions," Legal Accountability Center (accessed May 12, 2026), https://legalaccountability.org/actions.

24. These calls for the weaponization of state bar disciplinary processes chill the zealous advocacy and candor of Federal officials, interfering with the President's and Attorney General's prerogatives under Article II of the U.S. Constitution, including the President's duty to take care that our Nation's laws be faithfully executed. U.S. Const. art. II, § 3.

25. So too does the actual weaponization of the process. Presently, Defendants Fox and the Office of Disciplinary Counsel are prosecuting another Federal Government official, Mr. Edward R. Martin, Jr., on the theory that he violated his oath to support the U.S. Constitution by sending a letter to Georgetown University Law School about its teaching and promotion of Diversity, Equity, and Inclusion (DEI) ideology in his official capacity as interim U.S. Attorney for the District of Columbia. The Office of Disciplinary Counsel and the Board on Professional Responsibility, as D.C. institutions, have no authority to decide whether a Federal Government attorney—no less the interim U.S. Attorney for the District of Columbia—is upholding his Oath of Office or whether his official acts comport with the Constitution.[1]

26. Defendants have treated Federal Government attorneys differently than non-Federal Government attorneys. As far as the United States is aware, Defendants have *never* punished a non-Federal Government attorney for drafting or attempting to disseminate a deliberative and pre-decisional draft document, or in any comparable circumstances.

---

[1] The United States reserves the right to amend this Complaint to include claims relating to the unlawful prosecution and proceedings against Mr. Martin but has not done so given the pending motion to remand in the matter that Mr. Martin removed to Federal court. *See generally* Statement of Interest of the United States of America, *In re Edward R. Martin, Jr.*, No. 1:26-mc-00042 (CRC), Dkt. No. 6 (D.D.C. May 8, 2026) (explaining the United States's distinct interests in ensuring a Federal forum where the Office of Disciplinary Counsel targets a Federal officer based on his status as such and chills Federal employees in carrying out their official duties).

27. Two members of the Board on Professional Responsibility, including Defendant Robert L. Walker (who is now the Chair of the Board), observed in Mr. Clark's case, "We have not identified any case in which the Court disbarred a respondent over a single dishonest statement supported by a false citation." *Separate Recommendation* at 4. And the draft letter for which Defendants prosecuted Mr. Clark does not even fit that characterization.

28. Defendants' conduct harms the United States by violating the doctrine of separation of powers, depriving the Attorney General of control over Department of Justice attorneys, and chilling the candid legal advice of Government attorneys who might provide an opinion with which the D.C. Board on Professional Responsibility happens to disagree.

29. These harms are compounded given the fact that typically the Department of Justice (and the Executive Branch) do not know when the Office of Disciplinary Counsel is investigating a Federal Government attorney unless and until that attorney notifies the Department of Justice.

30. Accordingly, Defendants are violating the Supremacy Clause and Article II of the U.S. Constitution by unlawfully regulating and discriminating against the Federal Government and interfering with Executive Branch functions.

31. The United States asks this Court to (i) enter a judgment declaring that Defendants' investigations, proceedings, adjudications, and findings against Mr. Clark violate the Supremacy Clause and Article II and are therefore void; (ii) issue an injunction that prohibits Defendants, as well as their successors, agents, and employees, from commencing or maintaining any investigations, proceedings, or disciplinary actions against Mr. Clark based on his conduct as a Federal Government attorney; (iii) award the United States its costs and fees in this action; and (iv) award other relief as the Court deems just.

**JURISDICTION AND VENUE**

32.     The Court has subject-matter jurisdiction under 28 U.S.C. § 1345 because this is a civil action commenced by the United States.  The Court also has subject-matter jurisdiction under 28 U.S.C. § 1331 because this suit includes claims that arise under the laws of the United States.  The United States seeks declaratory relief under 28 U.S.C. § 2201 as well as injunctive relief pursuant to this Court's equitable powers.  *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015).

33.     Venue is appropriate in this judicial district under both 28 U.S.C. § 1391(b)(1) and § 1391(b)(2) because Defendants reside in this district and a substantial part of the events giving rise to these claims occurred in this district.

**PARTIES**

34.     Plaintiff, the United States of America, sues on its own behalf, on behalf of its citizens, and on behalf of its executive departments and agencies.  One of its executive agencies is the Department of Justice, which employs thousands of Federal Government attorneys.

35.     At all times relevant to this Complaint, Jeffrey Bossert Clark was a Senate-confirmed Officer of the United States and Federal Government attorney.  He served at the Department of Justice as Assistant Attorney General of the Environmental and Natural Resources Division and Acting Assistant Attorney General of the Civil Division.  Mr. Clark is not a party.

36.     Defendant the District of Columbia is a governmental body corporate and has authorized by law the D.C. Court of Appeals to issue and enforce rules of ethics.

37.     Defendant D.C. Court of Appeals oversees the D.C. Bar, Office of Disciplinary Counsel, and Board on Professional Responsibility and is the highest court of the District of Columbia.  The D.C. Court of Appeals imposes final discipline and retains review authority.

8

38.    Defendant Board on Professional Responsibility is appointed by the D.C. Court of Appeals and serves as its disciplinary arm.  The Board is responsible for the adjudication of disciplinary cases and the administration of the attorney discipline system in the District of Columbia.  The Board's Hearing Committees preside over disciplinary hearings and are appointed by the Board.

39.    Defendant Office of Disciplinary Counsel of the District of Columbia is the chief prosecutor for attorney disciplinary matters involving active or inactive attorneys who are members of the D.C. Bar.  The Office of Disciplinary Counsel investigates complaints and allegations of ethical misconduct, initiates disciplinary actions, and submits formal charges.

40.    Defendant Hamilton P. Fox III is the D.C. Disciplinary Counsel and therefore leads the Office of Disciplinary Counsel.  He has served in this role since June 7, 2017, leading the investigation and prosecution of Mr. Clark.  He also served as Disciplinary Counsel during the investigation and prosecution of former interim U.S. Attorney for the District of Columbia Edward R. Martin, Jr.  Defendant Fox is being sued in his official capacity.

41.    Defendant Theodore (Jack) Metzler is a Senior Assistant Disciplinary Counsel and has entered his appearance in Mr. Clark's disciplinary matter.  While he was involved in the prosecution of Mr. Clark, Mr. Metzler made numerous vitriolic social media posts attacking Justices of the United States, Federal Judges, and those who have a different viewpoint than him. Defendant Metzler is being sued in his official capacity.

42.    Defendant Robert L. Walker is the Chair of the D.C. Board on Professional Responsibility.  When the Board on Professional Responsibility made its recommendation to disbar Mr. Clark, Chair Walker (who was not the Chair at the time) joined a separate

9

recommendation that explained that the Board's recommendation was unprecedented.  Chair Walker is being sued in his official capacity.

43.    Defendant the Honorable Anna Elizabeth Blackburne-Rigsby is the Chief Judge of the D.C. Court of Appeals.  As Chief Judge, Hon. Blackburne-Rigsby supervises the internal administration of the D.C. Court of Appeals.  Hon. Blackburne-Rigsby is being sued in her official capacity.

## CONSTITUTIONAL AND STATUTORY BACKGROUND

44.    The Supremacy Clause of the U.S. Constitution provides that the "Constitution, and the Laws of the United States … shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.

45.    The Supreme Court has "interpreted the Constitution as prohibiting States from interfering with or controlling the operations of the Federal Government."  *United States v. Washington*, 596 U.S. 832, 838 (2022) (discussing *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819)).

46.    D.C. courts have been treated as local, not Federal, institutions.  *Palmore v. United States*, 411 U.S. 389, 407 (1973); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 463–64 (1983).

47.    States may not regulate agents of the United States in the lawful performance of their duties, and agents of the United States cannot be liable to answer to state courts for the performance of those duties.  *Cunningham v. Neagle*, 135 U.S. 1, 75–76 (1890).

48.    The intergovernmental immunity doctrine bars state laws or actions that regulate the United States directly or discriminate against the Federal Government or those with whom it deals.  States may not single out the Federal Government for unfavorable treatment.  *United States v. Washington*, 596 U.S. 832, 838–39 (2022).

49. A direct regulation is one that "lays hold of" Federal officers "in their specific attempt to obey orders and requires qualifications in addition to those that the [Federal] Government has pronounced sufficient." *Johnson v. Maryland*, 254 U.S. 51, 57 (1920). In other words, a direct regulation regulates the Government qua Government.

50. Accordingly, under the Supremacy Clause, "the activities of the Federal Government are free from regulation by any state" unless Congress *clearly* authorizes state regulation. *Hancock v. Train*, 426 U.S. 167, 178 (1976) (citation omitted).

51. The McDade–Murtha Amendment, 28 U.S.C. § 530B, does not clearly authorize States or the District of Columbia to regulate Federal Government attorneys in a manner that interferes with the Executive Branch's Article II prerogatives or the executive privilege. It subjects Federal Government attorneys to state laws and rules only "to the same extent and manner as other attorneys in that State" and provides that the Attorney General shall assure compliance with those laws and rules.[2]

52. Therefore, in 2016, the Tenth Circuit correctly held that a state rule of ethics is invalid when it conflicts with Federal law, and the U.S. Supreme Court denied the State's petition for a writ of certiorari. *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 923 (10th Cir. 2016), *cert. denied*, 583 U.S. 905 (2017). In its opinion, the Tenth Circuit explained that New Mexico's grand-jury subpoena rule was conflict preempted because it conflicted with the constitutional role of the grand jury, *id.* at 928, and, crucially, that even when a rule is within the scope of the McDade Amendment, the rule is impermissible to the extent it conflicts with Federal law, *id.* at 921–22.

---

[2] Similarly, longstanding Department of Justice policy provides that the McDade Amendment "should not be construed in any way to alter federal substantive, procedural, or evidentiary law." 28 C.F.R. § 77.1(b).

11

## RELEVANT D.C. STATUTES AND
## <u>RULES OF PROFESSIONAL CONDUCT</u>

53.     D.C. Code § 11-2501(a) provides that the D.C. Court of Appeals shall "make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion," and § 11-2502 provides that the D.C. Court of Appeals "may censure, suspend from practice, or expel a member of its bar" for enumerated reasons.

54.     D.C. Bar Rule XI provides that the D.C. Court of Appeals may impose discipline on an attorney upon recommendation by the Board on Professional Responsibility.

55.     D.C. Rules of Professional Conduct Rule 2.1 ("Advisor") provides that "[i]n representing a client, a lawyer shall exercise independent professional judgment and render candid advice.  In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social, and political factors, that may be relevant to the client's situation."

56.     D.C. Rules of Professional Conduct Rule 8.4(a) provides that it is professional misconduct for a lawyer to "[v]iolate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

57.     D.C. Rules of Professional Conduct Rule 8.4(c) provides that it is professional misconduct for a lawyer to "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

58.     D.C. Rules of Professional Conduct Rule 8.4(d) provides that it is professional misconduct for a lawyer to "[e]ngage in conduct that seriously interferes with the administration of justice."

## FACTUAL ALLEGATIONS

### Mr. Clark's Pre-Decisional and Deliberative Draft
### "Georgia Proof of Concept" Letter

59.     Shortly after the presidential election on November 3, 2020, Mr. Clark, in his capacity as Acting Assistant Attorney General for the Civil Division, prepared the "Georgia Proof of Concept" letter on which the Office of Disciplinary Counsel's proceedings were premised.

60.     The draft letter was marked "Pre-Decisional & Deliberative/Attorney-Client or Legal Work Product" and had placeholders for a letterhead and publication date.

61.     The draft letter was watermarked "FOR INTERNAL SJC USE ONLY DO NOT DISTRIBUTE." *Board Recommendation* at 14.

62.     The draft letter was never sent to its potential ultimate recipients, the Governor of Georgia, Speaker of the Georgia House of Representatives, and President Pro Tempore of the Georgia Senate.

63.     The unsent draft letter would have conveyed that the Department of Justice was investigating irregularities in the 2020 presidential election and that these investigations "identified significant concerns that may have impacted the outcome of the election in multiple States, including the State of Georgia." *Board Recommendation* at 1.

64.     It is customary for draft documents intended for potential future dissemination to describe anticipated actions which have not yet happened (and may never happen).

65.     It is also customary for draft documents to include statements that are subject to revision upon review, including review by the signer or any cosigners of the documents.

66.     Mr. Clark shared his opinion in favor of issuing the letter with the two then-highest-ranking members of the Department of Justice, Acting Attorney General Jeffrey Rosen and Principal Associate Deputy Attorney General Richard Donoghue.

13

67.     Messrs. Rosen and Donoghue disagreed with Mr. Clark, so they did not issue the letter.

68.     Several former Attorneys General, including the Honorable William Barr, Honorable Jeff Sessions, and the Honorable Michael Mukasey, have explained that Defendants' conduct with respect to Mr. Clark is unconstitutional and creates serious separation-of-powers concerns.  *See* Amicus Curiae of Former United States Attorneys General in Support of Respondent Jeffrey B. Clark, Esquire's Response to Show Cause Order at 1–2, *In the Matter of Jeffrey B. Clark*, Bd. Docket No. 22-BD-039, Disc. Docket 2021-D193 (Sept. 25, 2025).

### Defendants' Investigation and Prosecution of Mr. Clark<br>Based on Pre-Decisional and Deliberative Government Work Product

69.     On June 29, 2022, Defendants Fox and the Office of Disciplinary Counsel filed a specification of charges instituting disciplinary proceedings against Mr. Clark based on the "Georgia Proof of Concept" letter and Mr. Clark's internal Executive Branch deliberations. Specification of Charges, *In the Matter of Jeffrey B. Clark*, Disc. Docket 2021-D193 (June 29, 2022) (Specification of Charges).

70.     Defendants Fox and the Office of Disciplinary Counsel alleged that Mr. Clark violated D.C. Rules of Professional Conduct Rules 8.4(a), (c), and (d).  *Specification of Charges* at 9.

71.     Defendants' disciplinary proceedings against Mr. Clark have elapsed over three years.  Although the conduct at issue occurred during Mr. Clark's government service in 2020, it is now 2026 and the proceedings are still ongoing.

72.     The Board on Professional Responsibility's Hearing Committee recommended that the Board recommend Mr. Clark for a two-year suspension.

73.    The Board on Professional Responsibility rejected the Hearing Committee's recommendation; instead, the Board recommended disbarment.

74.    The Board concluded that Mr. Clark violated D.C. Rules of Professional Conduct Rules 8.4(a) and (c) but not Rule 8.4(d).

75.    The Board on Professional Responsibility premised its conclusion as to Mr. Clark based on the apparent disagreement between Mr. Clark and others at the Department of Justice, saying that the key question was "*not* whether [Mr. Clark] believed there were problems with the election" but rather "whether the *Justice Department*" agreed with his view.    *Board Recommendation* at 78.

76.    In doing so, the Board on Professional Responsibility evaluated one Assistant Attorney General's pre-decisional and deliberative views against the views of the "Justice Department"—and is attempting to discipline him because those inchoate views differed from the agency's final views.

77.    In other words, Defendants are prosecuting and punishing Mr. Clark merely because others at the Department of Justice disagreed with his draft proposal—an action for which the Department of Justice and the Executive Branch themselves chose not to punish him.

### Prosecution of Former Interim U.S. Attorney Ed Martin

78.    Presently, Defendants Fox and the Office of Disciplinary Counsel are prosecuting the former interim U.S. Attorney for the District of Columbia, Ed Martin, for official acts he took in his capacity as a Federal Government attorney.

79.    Defendants Fox and the Office of Disciplinary Counsel initiated their prosecution of Mr. Martin after Mr. Martin sent inquiries to them about their history of weaponizing the disciplinary process.

15

80.     Defendants Fox and the Office of Disciplinary Counsel based their prosecution of Mr. Martin in part on Mr. Martin's official letter to Georgetown University Law Center inquiring about its teaching and promotion of DEI ideology in the light of recent Executive Branch and Supreme Court decisions relating to race-based discrimination at institutions of higher learning.

81.     Defendants Fox and the Office of Disciplinary Counsel prosecuted Mr. Martin in part based on their own interpretation of the U.S. Constitution.

82.     Specifically, they charged that "Mr. Martin knew or should have known, that as a government official, his conduct violated the First and Fifth Amendments to the Constitution of the United States."   Specification of Charges at 4, *In the Matter of Edward R. Martin, Jr.*, Disciplinary Dkt. No. 2025-D047 (Mar. 6, 2026).

83.     Defendants Fox's and the Office of Disciplinary Counsel's retaliatory prosecution of Mr. Martin underscores their pattern and practice of bad-faith and harassing prosecutions of Federal Government attorneys based on viewpoint and political affiliation.

### Defendants' Differential Treatment of Federal Government Attorneys

84.     Defendants are unlawfully attempting to regulate the Federal Government by leveraging the disciplinary process against Federal Government attorneys vis-à-vis other Federal Government attorneys differentially based on factors other than the disinterested administration of justice, like viewpoint and political affiliation.

85.     For example, Defendants Fox, Office of Disciplinary Counsel, and Board on Professional Responsibility treated former FBI agent Kevin Clinesmith far more leniently than Mr. Clark—even though Mr. Clinesmith pled guilty to a felony for materially altering a document that he knew would be presented to obtain a surveillance warrant against campaign advisor Carter Page as part of the thoroughly discredited Crossfire Hurricane investigation.   Report & Recommendation Approving Petition for Negotiated Discipline at 2-4, *In the Matter of Kevin*

16

*Clinesmith*, D.C. App. No. 21-BG-018, Bd. Docket No. 21-ND-004, Disc. Docket No. 2019-D305 (Aug. 11, 2021) (Clinesmith Recommendation).

86.    Specifically, after the Michigan Bar automatically suspended Mr. Clinesmith's bar license based on his guilty plea, the Office of Disciplinary Counsel delayed the automatic suspension of his license by five months. *Clinesmith Recommendation* at 17–18.  The Board on Professional Responsibility then retroactively suspended Mr. Clinesmith's license for just one year and restored his license even before he completed his term of probation.  *Id.* at 8.

87.    By contrast, the Board on Professional Responsibility seeks to *disbar*—not merely suspend—Mr. Clark despite the absence of any criminal conviction or false statement made to any court.  It does so for Mr. Clark's allegedly "attempting to make a false statement" in a pre-decisional and deliberative draft agency document that was never sent and never resulted in any actual harm. *Board Recommendation* at 34–35.

88.    Defendants imposed a harsher punishment on Mr. Clark than on Mr. Clinesmith even though Mr. Clinesmith suborned the unlawful surveillance of an American citizen in violation of the Fourth Amendment.

### Defendants' Discrimination Against Federal Government Attorneys

89.    Defendants are unlawfully discriminating against the Federal Government by leveraging the disciplinary process against Federal Government attorneys differently than against non-Federal Government attorneys.

90.    On information and belief, Defendants have *never* punished a non-Federal Government attorney for a deliberative and pre-decisional draft document like the "Georgia Proof of Concept" letter, or any similar document or conduct.

17

91.    Two members of the Board on Professional Responsibility observed in Mr. Clark's case, "We have not identified any case in which the Court disbarred a respondent over a single dishonest statement supported by a false citation." *Separate Recommendation* at 4.

### Defendants' History of Partisan Politics

92.    At least some officers at the Office of Disciplinary Counsel routinely attack attorneys, including Justices of the United States, Federal Judges, and those with differing viewpoints, on social media.

93.    Assistant Disciplinary Counsel Theodore "Jack" Metzler was involved in the prosecution of Mr. Clark; he noticed an appearance in Mr. Clark's matter on June 16, 2023.

94.    At the same time, Mr. Metzler was sharing polemical partisan messages on social-media websites, including insults directed at Justices of the Supreme Court. *See, e.g.*, Archived Twitter Feed of Jack Metzler (@scotusplaces), Archive.org (archived April 16, 2023), https://web.archive.org/web/20230416112312/https://twitter.com/SCOTUSPlaces.

95.    While serving as Assistant Disciplinary Counsel, two months before noticing an appearance in Mr. Clark's matter, Mr. Metzler posted on Twitter.com the following message attacking "Trump judges."



**Figure 1 — Jack Metzler April 8, 2023 Tweet**

96.    Around the same time, Mr. Metzler shared the following picture attacking Justice Clarence Thomas, now the second-longest-serving Supreme Court Justice in American history.



**Figure 2 — Jack Metzler April 14, 2023 Tweet**

97.    Mr. Metzler posts polemical political messages to this day despite actively serving in the Office of Disciplinary Counsel.  He now posts those messages on Bluesky, an alternative to X that is predominately associated with the political left.

98.    Using Bluesky, Mr. Metzler has attacked Justice Samuel Alito on many occasions, calling him a "Natural Born Fool."

99.    Mr. Metzler also posted the following disparaging messages about Justice Alito:



**Figure 3 — Jack Metzler June 25, 2025 Bluesky Posts**

19

100.    Mr. Metzler posted that "SCOTUS be like oh we don't care if u disappear people off the street" on June 3, 2025.

101.    Mr. Metzler said that "every Justice except [Justice] Jackson is dead to [him]" on November 6, 2025.

102.    Mr. Metzler also said that it is "unethical to engage with … people who claim there is a debate about birthright citizenship"—a position taken by the current Administration and many Congressmembers and argued by the Solicitor General of the United States before the Supreme Court.



**Figure 4 — Jack Metzler February 2025 Bluesky Posts**

103.    Mr. Metzler made all these posts while serving as Assistant Disciplinary Counsel. In fact, Mr. Metzler used this same account to recruit others to apply to join the Office of Disciplinary Counsel.



**Figure 5 — Jack Metzler Dec. 3, 2025 Bluesky Post**

104.    These posts by Assistant Disciplinary Counsel Metzler, who was directly involved in the proceedings against Mr. Clark, illustrate the bad-faith and harassing nature of Defendants' conduct toward Mr. Clark.

105.    These posts also reflect the Office of Disciplinary Counsel's partisan and ideological bias and motivation to regulate the Federal Government on those bases.

## CLAIMS FOR RELIEF

### Count 1 — Violation of the Supremacy Clause
### (Unlawful Regulation of the Federal Government)

106.    The United States incorporates and reasserts all allegations stated above.

107.    Defendants' enforcement of the D.C. Rules of Professional Conduct against Mr. Clark with respect to Mr. Clark's pre-decisional and deliberative work as Assistant Attorney General constitutes unlawful regulation of the Federal Government.

108.    States and the District of Columbia do not have the inherent authority to regulate Federal officials for their official acts, including internal Executive Branch deliberations.

109.    Defendants' application of D.C. Rules of Professional Conduct Rules 8.4(a), (c), and (d) with respect to Mr. Clark constitutes unconstitutional regulation of Federal officials by subjecting official Executive Branch deliberations to state and local control.

110.    Therefore, Defendants' investigations, proceedings, adjudications, and findings against Mr. Clark violate the intergovernmental immunity doctrine.

111.    Moreover, the fact that Defendants treat some Federal Government attorneys more harshly than others based on factors other than sound judicial administration, such as political affiliation and viewpoint, demonstrates their unlawful regulation of the Federal Government. Compare, for example, Defendants' treatment of Mr. Clark with their treatment of Mr. Clinesmith.

21

112.    The Federal Government is harmed by any ongoing investigations, proceedings, and threats of discipline against Mr. Clark and other current and former Federal Government attorneys based on their official acts.

113.    In particular, the United States is harmed by Defendants' bare efforts to probe the Executive Branch's internal deliberations and prosecute Federal Government officials based on them.

114.    Defendants' enforcement actions occurred irrespective of Mr. Clark's intent in providing pre-decisional and deliberative work.  This has the effect of chilling the advice Federal Government attorneys give on controversial matters out of fear of disciplinary complaints.

115.    This type of direct regulation of the Federal Government by state bar authorities is impermissible under the Supremacy Clause.

116.    Accordingly, Defendants' investigations, proceedings, adjudications, and findings with respect to Mr. Clark are invalid under the Supremacy Clause of the U.S. Constitution.

### Count 2 — Violation of the Supremacy Clause
### (Unlawful Discrimination Against the Federal Government)

117.    The United States incorporates and reasserts all allegations stated above.

118.    Defendants' differential treatment of Federal Government attorneys vis-à-vis non-Federal Government attorneys, including private attorneys and state or local government attorneys, constitutes unlawful discrimination against the Federal Government.

119.    Defendants' application of D.C. Rules of Professional Conduct Rules 8.4(a), (c), and (d) with respect to Mr. Clark for his pre-decisional and deliberative work as Assistant Attorney General constitutes unlawful discrimination against the Federal Government.

120.    On information and belief, Defendants have never penalized a state, local, or private attorney for an unsent pre-decisional and deliberative draft document.

121. Defendants have never recommended for disbarment a state, local, or private attorney for allegedly "attempting to lie" once. *See Separate Recommendation* at 3 ("We have not identified any case in which the Court disbarred a respondent over a single dishonest statement supported by a false citation." (citations omitted)).

122. Accordingly, Defendants have subjected Mr. Clark to differential treatment.

123. Therefore, Defendants' investigations, proceedings, adjudications, and findings against Mr. Clark violate the intergovernmental immunity doctrine.

124. The Federal Government is harmed by any ongoing investigations, proceedings, and threats of discipline against Mr. Clark and other current and former Government attorneys.

125. In particular, the United States is harmed by Defendants' bare efforts to probe the Executive Branch's internal deliberations and prosecute Federal Government officials based on them.

126. Accordingly, Defendants' investigations, proceedings, adjudications, and findings against Mr. Clark are invalid under the Supremacy Clause of the U.S. Constitution.

## Count 3 — Violation of Article II
### (Interference with Executive Authority)

127. The United States incorporates and reasserts all allegations stated above.

128. Article II of the U.S. Constitution vests all the Executive Power in the President of the United States and requires that the President "take Care that the Laws be faithfully executed."

129. The Constitution assigns to the President and officers acting under the President's supervision the authority to administer and enforce Federal law and direct the Executive Branch.

130. Defendants are prosecuting and punishing Mr. Clark for a pre-decisional and deliberative internal draft letter that was never issued.

131.   Defendants' disciplinary proceedings based on Executive Branch deliberations are unlawfully intruding upon the President's and Attorney General's core Article II prerogatives.

132.   Defendants' actions impair the President's and Attorney General's ability to ensure the faithful execution of Federal law by subjecting Federal Executive Branch decisionmaking to local control.

133.   The McDade–Murtha Amendment, 28 U.S.C. § 530B, does not authorize Defendants to punish Government attorneys for internal Executive Branch deliberations.

134.   The canon of constitutional avoidance also compels construing 28 U.S.C. § 530B not to authorize Defendants to punish Federal Government attorneys for internal Executive Branch deliberations, because the contrary construction would violate Article II by permitting States and the District of Columbia to exercise supervisory or coercive authority over internal Federal executive deliberations that the Constitution commits to the President and subordinate Federal officers.

135.   The Executive Branch is harmed by Defendants' intrusion into its internal affairs.

136.   Accordingly, Defendants' investigations, proceedings, adjudications, and findings against Mr. Clark are invalid under Article II of the U.S. Constitution.

## <u>REQUEST FOR RELIEF</u>

137.   Wherefore, the United States of America prays that this Court:

   (i)    Enter a judgment declaring that Defendants' investigations, proceedings, adjudications, and findings against Mr. Clark violate the Supremacy Clause and Article II and are therefore void;

   (ii)   Issue preliminary and permanent injunctions that prohibit Defendants, as well as their successors, agents, and employees, from commencing

24

or maintaining any investigations, proceedings, or disciplinary actions against Mr. Clark based on his conduct as a Government attorney;

(iii)    Award the United States its costs and fees in this action; and

(iv)    Award other relief as the Court deems just.

May 13, 2026                                Respectfully submitted,


                                           TODD BLANCHE
                                           Acting Attorney General


                                           R. TRENT MCCOTTER
                                           Principal Associate Deputy Attorney General
                                               D.C. Bar No. 1011329


                                           /s/      *Stanley E. Woodward, Jr.*
                                           STANLEY E. WOODWARD, JR.
                                           Associate Attorney General
                                               D.C. Bar No. 997320


                                           U.S. Department of Justice
                                           950 Pennsylvania Avenue, Northwest
                                           Washington, D.C. 20530
                                           (202) 514-2000
                                           stanley.woodward@usdoj.gov

                                           *Counsel for Plaintiff,*
                                           *The United States of America*

25