**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **No. 1:26-cv-01658-RJL** |
| **HAMILTON P. FOX III,** *et al.*, | |
| **Defendants.** | |

**<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
CONSOLIDATED MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

    I.     Legal Background............................................................................................ 2

         A.     The D.C. Court of Appeals' Disciplinary System ............................................ 2

         B.     Federal Statutes Authorizing Oversight of Department of Justice Attorneys.................................................................................................. 5

    II.    Factual Background ........................................................................................ 6

LEGAL STANDARDS ................................................................................................ 11

    I.     Federal Rule of Civil Procedure 12(b)(1) ...................................................... 11

    II.    Federal Rule of Civil Procedure 12(b)(6) ...................................................... 11

ARGUMENT ............................................................................................................... 12

    I.     The United States' Claims Are Not Justiciable. ............................................. 12

         A.     The United States Has Not Adequately Pleaded an Injury-in-Fact. ............... 12

         B.     The United States' Claims Are Not Ripe....................................................... 15

         C.     The United States Has Failed to Establish an Article III Case or Controversy with Each Defendant for Additional Reasons. .......................... 20

              1.     The Complaint Fails to Plausibly Allege a Case or Controversy Between the United States and the ODC Defendants........................ 20

              2.     The Complaint Fails to Plausibly Allege a Case or Controversy Between the United States and the Board Defendants....................... 22

              3.     The Complaint Fails to Plausibly Allege a Case or Controversy Between the United States and the Court Defendants. ...................... 23

              4.     The Complaint Fails to Plausibly Allege a Case or Controversy Between the United States and the District........................................ 25

    II.    Many Defendants Are Not Subject to Suit. .................................................... 26

         A.     The D.C. Court of Appeals and Its Instrumentalities Cannot Be Sued........... 26

         B.     The Official-Capacity Claims Should Be Dismissed...................................... 28

              1.     The Claims Against the Individual Defendants Are Duplicative......................................................................................... 28

              2.     Two of the Individual Defendants Are Immune from Suit................. 29

    III.    The Court Should Abstain Under *Younger v. Harris.* ................................. 31

    IV.    The United States' Claims Fail on the Merits................................................. 37

         A.     Counts I and II Do Not State Claims. ............................................................ 37

1. The United States Has Failed to State a Direct-Regulation Claim under the Supremacy Clause (Count I). ................................... 37

   a. The United States Has Not Adequately Alleged Any "Direct" Regulation of the Federal Government .................... 37

   b. Congress Has Expressly Authorized the D.C. Disciplinary Proceedings the United States Seeks to Halt ................................................................................. 39

2. The United States Has Failed to State a Discriminatory-Regulation Claim under the Supremacy Clause (Count II). ............... 41

B. Count III Does Not State a Claim. .................................................. 43

CONCLUSION ................................................................................................ 45

**TABLE OF AUTHORITIES**

**Cases**

*In re Al-Nashiri*,
  47 F.4th 820 (D.C. Cir. 2022) .................................................................................16

*Alaska Right to Life Pol. Action Comm. v. Feldman*,
  504 F.3d 840 (9th Cir. 2007) .................................................................................18

*\*Am. Petrol. Inst. v. EPA*,
  683 F.3d 382 (D.C. Cir. 2012) ...............................................................17, 18, 19, 20

*Bronner ex rel. Am. Studs. Ass'n v. Duggan*,
  962 F.3d 596 (D.C. Cir. 2020) .................................................................................11

*Arias v. Univ. Music Grp.*,
  640 F. Supp. 3d 84 (D.D.C. 2022) ...........................................................................27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................11, 45

*ASPCA v. Ringling Bros. & Barnum & Bailey Circus*,
  317 F.3d 334 (D.C. Cir. 2003) .................................................................................23

*Bergstrom v. Bergstrom*,
  623 F.2d 517 (8th Cir. 1980) .................................................................................20

*Blackmar v. Guerre*,
  342 U.S. 512 (1952).............................................................................................26

*Branch Ministries v. Rossotti*,
  211 F.3d 137 (D.C. Cir. 2000) .................................................................................43

*Butz v. Economou*,
  438 U.S. 478 (1978).............................................................................................30

*California v. Texas*,
  593 U.S. 659 (2021).............................................................................................22

*In re Carter*,
  333 A.3d 558 (D.C. 2025) ..................................................................................4, 25

*Cedar Rapids Cellular Tel., L.P. v. Miller*,
  280 F.3d 874 (8th Cir. 2002) .................................................................................35

*Chisholm v. Superior Ct. of D.C.*,
  2007 WL 1601718 (D.D.C. June 4, 2007)...........................................................26, 27

*In re Clark*,
311 A.3d 882 (D.C. 2024) ................................................................................................40

*In re Clark*,
678 F. Supp. 3d 112 (D.D.C. 2023) ...............................................................................6, 25

*In re Clark*,
2024 WL 3385251 (D.C. Cir. July 12, 2024) .......................................................................8

*Coal River Energy, LLC v. Jewell*,
751 F.3d 659 (D.C. Cir. 2014) ...........................................................................................23

*Columbia Gulf Transmission, LLC v. FERC*,
106 F.4th 1220 (D.C. Cir. 2024) ........................................................................................14

*Colvin v. Tunnage*,
2026 WL 1174105 (D.D.C. Mar. 9, 2026)..........................................................................29

*Coubaly v. Cargill Inc.*,
144 F.4th 343 (D.C. Cir. 2025)...........................................................................................13

*Covad Commc'ns Co. v. Bell Atl. Corp.*,
407 F.3d 1220 (D.C. Cir. 2005)............................................................................................7

*D.C. Ct. of Appeals v. Feldman*,
460 U.S. 462 (1983)......................................................................................................29, 33

*Daskalea v. Wash. Humane Soc'y*,
480 F. Supp. 2d 16 (D.D.C. 2007)......................................................................................27

*Devia v. NRC*,
492 F.3d 421 (D.C. Cir. 2007).............................................................................................19

*Diamond "D" Constr. Corp. v. McGowan*,
282 F.3d 191 (2d Cir. 2002)................................................................................................34

*In re Doe*,
801 F. Supp. 478 (D.N.M. 1992) ..........................................................................................5

*Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.*,
642 F.2d 527 (D.C. Cir. 1980).................................................................................37, 38, 39

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975)............................................................................................................34

*Elec. Priv. Info. Ctr. v. FAA*,
892 F.3d 1249 (D.C. Cir. 2018)...........................................................................................13

*Exxon Corp. v. Heinze*,
   32 F.3d 1399 (9th Cir. 1994) ...............................................................................20

*Frazier v. Prince George's Cnty.*,
   140 F.4th 556 (4th Cir. 2025) ..............................................................................24

*Goodyear Atomic Corp. v. Miller*,
   486 U.S. 174 (1988)..............................................................................................40

*Gulf Coast Mar. Supply, Inc. v. United States*,
   867 F.3d 123 (D.C. Cir. 2017) ..............................................................................11

*Haaland v. Brackeen*,
   599 U.S. 255 (2023)..............................................................................................22

*Hale v. Collis*,
   2022 WL 3016747 (D.D.C. July 29, 2022)...........................................................27

*Hancock v. Train*,
   426 U.S. 167 (1976).........................................................................................38, 40

*Herrera v. City of Palmdale*,
   918 F.3d 1037 (9th Cir. 2019) ..............................................................................35

*Hicks v. Miranda*,
   422 U.S. 332 (1975)..............................................................................................34

*Hill v. Traxler*,
   2013 WL 4580456 (D.D.C. July 9, 2013)..............................................................29

*\*Hoai v. Superior Ct. of D.C.*,
   539 F. Supp. 2d 432 (D.D.C. 2008) .............................................................26, 27, 28

*Iowaska Church of Healing v. Werfel*,
   105 F.4th 402 (D.C. Cir. 2024)..............................................................................13

*Jefferson Cnty. v. Acker*,
   527 U.S. 423 (1999)..............................................................................................43

*Jenkins v. Kerry*,
   928 F. Supp. 2d 122 (D.D.C. 2013).................................................................29, 31

*JMM Corp. v. District of Columbia*,
   378 F.3d 1117 (D.C. Cir. 2004)..............................................................................33

*Johnson v. Fankell*,
   520 U.S. 911 (1997)..............................................................................................45

v

*Johnson v. Maryland*,
254 U.S. 51 (1920)..................................................................................................38

*Jones v. U.S. Secret Serv.*,
143 F.4th 489 (D.C. Cir. 2025)..............................................................12, 13, 23, 25

*Just. Network Inc. v. Craighead Cnty.*,
931 F.3d 753 (8th Cir. 2019) ...................................................................................23

*In re Justices of Sup. Ct. of P.R.*,
695 F.2d 17 (1st Cir. 1982).................................................................................20, 24

*K&D LLC v. Trump Old Post Off. LLC*,
951 F.3d 503 (D.C. Cir. 2020)..................................................................................38

*Kellogg v. Nichols*,
170 F.4th 20 (2d Cir. 2026) ......................................................................................24

*Kentucky v. Graham*,
473 U.S. 159 (1985)...................................................................................................28

*Khalid v. Blanche*,
172 F.4th 876 (D.C. Cir. 2026)..................................................................................12

*Klayman v. Blackburne-Rigsby*,
2021 WL 2652335 (D.D.C. June 28, 2021)..............................................................31

*Klayman v. D.C. Ct. of Appeals*,
2025 WL 1517247 (D.D.C. May 28, 2025)...............................................................33

*\*Klayman v. Fox*,
2019 WL 2396538 (D.D.C. June 5, 2019)...........................................27, 28, 30, 31

*Klayman v. Lim*,
2019 WL 2396539 (D.D.C. June 5, 2019).................................................................28

*\*Klayman v. Lim*,
830 F. App'x 660 (D.C. Cir. 2020)........................................................30, 31, 33, 34

*Klayman v. Porter*,
2022 WL 3715775 (D.D.C. Aug. 29, 2022) .............................................................30

*Klayman v. Porter*,
2026 WL 320191 (D.D.C. Feb. 6, 2026) ..................................................................27

*Klayman v. Rao*,
2021 WL 4948025 (D.D.C. Oct. 25, 2021) ..............................................................29

*Kugler v. Helfant*,
   421 U.S. 117 (1975)...............................................................................................34

*Kundrat v. District of Columbia*,
   106 F. Supp. 2d 1 (D.D.C. 2000).........................................................................26

*Lewis v. Green*,
   629 F. Supp. 546 (D.D.C. 1986).....................................................................30, 31

*Lindke v. Tomlinson*,
   31 F.4th 487 (6th Cir. 2022) ................................................................................24

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)..............................................................................................13

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
   457 U.S. 423 (1982)................................................................................32, 33, 34

*Murthy v. Missouri*,
   603 U.S. 43 (2024)..........................................................................................21, 25

*Muskrat v. United States*,
   219 U.S. 346 (1911)........................................................................................23, 25

*N.B. v. District of Columbia*,
   244 F. Supp. 3d 176 (D.D.C. 2017)......................................................................28

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003)........................................................................................15, 16

*In re Navy Chaplaincy*,
   697 F.3d 1171 (D.C. Cir. 2012)......................................................................13, 14

*North Dakota v. United States*,
   495 U.S. 423 (1990)........................................................................................37, 38

*Nwachukwu v. Rooney*,
   362 F. Supp. 2d 183 (D.D.C. 2005)................................................................27, 31

*O'Donoghue v. United States*,
   289 U.S. 516 (1933)..............................................................................................44

*PACEM Sols. Int'l, LLC v. U.S. Small Bus. Admin*,
   148 F.4th 258 (4th Cir. 2025) ..............................................................................23

*Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*,
   962 F.2d 27 (D.C. Cir. 1992).........................................................................16, 17

*Price v. District of Columbia*,
 545 F. Supp. 2d 89 (D.D.C. 2008) ........................................................................................28

*Pub. Emps. for Env't Resp. v. Zeldin*,
 174 F.4th 183 (D.C. Cir. 2026) ...........................................................................................12

*Pueschel v. Chao*,
 955 F.3d 163 (D.C. Cir. 2020) .............................................................................................11

*Renne v. Geary*,
 501 U.S. 312 (1991) ..............................................................................................................18

*Reule v. Jackson*,
 114 F.4th 360 (5th Cir. 2024) ..............................................................................................24

*Richardson v. District of Columbia*,
 711 F. Supp. 2d 115 (D.D.C. 2010) .....................................................................................31

*In re Richardson*,
 692 A.2d 427 (D.C. 1997) ...............................................................................................33, 45

*Roth v. King*,
 449 F.3d 1272 (D.C. Cir. 2006) ...........................................................................................29

*Ruffin v. District of Columbia*,
 662 F. Supp. 3d 1 (D.D.C. 2023) .........................................................................................28

*Ruhbayan v. Smith*,
 2022 WL 2764422 (4th Cir. July 15, 2022) .........................................................................31

*Rumber v. District of Columbia*,
 595 F.3d 1298 (D.C. Cir. 2010) ...........................................................................................34

*Rush v. Barham*,
 618 F. App'x 789 (5th Cir. 2015) ....................................................................................19, 20

*Saline Parents v. Garland*,
 88 F.4th 298 (D.C. Cir. 2023) ..............................................................................................17

*Seed v. EPA*,
 100 F.4th 257 (D.C. Cir. 2024) ...........................................................................................23

*Sibley v. U.S. Sup. Ct.*,
 786 F. Supp. 2d 338 (D.D.C. 2011) .....................................................................................27

*Sidak v. U.S. Int'l Trade Comm'n*,
 174 F.4th 151 (D.C. Cir. 2026) ...........................................................................................16

*Simons v. Bellinger*,
  643 F.2d 774 (D.C. Cir. 1980) ..................................................................................24

*Somberg v. McDonald*,
  117 F.4th 375 (6th Cir. 2024) ..................................................................................21

*South Carolina v. Baker*,
  485 U.S. 505 (1988)..................................................................................................38

*Spargo v. N.Y. State Comm'n on Jud. Conduct*,
  351 F.3d 65 (2d Cir. 2003)........................................................................................35

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)............................................................................................12, 13

*Sprint Commc'ns, Inc. v. Jacobs*,
  571 U.S. 69 (2013)....................................................................................................32

*Texas v. DHS*,
  123 F.4th 186 (5th Cir. 2024) ..............................................................................38, 39

*Texas v. United States*,
  523 U.S. 296 (1998)..................................................................................................16

*Thomas v. Knight*,
  257 F. Supp. 2d 86 (D.D.C. 2003) ............................................................................31

*Thomas v. Smoot*,
  2018 WL 3159148 (D.C. Cir. May 16, 2018)...........................................................28

*Trainor v. Hernandez*,
  431 U.S. 434 (1977)..................................................................................................32

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)..................................................................................................12

*Trump v. New York*,
  592 U.S. 125 (2020)..................................................................................................16

*Trump v. United States*,
  603 U.S. 593 (2024)....................................................................................................8

*Trump v. Vance*,
  591 U.S. 786 (2020)............................................................................................36, 45

*Trump v. Vance*,
  941 F.3d 631 (2d Cir. 2019)......................................................................................36

*United Presbyterian Church v. Reagan*,
738 F.2d 1375 (D.C. Cir. 1984) ...............................................................................17

*United States v. California*,
173 F.4th 1060 (9th Cir. 2026) .................................................................................39

*United States v. Colo. Supreme Court*,
87 F.3d 1161 (10th Cir. 1996) .............................................................................14, 15

*United States v. Composite State Bd. of Med. Exam'rs*,
656 F.2d 131 (5th Cir. Unit B Sept. 1981)................................................................36

*United States v. Ferrara*,
847 F. Supp. 964 (D.D.C. 1993).................................................................................41

*United States v. Hart*,
26 F. Cas. 193 (C.C.D. Pa. 1817) ..............................................................................38

*United States v. Lawrence*,
3 U.S. (3 Dall.) 42 (1795) ...........................................................................................29

*United States v. Morros*,
268 F.3d 695 (9th Cir. 2001) ......................................................................................36

*United States v. Ohio*,
614 F.2d 101 (6th Cir. 1979) ......................................................................................36

*United States v. Supreme Court of N.M.*,
839 F.3d 888 (10th Cir. 2016) ...................................................................................15

*United States v. Washington*,
596 U.S. 832 ......................................................................................................37, 39, 42

*Whole Woman's Health v. Jackson*,
595 U.S. 30 (2021).................................................................................................24, 25

*Williams v. City of Cleveland*,
907 F.3d 924 (6th Cir. 2018) ................................................................................22, 23

*Wyo. Outdoor Council v. U.S. Forest Serv.*,
165 F.3d 43 (D.C. Cir. 1999)................................................................................16, 18

*Younger v. Harris*,
401 U.S. 37 (1971)................................................................................................32, 34

x

## Constitutional Provisions

U.S. Const.
  Article I, § 8, cl. 17 ...............................................................................................2, 44
  Article VI, cl. 2 ......................................................................................................37

## Statutes

28 U.S.C.
  § 530B.....................................................................................................................39
  § 530B(a) ............................................................................2, 6, 37, 39, 40, 45
  § 530B(c) ...............................................................................................................6
  § 530C....................................................................................................................41
  § 530C(c)(1)......................................................................................................5, 41

D.C. Code
  § 1-206.02(a)(4) ................................................................................................26
  § 11-101 .................................................................................................................3
  § 11-101(2)(A) ...................................................................................................44
  § 11-2501 .............................................................................................................44
  § 11-2501(a)......................................................................................................3, 27
  § 11-2502 ...............................................................................................................3

Public Laws
  No. 75-495, 52 Stat. 248 (1938) .....................................................................5
  No. 91-358, 84 Stat. 473 (1970) .............................................................3, 26, 44
  No. 95-86, 91 Stat. 419 (1977) .......................................................................5
  No. 104-317, 110 Stat. 3847 (1996) .............................................................29
  No. 105-277, 112 Stat. 2681 (1998) ...............................................................6
  No. 107-273, 116 Stat. 1758 (2002) ...............................................................5

## Rules & Regulations

28 C.F.R. § 77.2(h) ..................................................................................6, 40, 45

59 Fed. Reg. 39910 (Aug. 4, 1994)..............................................................5

**INTRODUCTION**

The United States has sued the District of Columbia Court of Appeals, several disciplinary bodies of the D.C. judiciary, and various individuals (all in their official capacities) to halt an attorney disciplinary proceeding against Jeffrey B. Clark, a former Department of Justice attorney admitted to practice law in the District. That proceeding is ongoing and has not resulted in the imposition of any disciplinary sanction. At this point, the D.C. Court of Appeals has merely received a non-binding recommendation from the Board on Professional Responsibility, and the court will review the recommendation as part of an adversarial proceeding—one in which both Clark and the United States have filed briefs raising many of the same arguments the United States presses here. Nonetheless, four years after the disciplinary proceedings began, the United States now asks this Court to terminate them on the theory that Defendants are violating the Supremacy Clause and Article II of the Constitution by "punishing" Clark and thereby chilling current Department of Justice attorneys from rendering candid advice. Compl. ¶¶ 1, 5, 12–15.

A battery of threshold barriers requires dismissal of this suit. The United States lacks standing to challenge a hypothetical sanction that may never be issued, and its speculation that the bare prospect of such a sanction is improperly chilling Department of Justice deliberations lacks any plausible factual basis. For similar reasons, this suit is both constitutionally and prudentially unripe: it rests on a string of contingencies that do not suffice to establish an ongoing or future injury-in-fact, and basic principles of prudence dictate that this Court should not wade into another court's ongoing judicial proceedings to adjudicate the legality of a hypothetical sanction. Furthermore, under well-established D.C. Circuit precedent, the District's judicial bodies and at least some of their officials are not amenable to suit. And the principle of *Younger* abstention requires the Court to abstain from enjoining an ongoing District disciplinary proceeding.

1

Even if the United States could somehow surmount all these bars, its claims would fail on the merits. By enacting the McDade Amendment, Congress confirmed that Department of Justice attorneys are subject to state attorney disciplinary processes "to the same extent" and "in the same manner" as other attorneys. 28 U.S.C. § 530B(a). The proceedings against Clark do not violate the Supremacy Clause because this statute expressly authorizes them. In any event, the proceedings against Clark neither directly "regulate" the United States nor subject it to "differential treatment." Compl. ¶¶ 108, 118. Those proceedings likewise do not violate Article II; on the contrary, they provide the appropriate forum for Clark and the United States to raise the very Article II objections that the United States advances here.[1]

At bottom, a litigant cannot sue a court or its officers to stop an ongoing state court disciplinary proceeding based on speculation about how the court will rule. Because the United States asks this Court to take that extraordinary and improper step, the Complaint should be dismissed.

## BACKGROUND

### I.    Legal Background

#### A.    The D.C. Court of Appeals' Disciplinary System

The Constitution vests Congress with authority to "exercise exclusive Legislation in all Cases whatsoever" over the District of Columbia. U.S. Const. art. I, § 8, cl. 17. In 1970, Congress exercised that authority by enacting legislation creating the District of Columbia Court of Appeals as an Article I court. *See* District of Columbia Court Reorganization Act of 1970, Pub. L. No. 91-

---

[1] Given their role as the adjudicators of the disciplinary matter involving Clark, the Court Defendants (the D.C. Court of Appeals and Chief Judge Blackburne-Rigsby, in her official capacity) do not express any views on the merits at this time and also therefore do not join Part IV of this motion.

358, § 111, 84 Stat. 473, 475 (codified at D.C. Code §§ 11-101 *et seq.*).  That legislation directed

the D.C. Court of Appeals to "make such rules as it deems proper respecting the examination,

qualification, and admission of persons to membership in its bar, and their censure, suspension,

and expulsion."  *Id.* § 111, 84 Stat. at 521 (codified at D.C. Code § 11-2501(a)).  Specifically, the

D.C. Court of Appeals "may censure, suspend from practice, or expel a member of its bar for

crime, misdemeanor, fraud, deceit, malpractice, professional misconduct, or conduct prejudicial

to the administration of justice."  *Id.* (codified at D.C. Code § 11-2502).

The D.C. Court of Appeals has exercised this authority by adopting the District of

Columbia Rules of Professional Conduct, which set standards of conduct for members of the

court's bar.  As relevant here, those rules specify that it shall be "professional misconduct" for

attorneys to "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation" or to

"attempt to violate the Rules of Professional Conduct."  D.C. R. Pro. Conduct 8.4(a), (c).  The

rules also prohibit attorneys from "[e]ngag[ing] in conduct that seriously interferes with the

administration of justice."  D.C. R. Pro. Conduct 8.4(d).

The D.C. Court of Appeals has also adopted rules establishing the procedures that apply

when disciplining members of the court's bar.  *See* D.C. Bar R. XI.  Those rules explain that "[t]he

license to practice law in the District of Columbia is a continuing proclamation by [the D.C. Court

of Appeals] that the holder is fit to be entrusted with professional and judicial matters, and to aid

in the administration of justice as an attorney and an officer of the Court."  *Id.* § 2(a).  The rules

establish three entities involved in the attorney discipline process: (1) the Board on Professional

Responsibility (the Board), which is composed of nine members appointed by the court, *id.* § 4(a)–

(b); (2) multiple Hearing Committees, each of which is composed of three members appointed by

3

the Board, *id.* §§ 4(e)(4), 5(a); and (3) the Office of Disciplinary Counsel (ODC), which is led by Disciplinary Counsel, who is appointed by the Board, *id.* § 4(e)(2).[2]

ODC is responsible for "investigat[ing] all matters involving alleged misconduct by an attorney" that "may come to the attention of Disciplinary Counsel or the Board . . . where the apparent facts, if true, may warrant discipline" by the court. D.C. Bar R. XI § 6(a)(2). If ODC files formal charges against an attorney following its investigation, it then "prosecute[s] all disciplinary proceedings," which proceed in three stages. *Id.* §§ 6(a)(4), 8(b)–(c). First, a Hearing Committee "conduct[s] hearings on formal charges of misconduct" and "submit[s] [its] findings and recommendations" to the Board. *Id.* §§ 5(c)(1)–(2), 9(a). Second, the Board "review[s] the findings and recommendations of [the] Hearing Committee[]" and then "prepare[s] and forward[s] its own findings and recommendations" to the D.C. Court of Appeals. *Id.* §§ 4(e)(7), 9(c)–(d).

Third, the D.C. Court of Appeals reviews the matter. If the Board has recommended disbarment, the court orders the attorney to show cause why the court should not enter an interim order of suspension pending its final decision. D.C. Bar R. XI § 9(g). Then, following an opportunity for briefing by ODC and the respondent attorney, the court "shall enter an appropriate order." *Id.* § 9(h)(1). In doing so, the court "accept[s] the findings of fact made by the Board unless they are unsupported by substantial evidence of record." *Id.* The court's deference, however, "evaporates with respect to the Board's legal determinations," which are reviewed *de novo*. *In re Carter*, 333 A.3d 558, 563–64 (D.C. 2025). "Such 'legal' determinations include the Board's resolution of 'ultimate facts,' *i.e.*, 'whether the facts establish a violation of a Rule.'" *Id.* at 564 (citation modified).

---

[2] The D.C. Bar, a bar association for District of Columbia attorneys, plays no role in attorney disciplinary proceedings.

Only the D.C. Court of Appeals may disbar attorneys, suspend them from the practice of law, or impose other disciplinary sanctions beyond an informal admonition or reprimand. *See* D.C. Bar R. XI §§ 3(a), 4(e)(8), 9(d), 9(h). If the court disbars an attorney, the attorney generally may reapply for reinstatement after five years. *Id.* § 16(a).

### B.  Federal Statutes Authorizing Oversight of Department of Justice Attorneys

Congress has passed and the President has signed two statutes addressing the application of state ethics rules to attorneys in the U.S. Department of Justice (Department). Under 28 U.S.C. § 530C(c)(1), the Department may employ only attorneys who are "duly licensed and authorized to practice as an attorney under the law of a State, a territory of the United States, or the District of Columbia." That statutory mandate dates to at least 1938 and was reenacted in appropriations bills until it was codified separately in 2002. *See* Pub. L. No. 75-495, tit. II, 52 Stat. 248, 269 (1938); Pub. L. No. 107-273, § 201(a), 116 Stat. 1758, 1767, 1770 (2002) (codifying provision in Section 530C); *see also, e.g.*, Pub. L. No. 95-86, § 202, 91 Stat. 419, 428 (1977) (including materially identical provision in appropriations statute).

In the 1980s and 1990s, the Department of Justice took the position that its attorneys need not comply with all state ethics rules. For example, in 1989, Attorney General Thornburgh issued a memorandum declaring the Department's intention to "resist, on Supremacy Clause grounds, local attempts to curb legitimate federal law enforcement techniques." *In re Doe*, 801 F. Supp. 478, 493 (D.N.M. 1992) (reproducing memorandum). Five years later, the Department promulgated the "Reno Regulation," which "intended to preempt and supersede the application of [certain] state [ethics] laws and rules." Communications with Represented Persons, 59 Fed. Reg. 39910, 39931 (Aug. 4, 1994).

Multiple courts rejected the Department's position. *See In re Clark*, 678 F. Supp. 3d 112, 116–18 (D.D.C. 2023) (describing this history and collecting cases), *aff'd on other grounds*, No. 23-7073, 2024 WL 3385251 (D.C. Cir. July 12, 2024) (per curiam). In 1998, Congress responded by adopting a statute titled "Ethical standards for attorneys for the Government." Pub. L. No. 105-277, § 801(a), 112 Stat. 2681, 2681-118 to -119 (codified at 28 U.S.C. § 530B). The McDade Amendment, as that law is commonly known, specifies that Department attorneys "shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State." 28 U.S.C. § 530B(a); *see also id.* § 530B(c). Regulations promulgated by the Department recognize that the statute covers rules "adopted by . . . the District of Columbia . . . that prescribe ethical conduct for attorneys and that would subject an attorney . . . to professional discipline." 28 C.F.R. § 77.2(h).

## II.    <u>Factual Background</u>

In 2021, the Chair of the Senate Committee on the Judiciary submitted a formal complaint to ODC about Jeffrey Clark after the Committee conducted an investigation and the Committee majority issued a formal report. *See* Majority Staff Rep. of S. Comm. on the Judiciary, 117th Cong., Subverting Justice: How the Former President and His Allies Pressured DOJ To Overturn the 2020 Election, at 47 (2021), https://perma.cc/F2DQ-KAJG. In July 2022, based on that referral and ODC's own investigation, Disciplinary Counsel initiated attorney discipline proceedings against Clark by filing a specification of charges with the Board. Specification of Charges ("Specification"), *In re Clark*, No. 22-BD-039 (D.C. Bd. Pro. Resp. July 19, 2022) (Ex. A).[3] That

---

[3] The Court may take judicial notice of the record of Clark's disciplinary proceeding in considering Defendants' motion to dismiss. *See, e.g.*, *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407

6

charging document alleges that Clark has been a member of the Bar of the D.C. Court of Appeals since 1997. *Id.* ¶ 1. It further alleges that, in late 2020 and early 2021, he served in the U.S. Department of Justice as Assistant Attorney General for the Environment and Natural Resources Division and as Acting Assistant Attorney General for the Civil Division. *Id.* ¶¶ 8–9.

According to the Specification, following the 2020 presidential election, Clark drafted a "Proof of Concept" letter and proposed that the Acting Attorney General and Principal Associate Deputy Attorney General send the letter to the Governor, House Speaker, and Senate President *Pro Tempore* of the State of Georgia. *Id.* ¶¶ 12–14. That letter stated, among other things, that the Department of Justice had "identified significant concerns that may have impacted the outcome of the election in multiple States," that the Department believed two competing slates of electors had cast votes for President in Georgia, and that the Department believed the Georgia Governor should convene a special session of the legislature. *Id.* ¶¶ 15–19. The Specification alleges that each of those statements was false or misleading. *Id.* Further, it alleges that senior Department leadership repeatedly informed Clark that the statement that the Department had identified significant concerns that may have affected the outcome of the election was false, and that leadership refused to send the letter because it contained false statements. *Id.* ¶¶ 20–21, 29. In early January 2021, Clark allegedly informed the Acting Attorney General and another Department leader that the President had offered him the position of Acting Attorney General, that he was thinking about accepting that position if those officials were unwilling to send the Proof of Concept letter, and that upon becoming Acting Attorney General he would send the letter. *Id.* ¶¶ 23, 26.

---

F.3d 1220, 1222 (D.C. Cir. 2005) (a court "may look to [the] record of another proceeding" in resolving "a motion to dismiss").

Following a threat of mass resignations by Department officials, the President allegedly decided not to appoint Clark as Acting Attorney General, and the letter was never sent. *Id.* ¶ 30.

Based on these allegations concerning Clark's efforts to send the Proof of Concept letter, Disciplinary Counsel charged Clark with violating D.C. Rule of Professional Conduct 8.4(a), (c), and (d). Specification ¶ 31. The Specification charges that Clark attempted to engage in conduct involving dishonesty, in violation of Rule 8.4(a) and (c), and attempted to engage in conduct that would seriously interfere with the administration of justice, in violation of Rule 8.4(a) and (d). *Id*.

Following Clark's unsuccessful effort to remove the disciplinary proceeding to federal court, *see In re Clark*, 2024 WL 3385251, a Hearing Committee of the Board held a seven-day evidentiary hearing. *See* R. & R. of Hr'g Comm. No. Twelve ("Hr'g Comm. R&R") at 7–8, *In re Clark*, No. 22-BD-039 (D.C. Bd. Pro. Resp. Aug. 1, 2024) (Ex. B). Both Disciplinary Counsel and Clark submitted proposed findings of fact, conclusions of law, and recommendations as to the appropriate sanction, as well as several supplemental briefs. *Id.* at 8. The Hearing Committee also admitted dozens of documents into evidence and heard more than three hours of closing arguments. *Id.* at 7–8.

On August 1, 2024, the Hearing Committee issued a 213-page report and recommendation. The Hearing Committee rejected Clark's contention that the Supremacy Clause, Article II, and the Supreme Court's decision in *Trump v. United States*, 603 U.S. 593 (2024), rendered him immune from discipline. Hr'g Comm. R&R at 119–21, 147–51. It also concluded that several of the statements in his Proof of Concept letter—including that the Department of Justice had identified significant concerns that may have affected the outcome of the 2020 election and that the Department believed that Georgia had selected two competing slates of electors—were false, that Clark was reckless with respect to their truth or falsity, and that Clark violated Rule 8.4(a) and (c)

8

by repeatedly attempting to transmit those statements in the Proof of Concept letter even after Department leadership repeatedly informed him they were false. *Id.* at 157–68, 173–74, 182–89. At the same time, the Hearing Committee found that several other alleged misstatements in the Proof of Concept letter were not false or misleading, *id.* at 172–73, 174–78, and it rejected Disciplinary Counsel's charge that Clark's conduct "seriously interfere[d] with the administration of justice." *Id.* at 189–93 (citation omitted). As a sanction, the Hearing Committee recommended that Clark receive a two-year suspension and be required to show his fitness before returning to the practice of law. *Id.* at 193–212.

Clark filed exceptions to the Hearing Committee's report with the Board. Exceptions to the R. & R. of Hr'g Comm. 12, *In re Clark*, No. 22-BD-039 (D.C. Bd. Pro. Resp. Aug. 12, 2024) (Ex. C). On July 31, 2025, after extensive briefing and oral argument, the Board issued its own 111-page report and recommendation, which agreed in part and disagreed in part with the Hearing Committee's findings and proposed disposition. *See* R. & R. of Bd. Pro. Resp. ("Board R&R"), *In re Clark*, No. 22-BD-039 (D.C. Bd. Pro. Resp. July 31, 2025) (Ex. D). Like the Hearing Committee, the Board found that Clark is not immune from discipline under the Supremacy Clause, Article II, or *Trump* for his conduct while serving in the Department of Justice. *Id.* at 28–32, 41–42. The Board also concluded that Clark attempted to make a knowingly false statement, in violation of Rule 8.4(a) and (c), by "persist[ing] in his effort" to send a letter to Georgia officials stating that the Department had identified significant concerns that may have affected the outcome of the election, "even though he had no facts to contradict [Department leadership's] clear and repeated warnings that the Justice Department had not uncovered potentially outcome-determinative issues with the 2020 election." *Id.* at 70–78 (emphasis omitted). The Board disagreed with the Hearing Committee's conclusion that the letter's reference to alternative slates

9

of electors was intentionally misleading. *Id.* at 83–87. Nevertheless, a majority of the Board found that Clark had attempted to engage in "flagrant dishonesty" and recommended that he be disbarred. *Id.* at 104. Two members of the Board wrote separately to recommend that he instead be suspended from the practice of law for three years and required to show his fitness before returning to practice. *See* Separate Recommendation as to Sanction at 1, *In re Clark*, No. 22-BD-039 (D.C. Bd. Pro. Resp. July 31, 2025) (Ex. E).

Clark filed exceptions to the Board's report with the D.C. Court of Appeals on August 21, 2025. *See* Exceptions to Report of Board of Professional Responsibility [*sic*] ("Exceptions to Bd. Report"), *In re Clark*, DCCA No. 25-BG-0731 (D.C. Aug. 21, 2025) (Ex. F). As required by its rules, the court issued an order to show cause why Clark should not be suspended from practice pending adjudication of the proceeding. Order, *In re Clark*, DCCA No. 25-BG-0731 (D.C. Aug. 7, 2025) (Ex. G); *see* D.C. Bar. R. XI § 9(g)(1). Both Clark and the United States (as amicus) filed briefs opposing that interim sanction on the ground that the Constitution prohibits disciplining Clark for his conduct. *See* Resp. to Order to Show Cause ("Clark Show Cause Resp."), *In re Clark*, DCCA No. 25-BG-0731 (D.C. Sept. 30, 2025) (Ex. H); Br. of United States as Amicus Curiae in Support of Respondent ("U.S. Amicus Br."), *In re Clark*, DCCA No. 25-BG-0731 (D.C. Oct. 6, 2025) (Ex. I).

The D.C. Court of Appeals has not yet acted on the show-cause order. Nor has it received merits briefing; after Clark requested that the court bifurcate the case into an immunity phase and a merits phase, the court stayed merits briefing pending adjudication of that motion. *See* Order, *In re Clark*, DCCA No. 25-BG-0731 (D.C. Oct. 6, 2025) (Ex. J). In addition, the court is now holding the entire proceeding in abeyance pending further order of the court while this federal suit is ongoing. *See* Order, *In re Clark*, DCCA No. 25-BG-0731 (June 26, 2026) (Ex. K).

10

As a result, the D.C. Court of Appeals has not yet addressed Clark's claim of immunity, made any findings of misconduct, or issued any disciplinary sanction. At the time the Complaint was filed and today, Clark remains authorized to practice law in the District of Columbia.

## LEGAL STANDARDS

### I.   Federal Rule of Civil Procedure 12(b)(1)

A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) if the court "lack[s] . . . subject-matter jurisdiction." To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing jurisdiction. *Bronner ex rel. Am. Studs. Ass'n v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020). Generally, courts adjudicating motions to dismiss for lack of subject-matter jurisdiction accept "well-pled factual allegations" while "disregard[ing] any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations." *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017) (per curiam).

### II.   Federal Rule of Civil Procedure 12(b)(6)

A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts do not accept as true conclusory "assertions devoid of further factual enhancement," *id.* at 678 (citation modified), or "legal conclusions," *Pueschel v. Chao*, 955 F.3d 163, 166 (D.C. Cir. 2020).

11

**ARGUMENT**

**I.    The United States' Claims Are Not Justiciable.**

**A.    The United States Has Not Adequately Pleaded an Injury-in-Fact.**

The Court should dismiss this action under Rule 12(b)(1) because the United States has not plausibly pleaded an injury-in-fact sufficient for Article III standing.   The "'irreducible constitutional minimum of standing contains three elements': (1) injury-in-fact, (2) causation and (3) redressability." *Khalid v. Blanche*, 172 F.4th 876, 883 (D.C. Cir. 2026) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).   "'The party invoking federal jurisdiction bears the burden of' satisfying the court that it has standing to proceed." *Pub. Emps. for Env't Resp. v. Zeldin*, 174 F.4th 183, 190 (D.C. Cir. 2026) (quoting *Lujan*, 504 U.S. at 561).   "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation modified).

On the first element, a plaintiff's alleged injury-in-fact "must be 'concrete and particularized,' and 'actual or imminent, not conjectural or hypothetical.'"   *Khalid*, 172 F.4th at 883 (quoting *Lujan*, 504 U.S. at 560).   A "concrete" injury is one that is "real, and not abstract." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Spokeo*, 578 U.S. at 340). Although certain "intangible harms" may be concrete, the plaintiff must still allege a sufficient "degree of risk" of that harm occurring.  *Spokeo*, 578 U.S. at 341, 343.

"To establish standing for prospective relief, a plaintiff opposing a motion to dismiss must plausibly allege facts that show 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Jones v. U.S. Secret Serv.*, 143 F.4th 489, 495 (D.C. Cir. 2025) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).   But an alleged risk of harm that "rests on too 'highly attenuated [a] chain of possibilities' [cannot] 'satisfy the

requirement that threatened injury must be certainly impending.'" *Elec. Priv. Info. Ctr. v. FAA*, 892 F.3d 1249, 1254–55 (D.C. Cir. 2018) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)).  Fundamentally, a plaintiff's alleged harm must be "likely, as opposed to merely speculative," to establish standing.  *Iowaska Church of Healing v. Werfel*, 105 F.4th 402, 412 (D.C. Cir. 2024) (quoting *Lujan*, 504 U.S. at 560).

The United States lacks Article III standing because it has not alleged a concrete injury that is actual or imminent and likely to occur.  Clark, the subject of the disciplinary proceedings that the United States challenges, is a "former" government employee, *see* Compl. ¶ 1, and so the United States cannot claim any continuing injury from his alleged inability to "giv[e] candid legal advice," *id.*  Instead, the United States claims that initiating proceedings against Clark improperly "chills" other Executive Branch attorneys from providing advice.  *Id.*  But the United States does not plausibly explain why that is so, nor does it allege facts supporting such a causal connection.

The United States' nebulous and threadbare claims fail to plausibly allege an injury that is "real, and not abstract," *Spokeo*, 578 U.S. at 330, and "likely, as opposed to merely speculative," *Lujan*, 504 U.S. at 561 (citation omitted).  In particular, the United States offers nothing to demonstrate a "substantial risk" of future disciplinary actions against *current* federal attorneys that are predicated on grounds similar to the proceedings against Clark.  *Jones*, 143 F.4th at 495 (quoting *Susan B. Anthony List*, 573 U.S. at 158).  It is not enough for the Complaint merely to claim that a risk exists.  *See Coubaly v. Cargill Inc.*, 144 F.4th 343, 348 (D.C. Cir. 2025) ("allegations cannot be conclusory," rather, "Article III requires more 'particularized allegations of fact'" (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975))).  Instead, the United States must show a "likelihood of injury that rises above the level of unadorned speculation—that is, a realistic danger that [it] will suffer future harm."  *In re Navy Chaplaincy*, 697 F.3d 1171, 1178 (D.C. Cir.

13

2012) (quoting *NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77, 85–86 (D.C. Cir. 2012)). Nothing in the Complaint meets that threshold or demonstrates any other "certainly impending" risk of cognizable harm. *Columbia Gulf Transmission, LLC v. FERC*, 106 F.4th 1220, 1229 (D.C. Cir. 2024) (quoting *Susan B. Anthony List*, 573 U.S. at 158).

Nor does the United States elaborate on how the challenged state proceeding supposedly "chill[s]" current federal attorneys from offering candid advice. Compl. ¶ 24. Tellingly, the Complaint makes no specific allegation that the proceeding has actually *had* a chilling effect or otherwise caused concrete harm to real federal attorney deliberations. Instead, every statement in the Complaint about the purported chill is made in an abstract and hypothetical present tense. *See id.* ("state bar disciplinary processes chill the zealous advocacy and candor of Federal officials"); *id.* ¶ 28 (alleging that the state proceeding here "harms the United States by . . . chilling the candid legal advice of Government attorneys"); *id.* ¶ 114 (alleging that the D.C. Court of Appeals proceeding "has the effect of chilling the advice Federal Government attorneys give on controversial matters").

That distinguishes this case from two prior ones in which courts found that the United States sufficiently alleged standing to challenge state bar rules of practice as conflicting with federal law. In both cases, the United States alleged specific and ongoing injuries to its conduct of criminal prosecutions. For example, in *United States v. Colorado Supreme Court*, 87 F.3d 1161 (10th Cir. 1996), the United States alleged that a state rule that required federal prosecutors to "submi[t] . . . exculpatory evidence to grand juries"—thereby "transforming [the grand jury] from an accusatory to an adjudicatory body"—had forced federal prosecutors to "change[] their practice in order to follow this rule." *Id.* at 1165. And a rule requiring "prior judicial approval" for certain subpoenas allegedly "delay[ed] the presentation of evidence" and "threaten[ed] grand jury

14

secrecy." *Id.* The Tenth Circuit held that these allegations were "sufficiently 'concrete and particularized' and 'actual or imminent' to withstand a motion to dismiss." *Id. United States v. Supreme Court of New Mexico*, 839 F.3d 888 (10th Cir. 2016), is similar. There, the United States alleged that, because of state rules prohibiting certain grand jury subpoenas in New Mexico, federal prosecutors had "been deterred from issuing attorney subpoenas," with the result that "the information available to grand juries and courts in the District of New Mexico ha[d] been limited." *Id.* at 899 (quoting United States complaint). Those specific allegations sufficiently supported the conclusion that the rule "impair[ed] . . . federal criminal investigations and prosecutions." *Id.*

The contrast between this case and the *New Mexico* and *Colorado* cases is plain. The Complaint's generalized references to "chill[ing] . . . zealous advocacy" and "candid legal advice" do not constitute concrete allegations of any non-hypothetical effect on *current* federal attorneys. Compl. ¶¶ 24, 28. The effect, if any, of non-final disciplinary proceedings addressing whether a single *former* federal attorney engaged in a course of conduct involving dishonesty is a far cry from the effect of an ethics rule imposed on *current* federal attorneys. And the claim that the supposed chill is affecting honest advice or otherwise results in "interfer[ence] with Executive Branch functions"—which the Complaint does not identify or describe—is even more abstract, speculative, and conclusory. *Id.* ¶ 30. These vague claims of harm to unidentified attorneys and amorphous federal interests fail to show an Article III injury.

**B.**     **The United States' Claims Are Not Ripe.**

The Complaint should also be dismissed because the United States' claims are unripe. Ripeness is a justiciability doctrine designed for the "avoidance of premature adjudication," which is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–

15

08 (2003).  For a claim to be ripe, it must satisfy two requirements.  First, the claim must be "constitutionally ripe," meaning that it cannot be "dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Sidak v. U.S. Int'l Trade Comm'n*, 174 F.4th 151, 157 (D.C. Cir. 2026) (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020)).  Second, the claim must be "prudentially ripe," *id.*, a determination that "go[es] beyond constitutional minima" and takes into account both "the fitness of the issues for judicial decision" and the extent to which withholding a decision will cause "'hardship to the parties,'" *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)); *see also Texas v. United States*, 523 U.S. 296, 300–01 (1998).  The United States' suit is unripe under both components of the doctrine.

First, the United States' claims are unripe as a constitutional matter because they are "riddled with speculations and contingencies that impede judicial review."  *Trump*, 592 U.S. at 131.  From its opening paragraphs to its last, the United States' Complaint rests on speculation that Defendants will "punish" Clark for his "deliberative and pre-decisional" communications and that any sanction Defendants ultimately impose will be more severe than what they have imposed on allegedly similarly situated attorneys.  *See, e.g.*, Compl. ¶¶ 1, 3–6, 12–15, 26, 108–10, 118–20, 130–34.  But Defendants have not imposed any sanction on Clark, and the D.C. Court of Appeals— the sole entity empowered to impose a sanction—may never do so.  Indeed, the D.C. Court of Appeals has not even initiated merits briefing in the case, ruled on Clark's immunity defense, or determined whether misconduct occurred.  Where, as here, this Court has "no idea whether or when . . . a sanction will be ordered, the issue is not fit for adjudication."  *Texas*, 523 U.S. at 300 (citation modified); *see In re Al-Nashiri*, 47 F.4th 820, 826 (D.C. Cir. 2022) (a complaint about the government's "*future* submissions" in litigation "is as yet unripe for our review"); *Platte River*

16

*Whooping Crane Critical Habitat Maint. Tr. v. FERC*, 962 F.2d 27, 35 (D.C. Cir. 1992) (a claim "based on predictions regarding future legal proceedings" is "too speculative to invoke the jurisdiction of an Article III Court" (citation modified)).

To the extent the United States may argue that the mere pendency of proceedings against Clark inflicts harm, that theory, too, rests on baseless speculations and contingencies. As explained above, the United States has provided no basis for its generalized speculation that the proceedings against Clark will have a "chilling effect" on other Department lawyers, or that those other lawyers will, as a result, fail to provide the United States with "candid legal advice." *Supra* pp. 13–15. The D.C. Circuit has repeatedly explained that the mere assertion of a "chilling effect" does not establish a ripe claim where the defendant has "not in any way restricted or regulated [the plaintiff's] activities." *Saline Parents v. Garland*, 88 F.4th 298, 308 (D.C. Cir. 2023); *see, e.g.*, *United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984) (Scalia, J.) (rejecting a "chilling effect" as a basis for Article III jurisdiction in the absence of some "concrete harm (past or imminently threatened) apart from the 'chill' itself"). Ongoing disciplinary proceedings against a single lawyer concerning allegations that he engaged in a dishonest course of conduct do not amount to a limit on the honest conduct of other lawyers. *See Saline Parents*, 88 F.4th at 308.

Second, dismissal of the United States' claims is proper because of the strong "prudential reasons for refusing to exercise jurisdiction" on ripeness grounds while state-court proceedings are ongoing. *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012) (quoting *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808). For one thing, this case is not "fit[] . . . for judicial decision." *Am. Petrol. Inst.*, 683 F.3d at 386 (quoting *Abbott Labs.*, 387 U.S. at 149). In challenges to government action, the fitness requirement is "meant to protect . . . the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting," as well as the government's interest in

17

"crystallizing" its decision before it is "subjected to judicial review." *Id.* at 387 (quoting *Wyo. Outdoor Council*, 165 F.3d at 49). The fitness of an issue thus "depends on whether [the issue] is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the [challenged] action is sufficiently final." *Id.* (quoting *Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003)).

All these factors demonstrate that this case is not fit for review. The United States seeks review of a quintessentially non-"final" decision: the ongoing disciplinary proceeding against Clark, which has produced only a recommendation by the Board that has not been acted upon by the D.C. Court of Appeals. *Cf. id.* ("[c]ourts decline to review 'tentative' agency positions"). The United States' claims are not "purely legal," but rather depend on a host of factual questions— among them, whether Clark is being treated "more harshly" than similarly situated attorneys, Compl. ¶¶ 111, 120–21; whether any disciplinary sanction will improperly chill other federal attorneys, *id.* ¶ 114; and whether Clark repeatedly urged his superiors to issue a letter containing statements of fact he knew were false, *cf. id.* ¶ 6 (assuming that any discipline would be premised simply on Clark's "disagree[ment] with a superior or coworker"). And the disciplinary proceeding itself—in which the United States has raised many of the same arguments it presses here—will provide a far "more concrete setting" for review of the United States' claims. *See, e.g.*, *Renne v. Geary*, 501 U.S. 312, 323 (1991) (explaining that "[p]ostponing consideration of the questions presented" on ripeness grounds would have "the advantage of permitting the state courts further opportunity to construe" challenged statutory provision); *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 850 (9th Cir. 2007) (declining to exercise jurisdiction where "an open question exist[ed]" whether state high court would act on a "recommendation by the [disciplinary] Commission to discipline a judge").

In addition, declining to hear this premature suit will cause no "hardship to the parties." *Am. Petrol. Inst.*, 683 F.3d at 387 (quoting *Abbott Labs.*, 387 U.S. at 149). The harm claimed by the United States—unsubstantiated fears about downstream effects of a recommendation that has not been acted upon—is not a "hardship." *See Devia v. NRC*, 492 F.3d 421, 427 (D.C. Cir. 2007) (rejecting contention that injury from "uncertainty as to the validity of a legal rul[ing] constitutes a hardship for purposes of the ripeness analysis" (quoting *Nat'l Park Hosp. Ass'n*, 538 U.S. at 811)). Moreover, in the face of "institutional interests in the deferral of review," any hardship "must be 'immediate and significant.'" *Am. Petrol. Inst.*, 683 F.3d at 389 (quoting *Devia*, 492 F.3d at 427). The United States cannot make this showing because it has expressed no urgency in bringing this lawsuit, having waited nearly four years after the opening of disciplinary proceedings, more than two years after the Hearing Committee issued its recommendation, and nearly nine months after the Board issued its own recommendation. *See supra* pp. 6–10. Forgoing adjudication of this case while the D.C. Court of Appeals conducts Clark's disciplinary proceeding would not meaningfully add to the years the United States allowed to elapse before bringing this lawsuit.

On the other side of the ledger, there are unusually strong reasons *not* to exercise jurisdiction. Adjudicating this case in this forum and in this posture is already delaying the pending District proceedings, *see supra* p. 10, and would substantially complicate those proceedings even if they were to resume. *See Rush v. Barham*, 618 F. App'x 789, 793 (5th Cir. 2015) (per curiam) (holding that the "burdens to all parties would only increase should a federal court conduct parallel proceedings involving some of the same underlying issues as are in dispute in the state court proceeding"). And exercising jurisdiction now could force the D.C. Court of Appeals, as a party in this case, to take a position in this forum on the very factual and legal questions that remain pending before it in its judicial capacity, risking immediate and irreparable "harm to the court's

19

stance of institutional neutrality." *In re Justices of Sup. Ct. of P.R.*, 695 F.2d 17, 25 (1st Cir. 1982) (Breyer, J.); *see infra* pp. 23–25.

To avoid such premature interference, federal courts assessing prudential ripeness in the face of pending administrative proceedings routinely dismiss claims to allow administrative bodies the "opportunity to apply [their] expertise and to correct errors or modify positions in the course of a proceeding," in order to protect "the integrity of the administrative process . . . by [avoiding] piecemeal review," and because "judicial review might prove unnecessary if persons seeking such review are able to convince the [decisionmakers] to alter a tentative position." *Am. Petrol. Inst.*, 683 F.3d at 387 (quoting *Pub. Citizen Health Rsch. Grp. v. Comm'r*, 740 F.2d 21, 31 (D.C. Cir. 1984)). These considerations apply with special force when plaintiffs try to use the federal judiciary to shortcut *state court* proceedings. *See* 13B Wright & Miller's Federal Practice & Procedure § 3532.1 (3d ed. 2026) (observing that "when proceedings that already pend in state courts hold open the prospect that the federal questions may be altered or dissolved by further action in the state courts . . . the federal claims often are found not to be ripe until state proceedings are completed"); *accord, e.g.*, *Rush*, 618 F. App'x at 793; *Exxon Corp. v. Heinze*, 32 F.3d 1399, 1404 (9th Cir. 1994); *Bergstrom v. Bergstrom*, 623 F.2d 517, 521 (8th Cir. 1980). This Court should similarly refrain from adjudicating a suit that would interfere with—and that may be rendered wholly unnecessary by—the ongoing D.C. Court of Appeals proceeding.

C.    **The United States Has Failed to Establish an Article III Case or Controversy with Each Defendant for Additional Reasons.**

1.    **The Complaint Fails to Plausibly Allege a Case or Controversy Between the United States and the ODC Defendants.**

The United States lacks standing with respect to its claims against the ODC Defendants because those Defendants cannot redress the United States' claimed injury. The United States

20

seeks an injunction prohibiting Defendants from "commencing or maintaining any investigations, proceedings, or disciplinary actions against Mr. Clark based on his conduct as a Government attorney." Compl. ¶ 137(ii). But the ODC Defendants have already completed their investigation of Clark, and the Board on Professional Responsibility has issued its report and recommendation. *Id.* ¶¶ 72–74. The matter now rests entirely with the D.C. Court of Appeals, which has the sole power to determine whether a violation of its ethics rules occurred and what sanction, if any, is warranted, regardless of what the ODC Defendants might say or do. *See* D.C. Bar R. XI § 9(h). ODC's role is simply to offer its view on what the D.C. Court of Appeals should do, *see id.* § 6(a)(4), but it remains entirely up to the court to decide how to proceed.[4]

Thus, even if this Court entered the requested injunction against the ODC Defendants, the D.C. Court of Appeals would "remain free" to sanction Clark, a member of its bar, for violating the court's ethics rules. *Murthy v. Missouri*, 603 U.S. 43, 73 (2024) (finding no redressability when third party "remain[ed] free to enforce, or not to enforce" challenged policies allegedly adopted at the behest of defendants). As the Sixth Circuit explained in a similar situation, "the relevant actor here—the one capable of inflicting the injury [the plaintiff] fears—is the court, not the prosecutor. In other words, the prosecutor isn't the cause of [the plaintiff's] asserted future injury, and an injunction against the prosecutor wouldn't redress that injury." *Somberg v. McDonald*, 117 F.4th 375, 379 (6th Cir. 2024).

The United States fares no better in its request for declaratory relief, which is premised on the same theory of standing as its request for an injunction and reflects the same deficiency. "[J]ust

---

[4] Indeed, even in proceedings before the Board, ODC does not have the power to unilaterally dismiss a case once it has been formally instituted by petition. D.C. Bd. Prof. Resp. R. 7.16(b), https://perma.cc/YA3D-SE89. And even if ODC files no brief before the Board following the issuance of a Hearing Committee report, the Board is still required to decide the case. *Id.* R. 13.4(a), 13.5.

like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement." *California v. Texas*, 593 U.S. 659, 672 (2021). Like an injunction, a declaration that the ODC Defendants erred in pursuing disciplinary charges would not prevent the D.C. Court of Appeals from imposing a disciplinary sanction on Clark, the alleged source of the injury of which the United States complains. Because a declaration against the ODC Defendants would not bind "the officials who matter," it would "leave the declaratory judgment powerless to remedy the alleged harm." *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023). The United States' Complaint thus fails to allege a case or controversy against the ODC Defendants.

### 2. The Complaint Fails to Plausibly Allege a Case or Controversy Between the United States and the Board Defendants.

The United States' claims against the Board and Chair Walker are similarly non-justiciable. By rule, the Board is tasked with appointing Hearing Committees to hear attorney misconduct charges, reviewing the Committees' findings and recommendations, and "prepar[ing] and forward[ing] its own findings and recommendations, together with the record of proceedings before the Hearing Committee and the Board, to the Court." D.C. Bar R. XI § 4(e)(4), (7); *see also id.* § 4(a)–(b) (describing appointment of the Board and its Chair by the D.C. Court of Appeals). The Board and Chair Walker have fully discharged those responsibilities in the Clark disciplinary proceedings and can take no action in the D.C. Court of Appeals that could impact Clark or the United States.

As a result, the remedies the United States seeks here—declaratory and injunctive relief only—would be meaningless as to the Board and Chair Walker. "When [a plaintiff is] seeking injunctive or declaratory relief," allegations of "[p]ast exposure to illegal conduct ... unaccompanied by any continuing, present adverse effects, will not suffice to establish a present case or controversy." *Williams v. City of Cleveland*, 907 F.3d 924, 933 (6th Cir. 2018) (quoting

22

*Sumpter v. Wayne Cnty.*, 868 F.3d 473, 491 (6th Cir. 2017)); *see also Jones*, 143 F.4th at 495 (similar). A declaratory judgment can "provide only prospective relief," *Coal River Energy, LLC v. Jewell*, 751 F.3d 659, 664 (D.C. Cir. 2014), and thus a declaratory-judgment plaintiff must seek "more than a retrospective opinion that he was wrongly harmed by the defendant." *PACEM Sols. Int'l, LLC v. U.S. Small Bus. Admin.*, 148 F.4th 258, 264 (4th Cir. 2025) (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011)); *accord Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019) ("declaratory relief is limited to *prospective* declaratory relief"). Likewise, "in actions for injunctive relief, harm in the past . . . is not enough to establish a present controversy." *ASPCA v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 336 (D.C. Cir. 2003); *accord Seed v. EPA*, 100 F.4th 257, 265 (D.C. Cir. 2024) (holding a plaintiff lacks a justiciable claim for injunctive relief when "no 'present harm [is] left to enjoin'" (alterations in original) (quoting *Taylor v. Resol. Tr. Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995)).

The United States alleges only that the Board and its Chair caused it "harm in the past," *ASPCA*, 317 F.3d at 336, so no ongoing case or controversy exists between them. The United States therefore lacks justiciable claims against the Board and Chair Walker.

### 3. The Complaint Fails to Plausibly Allege a Case or Controversy Between the United States and the Court Defendants.

The United States' claims against the D.C. Court of Appeals and its Chief Judge should be dismissed because, in addition to the standing and ripeness defects noted above, Article III does not permit litigation against disinterested adjudicators like the D.C. Court of Appeals and its Chief Judge when acting in an adjudicatory capacity. The Supreme Court has long made clear that a suit attacking judges' adjudicatory decisions—past or future—is not an "actual controvers[y] arising between adverse litigants." *Muskrat v. United States*, 219 U.S. 346, 361 (1911). As the Supreme Court recently reiterated, "'no case or controversy' exists 'between a judge who adjudicates claims

23

under a statute and a litigant who attacks the constitutionality of the statute.'" *Whole Woman's Health v. Jackson*, 595 U.S. 30, 40 (2021) (quoting *Pulliam v. Allen*, 466 U.S. 522, 538 n.18 (1984)). That is because "[j]udges exist to resolve controversies"—not "to wage battle as contestants in the parties' litigation." *Id.*; *accord In re Justices of Sup. Ct. of P.R.*, 695 F.2d at 22 (a judge "is not an adversary of the plaintiff, but a judicial officer bound to decide the issue according to the law as he finds it" (quoting *Mendez v. Heller*, 380 F. Supp. 985, 990 (E.D.N.Y. 1974))). Following *Whole Woman's Health*, federal courts of appeals have held that plaintiffs lack standing to challenge actions taken by judges when acting in an adjudicatory capacity—that is, when finding facts, determining law, and applying the law to the facts of the case before them. *See, e.g.*, *Kellogg v. Nichols*, 170 F.4th 20, 26–27 (2d Cir. 2026) (per curiam); *Frazier v. Prince George's Cnty.*, 140 F.4th 556, 562 (4th Cir. 2025); *Reule v. Jackson*, 114 F.4th 360, 365 (5th Cir. 2024); *Lindke v. Tomlinson*, 31 F.4th 487, 491 (6th Cir. 2022).

That settled rule applies here because, when the D.C. Court of Appeals considers Clark's case, the court's judges will be acting in an adjudicatory capacity. "[D]etermining who is authorized to practice law" is an "inherent judicial function." *Simons v. Bellinger*, 643 F.2d 774, 780 (D.C. Cir. 1980). It belongs "exclusively" to courts, which "exercise and regulate it by a sound and just judicial discretion." *Id.* (quoting *Ex parte Secombe*, 60 U.S. (19 How.) 9, 13 (1856)). In performing that function, the D.C. Court of Appeals will hear arguments from adverse parties, review the evidence and applicable law, determine whether the facts establish a violation, consider Clark's defenses, and, if appropriate, issue a sanction. *See Carter*, 333 A.3d at 563–64, 566–67. And "if, as plaintiff contends, the [potential discipline] is unconstitutional, then the judge's sole interest is in so determining." *In re Justices of Sup. Ct. of P.R.*, 695 F.2d at 22 (citation

24

modified).  All that is the work of a neutral adjudicator, not of an "adverse litigant[]" suable in a different court.  *Muskrat*, 219 U.S. at 361.

Indeed, this case perfectly illustrates the perils of suing courts and their judges.  The United States asserts in this action that the Supremacy Clause and Article II prohibit disciplining Clark. *See* Compl. ¶¶ 106–36.  The United States and Clark have made similar arguments in Clark's disciplinary proceedings before the D.C. Court of Appeals.  *See* U.S. Amicus Br. at 20 ("The Court should decline the proposed use of its ethics rules and disciplinary proceedings to infringe upon the Department's decisionmaking processes and disrupt its core executive responsibilities."); Clark's Mot. to Bifurcate Appeal at 3, *In re Clark*, No. 25-BG-0731 (D.C. Sept. 29, 2025) ("Mr. Clark's conduct in this case is shielded by absolute immunity.").  If this suit is not dismissed on threshold grounds and proceeds to the merits, the D.C. Court of Appeals will be in the difficult position of being asked as a party defendant to express in this suit its views on the merits of issues that the court would ordinarily resolve in its adjudicative capacity, "consistent with [its] ethical obligation of neutrality."  *Whole Woman's Health*, 595 U.S. at 41.  This Court should reaffirm that neutral arbiters are "in no sense adverse to the parties whose cases they decide"—and so should dismiss the United States' suit against the Court Defendants.  *Id.* (citation modified).

### 4.    The Complaint Fails to Plausibly Allege a Case or Controversy Between the United States and the District.

The United States' claims against the District should be dismissed because the Complaint fails to plausibly allege an injury-in-fact caused by the District.  *See Jones*, 143 F.4th at 495; *Murthy*, 603 U.S. at 69.  The Complaint includes only one allegation about the District:  It "is a governmental body corporate and has authorized by law the D.C. Court of Appeals to issue and enforce rules of ethics."  Compl. ¶ 36.  This legal conclusion—which need not be accepted as true—is wrong.  The District has not authorized the D.C. Court of Appeals to issue and enforce

25

rules of ethics—*Congress* has. *See* Pub. L. No. 91-358, § 111, 84 Stat. at 521; *see generally Clark*, 678 F. Supp. 3d at 115–16. Further, the District government has no power to alter those rules, or otherwise to control the manner in which the D.C. Court of Appeals adjudicates a disciplinary proceeding. D.C. Code § 1-206.02(a)(4) (restricting the D.C. Council from enacting any law "with respect to any provision of Title 11 (relating to organization and jurisdiction of the District of Columbia courts)"). Accordingly, the District itself plays no role in the disciplinary proceedings against Clark, and an injunction or declaration against the District would not redress the United States' purported injuries. The District should therefore be dismissed from this case.

## II.    Many Defendants Are Not Subject to Suit.

### A.    The D.C. Court of Appeals and Its Instrumentalities Cannot Be Sued.

As this Court has held, the D.C. Court of Appeals is "not [a] proper defendant[] and therefore must be dismissed." *Hoai v. Superior Ct. of D.C.*, 539 F. Supp. 2d 432, 435 (D.D.C. 2008) (Leon, J.), *aff'd*, 344 F. App'x 620, 620 (D.C. Cir. 2009) ("the judicial entities named as defendants are not subject to suit"). "[A]n agency established by Congress may not be sued *eo nomine* (in its own name) unless Congress has authorized the entity to be sued by explicit language or by implication." *Chisholm v. Superior Ct. of D.C.*, No. 06-cv-2174, 2007 WL 1601718, at *1 n.1 (D.D.C. June 4, 2007); *see Blackmar v. Guerre*, 342 U.S. 512, 514–15 (1952). Here, "the legislation which vested the judicial power of the District of Columbia in the Superior Court and Court of Appeals did not authorize those courts to be sued either expressly or by implication." *Kundrat v. District of Columbia*, 106 F. Supp. 2d 1, 6 (D.D.C. 2000) (citing *Thompson v. District of Columbia*, 1980 WL 123, at *2 (D.D.C. 1980)); *see* Pub. L. No. 91-358, § 111, 84 Stat. at 475 (vesting legislation). Thus, numerous courts in this District have dismissed claims against the D.C. Court of Appeals and the D.C. Superior Court on the ground that they are not proper defendants.

26

*See, e.g.*, *Sibley v. U.S. Sup. Ct.*, 786 F. Supp. 2d 338, 344–45 (D.D.C. 2011); *Hoai*, 539 F. Supp. 2d at 435, *aff'd*, 344 F. App'x 620; *Daskalea v. Wash. Humane Soc'y*, 480 F. Supp. 2d 16, 22 (D.D.C. 2007); *Chisholm*, 2007 WL 1601718, at *1 n.1 (collecting additional cases).[5]  The same result is warranted for the D.C. Court of Appeals here.

Claims against the Board and ODC are likewise barred because both are "instrumentalit[ies]" of the D.C. Court of Appeals that do not have separate legal existence. *Klayman v. Fox*, No. 18-cv-1579, 2019 WL 2396538, at *1 (D.D.C. June 5, 2019).  The D.C. Court of Appeals created the Board and ODC under its authority to "make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion."  D.C. Code § 11-2501(a); D.C. Bar R. XI §§ 4, 6; *see Nwachukwu v. Rooney*, 362 F. Supp. 2d 183, 191–92 (D.D.C. 2005).  Nothing in the D.C. Court of Appeals' creation of the Board or ODC established either body as a distinct entity with its own legal identity separate from the court, and "a plaintiff cannot sue an entity that lacks a separate legal existence." *Hale v. Collis*, No. 21-cv-1469, 2022 WL 3016747, at *10 (D.D.C. July 29, 2022); *see also Arias v. Univ. Music Grp.*, 640 F. Supp. 3d 84, 89 (D.D.C. 2022) ("Courts in this District have previously declined to permit suits to proceed against parties that are not 'separate legal entities'" (citation modified)).  As a result, neither the D.C. Court of Appeals, the Board, nor ODC is subject to suit, and claims against all three entities should be dismissed.  *See, e.g.*, *Klayman v. Porter*, No. 24-cv-2853, 2026 WL 320191, at *5 (D.D.C. Feb. 6, 2026) (Board and ODC; citing

---

[5] In reaching this conclusion, some courts have characterized the D.C. courts as "bodies within the District of Columbia government." *Sibley*, 786 F. Supp. 2d at 344 (quoting *Daskalea*, 480 F. Supp. 2d at 22).  But ultimately, "[w]hether an entity . . . is amenable to suit does not turn on whether it falls under the umbrella of the District of Columbia government," but rather on "whether Congress authorized suit." *Daskalea*, 480 F. Supp. 2d at 24 (citing *Braxton v. Nat'l Capital Hous. Auth.*, 396 A.2d 215 (D.C. 1978)).  Congress has not authorized suit against the D.C. courts, regardless of whether they are viewed as entities of the D.C. local government.

cases), *appeal filed*, No. 26-7024 (D.C. Cir. Mar. 12, 2026); *Fox*, 2019 WL 2396538, at \*11 (ODC); *Klayman v. Lim*, No. 18-cv-2209, 2019 WL 2396539, at \*4 (D.D.C. June 5, 2019) (ODC), *aff'd on other grounds*, 830 F. App'x 660 (D.C. Cir. Oct. 6, 2020); *Hoai*, 539 F. Supp. 2d at 435 ("naming the D.C. courts, and their components, as defendants does not save plaintiffs' claims because those entities are *non sui juris*"), *aff'd*, 344 F. App'x at 620.

### B.   The Official-Capacity Claims Should Be Dismissed.

The United States' claims against individual defendants in their official capacities should also be dismissed.  Those claims are duplicative of the claims against the institutional entities, and two of the individual defendants are also immune from suit.

### 1.   The Claims Against the Individual Defendants Are Duplicative.

It is "the 'overwhelming approach' in this district to summarily dismiss 'government officials sued in their official capacities in conjunction with suits also filed against the municipality.'"  *Ruffin v. District of Columbia*, 662 F. Supp. 3d 1, 9 (D.D.C. 2023) (quoting *York v. Karbah*, No. 20-cv-3669, 2021 WL 5998390, at \*7 (D.D.C. Dec. 19, 2021)).  Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"—such suits are "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citation omitted); *see Thomas v. Smoot*, No. 16-5024, 2018 WL 3159148, at \*1 (D.C. Cir. May 16, 2018) (per curiam); *N.B. v. District of Columbia*, 244 F. Supp. 3d 176, 188 (D.D.C. 2017) (Leon, J.).  Thus, courts frequently dismiss as "redundant" and "unnecessary" claims against official-capacity defendants when the entity itself is a named defendant. *Price v. District of Columbia*, 545 F. Supp. 2d 89, 95 (D.D.C. 2008).  These principles mandate dismissal of the official-capacity claims against Chief Judge

Blackburne-Rigsby, Board Chair Walker, Disciplinary Counsel Fox, and Assistant Disciplinary Counsel Metzler.

### 2.    Two of the Individual Defendants Are Immune from Suit.

In addition, Chief Judge Blackburne-Rigsby and Chair Walker are entitled to common-law judicial immunity from suit.  "[J]udicial Defendants are absolutely immune from suit for monetary damages as well as equitable relief."  *Hill v. Traxler*, No. 13-cv-1037, 2013 WL 4580456, at \*1 (D.D.C. July 9, 2013) (citation omitted), *aff'd*, 550 F. App'x 1 (D.C. Cir. 2013).   Congress "restore[d] the doctrine of judicial immunity" for suits under 42 U.S.C. § 1983 by statute in 1996, and "explicitly immunize[d] judicial officers against suits for injunctive relief."  *Roth v. King*, 449 F.3d 1272, 1286 (D.C. Cir. 2006); *Colvin v. Tunnage*, No. 1:25-cv-02554, 2026 WL 1174105, at \*2 (D.D.C. Mar. 9, 2026), *appeal filed*, No. 26-7047 (D.C. Cir.); *see* Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853.  Courts in this District have since recognized judicial immunity to apply in suits outside the § 1983 context.  *See, e.g.*, *Hill*, 2013 WL 4580456, at \*1; *see also Klayman v. Rao*, No. 21-cv-02473, 2021 WL 4948025, at \*3 (D.D.C. Oct. 25, 2021).  Such immunity makes particular sense here.  No court can direct Chief Judge Blackburne-Rigsby to resolve the pending disciplinary proceeding in a particular way.  *See United States v. Lawrence*, 3 U.S. (3 Dall.) 42, 53 (1795) ("[W]e have no power to compel a Judge to decide according to the dictates of any judgment, but [her] own.").  Instead, the proper and only avenue for a litigant to seek relief is to challenge a decision through "direct appeal of the judge's order," *Jenkins v. Kerry*, 928 F. Supp. 2d 122, 135 (D.D.C. 2013), which here is available through a petition for certiorari.  *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983).

The same judicial immunity extends to Chair Walker's performance of his quasi-judicial functions.  "Over the years, courts have extended [absolute judicial] immunity to other officials

29

performing 'quasi-judicial functions' if two conditions are met: (1) 'the act must not have been taken in the clear absence of jurisdiction;' and (2) 'the act must be a judicial act.'" *Fox*, 2019 WL 2396538, at *11 (quoting *Nwachukwu*, 362 F. Supp. 2d at 192). Applying these principles, the D.C. Circuit recognized in *Simons* that "members of a [D.C. Court of Appeals] committee 'empowered to investigate and prosecute' charges of unauthorized practice of law were entitled to absolute immunity because the committee members 'serve[d] as an arm of the court and perform[ed] a function which traditionally belongs to the judiciary.'" *Fox*, 2019 WL 2396538, at *11 (quoting *Simons*, 643 F.2d at 780).

Courts have read *Simons* broadly to hold that all "D.C. Bar disciplinary proceedings are judicial proceedings and . . . officials who participate in those proceedings are engaged in judicial acts that are entitled to absolute immunity." *Id.* (noting *Simons*' conclusion is consistent with *Butz v. Economou*, 438 U.S. 478 (1978), which extended immunity to participants in agency administrative adjudication); *see Klayman v. Porter*, No. 20-cv-3109, 2022 WL 3715775, at *10-11 (D.D.C. Aug. 29, 2022), *aff'd in part, vacated in part, rev'd in part on other grounds*, 104 F.4th 298 (D.C. Cir. 2024) (same); *see also Lim*, 830 F. App'x at 662 ("D.C. officials charged with disciplining individuals engaged in the unauthorized practice of law are 'entitled to the protection of absolute immunity'" (quoting *Simons*, 643 F.2d at 882)). That principle is on all fours here. There are no allegations that Chair Walker has taken any judicial act "in the clear absence of jurisdiction," so absolute immunity applies. *Fox*, 2019 WL 2396538, at *11 (citation modified).

Chair Walker additionally enjoys judicial immunity because the United States seeks relief only against his past judicial acts. *See* Compl. ¶ 137(i), (ii). Officials acting in a judicial capacity are absolutely immune from suits "in which a party seeks an injunction compelling [them] to alter an earlier decision." *Lewis v. Green*, 629 F. Supp. 546, 553 (D.D.C. 1986). And the same

immunity applies to a claim for "retrospective declaratory relief of a violation of federal law." *Jenkins*, 928 F. Supp. 2d at 135; *see also Klayman v. Blackburne-Rigsby*, No. 21-cv-0409, 2021 WL 2652335, at *2–3 (D.D.C. June 28, 2021) (dismissing claims against D.C. Court of Appeals judges and clerk arising from completed disciplinary proceeding). As detailed in section I.B.2, *supra*, the Board's substantive involvement in Clark's disciplinary matter ended when it issued its report and recommendation on July 31, 2025, leaving no future conduct for this Court to declare unlawful or enjoin. *See* Compl. ¶¶ 5, 73–74; D.C. Bar R. XI § 9(d). The United States cannot seek relief against Chair Walker and the Board "simply to proclaim liability for a past act." *Ruhbayan v. Smith*, No. 21-7419, 2022 WL 2764422 (4th Cir. July 15, 2022) (quoting *Just. Network*, 931 F.3d at 764). Any challenge to a "ruling[] made during the course of judicial proceedings" must be made "by appeal," not collateral attack. *Lewis*, 629 F. Supp. at 553.

Finally, Chair Walker's common-law immunity is reinforced by D.C. Bar Rule XI § 19(a), which immunizes members of the Board "from civil suit for any conduct in the course of their official duties." D.C. Bar R. XI § 19(a); *see Lim*, 830 F. App'x at 662. Courts in this District have applied the Rule to confer immunity on individuals acting "within the scope of their official duties as the disciplinary arm of the [D.C. Court of Appeals]." *Thomas v. Knight*, 257 F. Supp. 2d 86, 94 (D.D.C. 2003); *see, e.g.*, *Richardson v. District of Columbia*, 711 F. Supp. 2d 115, 128 (D.D.C. 2010) ("The Rule provides immunity to Members of the Board . . . on its face"); *Nwachukwu*, 362 F. Supp. 2d at 192 (similar); *but see Fox*, 2019 WL 2396538, at *11 n.3 (stating that D.C. Bar Rules are "not binding" for purposes of federal claims). Because the United States does not allege that Chair Walker acted beyond the scope of his official duties, the Rule shelters him from suit.

## III. The Court Should Abstain Under *Younger v. Harris.*

The Court should also abstain from interfering with the ongoing D.C. Court of Appeals

31

proceedings under the comity principles of *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* abstention doctrine provides that federal courts should defer to pending state-court proceedings—including proceedings in the D.C. courts, and including attorney-disciplinary proceedings—unless extraordinary circumstances exist. Because this is a paradigmatic "instance[] in which the prospect of undue interference with state proceedings counsels against federal relief," *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013), the Court should abstain in favor of the pending D.C. Court of Appeals proceedings and dismiss the Complaint.

*Younger* abstention is a prudential doctrine rooted in "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). The policy reflects that, "in a Union where both the States and the Federal Government are sovereign entities, there are basic concerns of federalism which counsel against interference by federal courts, through injunctions or otherwise, with legitimate state functions, particularly with the operation of state courts." *Trainor v. Hernandez*, 431 U.S. 434, 441 (1977). In light of those concerns, the Supreme Court has "repeat[ed] time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Younger*, 401 U.S. at 45.

State attorney disciplinary proceedings are subject to *Younger*. The Supreme Court concluded in *Middlesex* that such proceedings are "judicial in nature" and thus "of a character to warrant federal-court deference" to each state's "extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses." 457 U.S. at 433–35; *see Sprint*, 571 U.S. at 79 (reaffirming that *Younger* applies to "state-initiated disciplinary proceedings against [a] lawyer for violation of state ethics rules"). Under *Younger* and *Middlesex*, federal abstention is

32

appropriate in challenges to state disciplinary matters "[s]o long as the constitutional claims [raised in the federal case] can be determined in the state proceedings[,] and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex*, 457 U.S. at 435.  Because the D.C. Circuit has held that the District of Columbia is a "State" for *Younger* purposes, *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1125 (D.C. Cir. 2004), courts in this District have applied *Younger* abstention in federal actions to enjoin D.C. disciplinary proceedings.  *See, e.g.*, *Lim*, 830 F. App'x at 662–63; *Klayman v. D.C. Ct. of Appeals*, No. 24-cv-2997, 2025 WL 1517247, at *6–7 (D.D.C. May 28, 2025).

This case meets every prerequisite for *Younger* abstention.  *First*, "the constitutional claims" at issue "can be determined in the state proceedings." *Middlesex*, 457 U.S. at 435.  Each of the United States' claims here is available for Clark to raise as a defense before the D.C. Court of Appeals.  *See, e.g.*, *In re Richardson*, 692 A.2d 427, 432–33 (D.C. 1997) (adjudicating constitutional defenses in disciplinary proceeding).  In fact, Clark has already done just that: His initial brief asserts, among other things, that the proceedings against him violate the intergovernmental immunity doctrine and impermissibly interfere with the President's execution of his responsibilities under Article II of the Constitution.  *Compare* Exceptions to Bd. Report at 26–27, *with* Compl. ¶¶ 106–136.  And the United States' amicus brief makes similar arguments.  *See* U.S. Amicus Br. at 10-20.  The issues raised in this action are therefore already pending for determination before the D.C. Court of Appeals—and, if necessary, can later be raised before the U.S. Supreme Court in a petition for certiorari.  *See Feldman*, 460 U.S. at 482.

*Second*, there is no adequate allegation of bad faith, harassment, or any other extraordinary circumstance that could defeat abstention.  "[I]t is only when the state proceeding is brought with no legitimate purpose that th[e] state interest in correcting its own mistakes dissipates, and along

33

with it, the compelling need for federal deference." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 200 (2d Cir. 2002). Although the United States asserts that political bias motivated the challenged disciplinary proceeding here, those contentions do not come close to meeting the requisite threshold of "'substantial,' nonconclusory allegations that the Disciplinary Counsel defendants have pursued th[is] matter[] 'with[out] any expectation of' sustaining the charges against [Clark]." *Lim*, 830 F. App'x at 663 (quoting *Younger*, 401 U.S. at 48). Nor does the United States allege facts that "creat[e] an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Kugler v. Helfant*, 421 U.S. 117, 125 (1975); *accord Rumber v. District of Columbia*, 595 F.3d 1298, 1301–02 (D.C. Cir. 2010) (rejecting exceptions to *Younger* abstention). It does not "plainly appear[]" that abstaining and allowing the issues presented here to be adjudicated in the normal course in the D.C. Court of Appeals "would not afford adequate protection" to the United States' or Clark's rights. *Middlesex*, 457 U.S. at 435 (quoting *Younger*, 401 U.S. at 45). Concluding otherwise would contradict the Supreme Court's admonition in *Middlesex* that "[m]inimal respect for the state processes . . . precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Id.* at 431.

The fact that the United States is not a party in the disciplinary proceedings should not prevent this Court from abstaining. In *Hicks v. Miranda*, 422 U.S. 332 (1975), the Supreme Court explained that "'[t]he same comity considerations'" motivating *Younger* abstention apply "where the interference" with state proceedings is sought by plaintiffs whose interests are "intertwined" with those of the state parties. *Id.* at 348–49 (quoting *Allee v. Medrano*, 416 U.S. 802, 831 (1974) (Burger, C.J., concurring)); *see also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975) (reiterating that "there plainly may be some circumstances in which legally distinct parties are so closely

34

related that they should all be subject to the *Younger* considerations which govern any one of them"). Applying those principles, several circuits have found that, even where a federal plaintiff is not a party in state court, *Younger* abstention is appropriate so long as "[1] the interests of the parties seeking relief in federal court are closely related to those of parties in pending state proceedings and . . . [2] the federal action seeks to interfere with pending state proceedings." *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 881–82 (8th Cir. 2002) (citation modified); *accord Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 82–85 (2d Cir. 2003); *Herrera v. City of Palmdale*, 918 F.3d 1037 (9th Cir. 2019).

Both of those conditions are met here. For one thing, the United States expressly asks the Court to "directly interfere with the pending disciplinary proceeding" in the D.C. Court of Appeals—precisely what *Younger* forbids. *Spargo*, 351 F.3d at 85; *see also, e.g.*, *Herrera*, 918 F.3d at 1047 (finding *Younger* abstention applied because federal claims of non-parties to challenged state action "present[ed] the same risk of interference in the state proceeding" as federal claims of the parties to the state action). As for overlapping interests, the United States' own statements make clear that its priorities and concerns are closely intertwined with Clark's. For instance, the United States' amicus brief claims that "inserting a bar ethics complaint into [a] deliberative process" among senior Department of Justice attorneys "threatens profound negative consequences for decisionmaking within the Executive Branch." U.S. Amicus Br. at 3. Clark likewise asserts that "courts" should not be permitted to "chill zealous internal Executive Branch advocacy through the specter of attorney discipline." Exceptions to Bd. Report at 22. These statements and others illustrate that the United States' asserted interests in the D.C. Court of Appeals proceeding are tightly bound up with Clark's—which is exactly why the federal government asks this Court to halt the state court's adjudication.

35

Additionally, "abstention from exercise of federal jurisdiction is not improper simply because the United States is the party seeking a federal forum." *United States v. Ohio*, 614 F.2d 101, 104 (6th Cir. 1979). "While federal jurisdiction of cases brought by the United States has unquestionably been granted by Congress," the Sixth Circuit reasoned in a leading case, "exercise of this jurisdiction must be tempered by the judicial doctrine of abstention whenever the interest of states in administering their own laws, as well as in deciding constitutional questions, would be unnecessarily hampered by federal judicial proceedings." *Id.* at 105; *see also id.* at 104 (noting that "*Younger* stresses respect for comity and federalism, that is, proper deference to a state's interest in ongoing proceedings in its own forums" (citation modified)).

Although there are other cases declining to apply *Younger* when the United States is a party, each featured a factual circumstance that is absent here. For example, the Ninth Circuit declined to apply *Younger* in a case where "federal-state conflict . . . [wa]s inevitable" because there was no way "to avoid the [federal] preemption issue" the case presented. *United States v. Morros*, 268 F.3d 695, 708 (9th Cir. 2001). That case recognized that abstention could still be appropriate where—as here—a state court's decision "could avoid the constitutional question" and so eliminate the need for federal court review. *Id.* at 709 (citing *Ohio*, 614 F.2d at 104). Nor does this case involve the unique context of "a criminal investigation that involves the sitting President," *Trump v. Vance*, 941 F.3d 631, 638 (2d Cir. 2019), *aff'd on other grounds*, 591 U.S. 786 (2020), or a situation where the United States seeks declaratory relief on topics far broader than the pending state proceeding, *United States v. Composite State Bd. of Med. Exam'rs*, 656 F.2d 131 (5th Cir. Unit B Sept. 1981). Instead, the United States seeks to preemptively block a pending attorney-disciplinary proceeding against a former official—a suit that could be rendered unnecessary by future proceedings in the D.C. court. *Younger* squarely applies to these circumstances.

36

**IV.    The United States' Claims Fail on the Merits.**

**A.    Counts I and II Do Not State Claims.**

Under the "intergovernmental immunity" doctrine, the Constitution's Supremacy Clause "generally immunizes the Federal Government" from state laws that (1) "directly regulate" the United States or (2) "discriminate against it," unless Congress authorizes such state regulation. *United States v. Washington*, 596 U.S. 832, 835 (2022); *see* U.S. Const. art. VI, cl. 2; *Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.*, 642 F.2d 527, 534–36 & n.65 (D.C. Cir. 1980) (applying intergovernmental-immunity principles to D.C. laws).  The United States fails to state a claim on either theory.

**1.    The United States Has Failed to State a Direct-Regulation Claim under the Supremacy Clause (Count I).**

Count I—the United States' direct-regulation claim—fails on two independent grounds. First, the Complaint does not adequately allege that any of the Defendants are "directly" regulating the federal government by virtue of their roles in the disciplinary proceedings against Clark. Second, in any event, Congress has eliminated any Supremacy Clause problem by mandating that Department attorneys "shall be subject" to state ethics "laws and rules" to the "same extent and in the same manner as other attorneys in [the relevant] State."  28 U.S.C. § 530B(a).

**a.    The United States Has Not Adequately Alleged any "Direct" Regulation of the Federal Government.**

As the Supreme Court has explained, "[s]tate tax laws, licensing provisions, contract laws, or even a statute or ordinance regulating the mode of turning at the corner of streets . . . regulate federal activity in the sense that they make it more costly for the Government to do its business." *North Dakota v. United States*, 495 U.S. 423, 434 (1990) (plurality opinion) (citation modified). But the Court has "decisively rejected the argument that any state regulation which indirectly regulates the Federal Government's activity is unconstitutional."  *Id.* at 434, 436–37; *see also, e.g.,*

37

*South Carolina v. Baker*, 485 U.S. 505, 520, 523 (1988). Rather, the Court has "adopted a functional approach to claims of governmental immunity, accommodating of the full range of each sovereign's legislative authority and respectful of the primary role of Congress in resolving conflicts between the National and State Governments." *North Dakota*, 495 U.S. at 435.

Under this doctrine, "an employee of the United States does not secure a general immunity from state law while acting in the course of his employment"—particularly where state law "merely touch[es] the Government servants remotely by a general rule of conduct." *Johnson v. Maryland*, 254 U.S. 51, 56–57 (1920); *see also Hancock v. Train*, 426 U.S. 167, 179–80 (1976). As *Johnson* explained, "[t]hat was decided long ago" in *United States v. Hart*, 26 F. Cas. 193 (C.C.D. Pa. 1817) (No. 15,316), which concluded that a city constable could permissibly stop a postal vehicle that was driving dangerously. *Johnson*, 254 U.S. at 56. Even in the face of congressional silence, a federal employee "very well may be" required to comply with state laws that "affect incidentally the mode of carrying out the[ir] employment," such as laws "regulating the mode of turning at the corners of streets." *Id.* More broadly, "federal programs or properties" are not "necessarily insulated" from "incidental or nonburdensome" local laws. *Don't Tear It Down*, 642 F.2d at 535–36 & n.77 (citing examples); *see also K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503, 507 (D.C. Cir. 2020); *Texas v. DHS*, 123 F.4th 186, 206–07 & nn.23–24 (5th Cir. 2024).

The challenged disciplinary proceedings do not amount to "direct" regulation of the federal government. At most, the disciplinary proceedings will "merely touch . . . Government servants remotely by a general rule of conduct." *Johnson*, 254 U.S. at 57. Just as local officials may require federal postal workers to comply with basic traffic rules when they deliver the mail, *Johnson*, 254 U.S. at 56, so too may the D.C. Court of Appeals or any state high court require members of its

38

bar—including employees of the Department—to follow fundamental ethics rules, including the bedrock rule of being truthful in their practice of law. Such an "incidental [and] nonburdensome" ethics rule leaves federal attorneys with ample leeway to act in the interests of the United States, *Don't Tear It Down*, 642 F.2d at 536, and does not "regulate[] the government *qua* government," *United States v. California*, 173 F.4th 1060, 1067 (9th Cir. 2026); *see also, e.g.*, *Texas*, 123 F.4th at 193–94, 205, 207–08 (state tort law prohibiting federal agents from unnecessarily destroying the state's border fencing imposed an "incidental" burden and thus was not a "direct" regulation).

Because the pending proceedings against Clark are not tantamount to "direct regulation" of the federal government, Count I should be dismissed.

   **b.**  **Congress Has Expressly Authorized the D.C. Disciplinary Proceedings the United States Seeks to Halt.**

Even if the pending proceeding against Clark amounted to "direct regulation" of the federal government, it nevertheless fully comports with the Supremacy Clause because the proceeding is expressly authorized by Congress. Courts hold that intergovernmental immunity is waived when "Congress has authorized regulation that would otherwise violate" intergovernmental immunity through "a clear congressional mandate." *Washington*, 596 U.S. at 839 (quoting *Hancock*, 426 U.S. at 179). In that circumstance, the federal statute is the "supreme" federal law, and there is no conflict between state and federal law for the Supremacy Clause to resolve.

Congress has expressly authorized the D.C. disciplinary proceedings challenged here, making clear that intergovernmental immunity does not apply. The McDade Amendment, 28 U.S.C. § 530B, directs that Department attorneys "shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State." 28 U.S.C. § 530B(a). The title of the McDade Amendment—"Ethical standards for attorneys for the

39

Government"—makes clear that the statute addresses state rules of ethics, and the Department of Justice recognizes that the District of Columbia is a "State" within the meaning of the statute. *See, e.g.*, 28 C.F.R. § 77.2(h) (explaining that the statute covers rules "adopted by . . . the District of Columbia . . . that prescribe ethical conduct for attorneys and that would subject an attorney . . . to professional discipline").

As another court in this District explained in rejecting Clark's effort to remove his disciplinary proceedings to federal court, the McDade Amendment thus "subject[s] government attorneys in D.C. to D.C.'s bar rules." *Clark*, 678 F. Supp. 3d at 129 (Contreras, J.); *see In re Clark*, 311 A.3d 882, 887–89 (D.C. 2024) (same). By providing that Department attorneys "shall be subject to State laws and rules" where they practice "*to the same extent* and *in the same manner* as other attorneys in that State*," 28 U.S.C. § 530B(a) (emphases added), the McDade Amendment requires Department attorneys who practice in the District to comply with its disciplinary procedures, just like other attorneys admitted to practice in the District.

Because the McDade Amendment clearly authorizes the pending disciplinary proceedings against Clark, the United States' Supremacy Clause claim necessarily fails. *See, e.g.*, *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181–82 (1988) (holding that a state could impose a supplemental award of workers' compensation on a federally owned facility for violating state safety regulations because a federal statute authorized application of state workers' compensation laws to such facilities "in the same way and to the same extent as if said premises were under the exclusive jurisdiction of the State" (quoting 40 U.S.C. § 290 (1988))); *Hancock*, 426 U.S. at 171–72 (concluding federal installations were subject to state "air pollution control and abatement measures" under federal statute requiring federal entities to "comply with . . . State . . .

40

requirements respecting control and abatement of air pollution to the same extent that any person is subject to such requirements" (quoting 42 U.S.C. § 1857f (1976))).

The United States' only rebuttal is unpersuasive.  According to the Complaint, the McDade Amendment does not authorize state disciplinary proceedings against Department attorneys when the underlying conduct involves "internal Executive Branch deliberations."  Compl. ¶ 133.  The federal government does not reach that result through the text of the statute, but rather on the theory that a contrary construction "would violate Article II."  *Id.* ¶¶ 51, 133–34.  But as explained below, Article II does not prohibit the D.C. Court of Appeals from adjudicating Clark's disciplinary proceeding, including by resolving the constitutional objections Clark has pressed.  *See infra* Section IV.B.  And the United States offers no other reason to find the McDade Amendment inapplicable to the D.C. disciplinary proceedings at issue here.[6]

### 2.      The United States Has Failed to State a Discriminatory-Regulation Claim under the Supremacy Clause (Count II).

Count II—the United States' Supremacy Clause claim based on a discriminatory-regulation theory—likewise fails.  "[A] state law discriminates against the Federal Government or

---

[6] Another statute—28 U.S.C. § 530C—confirms that Congress has authorized local disciplinary proceedings against Department attorneys.  Congress provided in 28 U.S.C. § 530C(c)(1) that the Department may employ an attorney only if he "is duly licensed and authorized to practice as an attorney under the law of a State, a territory of the United States, or the District of Columbia."  On its face, Section 530C requires not only that a Department attorney be *admitted* to at least one state bar, but also that he *maintain* membership in that bar—which, of course, means that the attorney must comply with that state's ethics rules and disciplinary procedures.  *See, e.g.*, D.C. R. Pro. Conduct, Scope [3] ("Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process.").  For that reason, another court in this District relied on a predecessor of Section 530C to reject a similar Supremacy Clause challenge mounted by the United States to state disciplinary proceedings against a Department attorney.  *See United States v. Ferrara*, 847 F. Supp. 964, 968–70 (D.D.C. 1993) (reasoning that Congress "clearly contemplated compliance with state bar ethical standards" because to be "duly licensed and authorized to practice as an attorney" in a state, an attorney "must of necessity comply with that state's code of professional responsibility"), *aff'd on other grounds*, 54 F.3d 825 (D.C. Cir. 1995).  Section 530B had not yet been enacted when *Ferrara* was decided.

its contractors if it 'single[s them] out' for less favorable 'treatment,' or if it regulates them unfavorably on some basis related to their governmental 'status.'" *Washington*, 596 U.S. at 839 (citations omitted). The rules at issue in Clark's disciplinary proceedings do neither.

Here, the relevant D.C. requirements are Rules 8.4(c) and (a) of the D.C. Rules of Professional Conduct. Rule 8.4(c) bars "lawyer[s]" from "[e]ngag[ing] in conduct involving dishonesty" or "misrepresentation," and Rule 8.4(a) bars "lawyer[s]" from "attempt[ing]" to violate any other ethics rule. These rules plainly do not single out federal attorneys or regulate them on some basis related to their federal status. The United States does not contend otherwise.

Instead, the United States asserts that Defendants are treating Clark differently than lawyers outside of the federal government in *applying* these neutral rules of ethics. But the paltry allegations in the United States' Complaint do not give rise to any inference—much less a plausible one—that Defendants are applying the neutral D.C. ethics rules in a manner that discriminates against the federal government. Even if a discriminatory-regulation claim could be predicated on the *recommendation* of the Board and the *position* of ODC that Clark should be disbarred for his conduct, the United States points to nothing in the Board's recommendation or ODC's filings that even hints that either entity is holding attorneys for the federal government to a different standard than other attorneys. Instead, the United States rests its discriminatory-application argument on two anodyne allegations, neither of which can bear the heavy weight placed on them: that "Defendants have never" (1) "penalized a state, local, or private attorney for an unsent pre-decisional and deliberative draft document" or (2) "recommended for disbarment a state, local, or private attorney for allegedly 'attempting to lie' once." Compl. ¶¶ 120–21.

But the United States points to no comparator attorney outside the federal government who engaged in conduct similar to Clark's and was determined by ODC and the Board *not* to warrant

42

disbarment or other discipline.  Absent such allegations, there is no basis for concluding that Defendants are treating federal government attorneys differently from other similarly situated attorneys, and the discriminatory-regulation claim necessarily fails.  *See, e.g.*, *Jefferson Cnty. v. Acker*, 527 U.S. 423, 443 (1999) (rejecting discriminatory-regulation claim because "[t]he record show[ed] no discrimination . . . between similarly situated federal and state employees"); *cf., e.g.*, *Branch Ministries v. Rossotti*, 211 F.3d 137, 144–45 (D.C. Cir. 2000) (explaining that to establish a selective-enforcement claim, a plaintiff must show "that it was singled out for prosecution from among others who were similarly situated").[7]

In short, the United States' allegations do not come close to making out a claim that any Defendant is applying the neutral ethics rules of the D.C. Court of Appeals in a manner that discriminates against federal attorneys.  Count II should therefore be dismissed.

### B.   Count III Does Not State a Claim.

Count III of the Complaint alleges that Defendants have violated Article II by "punish[ing]" Clark for "internal Executive Branch deliberations."  Compl. ¶ 133; *see id.* ¶¶ 3–6. But Defendants have not "punished" Clark at all.  At this point, the Board has merely issued a non-binding recommendation for disciplinary sanction, which the D.C. Court of Appeals will review

---

[7] Although the United States claims that Defendants are treating some "Federal Government attorneys" differently "vis-à-vis other Federal Government attorneys" based on "factors other than the disinterested administration of justice," Compl. ¶ 84; *id.* ¶¶ 12, 15, 111, that assertion has no relevance to whether Defendants are discriminating against the *federal government*.  Nor does that assertion somehow bolster the United States' claim that Defendants are directly regulating the federal government.  Because the United States cites no case law to the contrary, this Court need not evaluate the United States' allegations concerning the allegedly disparate discipline imposed on former FBI attorney Kevin Clinesmith.  *Id.* ¶¶ 13, 85–88.  In any event, Clark has not been disciplined, and the cited Hearing Committee report concerning Clinesmith details the many fact-specific considerations that affected the negotiated discipline in that case.  *See In re Clinesmith*, No. 21-ND-004 (Hr'g Comm. No. Four Aug. 11, 2021), https://perma.cc/TSV2-894M, *recommendation adopted*, No. 21-BG-018 (D.C. Sep. 2, 2021), https://perma.cc/J3ME-D27V.

as part of an adversarial proceeding. In that proceeding, Clark has raised precisely the argument the United States presses in Count III: that the imposition of any disciplinary sanction would contravene Article II. *See* Show Cause Resp. at 28–43. Notably, the United States' amicus brief in support of Clark makes similar arguments but does not expressly invoke Article II or contend that Clark is entitled to immunity, as the United States seems to argue here. *See* U.S. Amicus Br. at 16–20. In any event, the D.C. Court of Appeals has not yet ruled on the Article II question, let alone made any finding of misconduct or imposed any sanction. The United States cannot state a claim premised on a "punishment" that has not been and may never be issued.

To the extent the United States suggests that the mere pendency of "proceedings" in the D.C. Court of Appeals violates Article II, Compl. ¶ 131, its claim is meritless. The United States does not argue (nor could it) that Article II renders the structure or existence of the D.C. Court of Appeals unlawful; instead, it appears to contend that Clark is "immun[e]" from the particular charges brought against him, and that this purported immunity somehow forecloses the disciplinary action from proceeding at all. *Id.* ¶ 3. But the D.C. Court of Appeals is fully equipped to address immunity issues in the course of Clark's disciplinary proceeding, where those issues have been teed up for resolution. It would turn matters on their head to suggest that Article II *bars* that court from assessing the very claim of immunity the United States believes to be meritorious.

Nor is the D.C. Court of Appeals prohibited from conducting those proceedings because it is a "local" rather than federal entity. *Id.* ¶ 132. Congress itself created the D.C. Court of Appeals in the exercise of its "exclusive" jurisdiction over the District, U.S. Const. art. I, § 8, cl. 17, and specifically vested that court with authority to promulgate and enforce rules of ethics. Pub. L. No. 91-358, § 111, 84 Stat. at 474, 521 (codified at D.C. Code §§ 11-101(2)(A), 11-2501); *see O'Donoghue v. United States*, 289 U.S. 516, 545–46 (1933) (describing Congress's "plenary"

44

authority to establish the "jurisdiction and powers" of District courts). Moreover, state and local courts, like federal ones, are permitted and often required to consider claims of immunity under federal law. *See, e.g.*, *Johnson v. Fankell*, 520 U.S. 911, 921 (1997) (describing "[t]he right to have [a state] trial court rule on the merits of [a] qualified immunity defense"). Federal courts generally "assume[] that state courts . . . will observe constitutional limitations." *Trump v. Vance*, 591 U.S. 786, 806 (2020). And in the context of attorney disciplinary proceedings, the McDade Amendment and the Department's implementing rules specifically direct that Department lawyers should be subject to state and District ethics rules "to the same extent" and "in the same manner" as other attorneys. 28 U.S.C. § 530B(a); 28 C.F.R. § 77.2(h). Because the D.C. Court of Appeals considers constitutional defenses and immunities raised by other attorneys as part of their disciplinary proceedings, it must consider the Article II defenses raised by Clark. *See, e.g.*, *In re Richardson*, 692 A.2d at 432–33 (adjudicating constitutional defenses in disciplinary proceeding).

Finally, it is not plausible that the mere pendency of proceedings against a former employee "intrud[es] into [the] internal affairs" of the Executive Branch or "subject[s] Federal Executive Branch decisionmaking to local control." Compl. ¶¶ 132, 135. Because that allegation is conclusory, this Court should not accept it as true. *Iqbal*, 556 U.S. at 678. And a court does not effect any "intrusion" on, or exert any "control" over, the Executive Branch merely by receiving briefing on—and then impartially deciding—the validity of charges that the United States believes to be unconstitutional. On the contrary, such proceedings are the appropriate and established means for a court to determine whether litigants' objections have merit.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

45

Date: July 10, 2026

*/s/ Elizabeth B. Prelogar*
ELIZABETH B. PRELOGAR [1011890]
Joshua Revesz [1616617]
Elissa R. Lowenthal [90007735]
Dev P. Ranjan [90019329]
Cooley LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Phone: (202) 842-7800
Email: eprelogar@cooley.com

*Counsel for Anna Blackburne-Rigsby, in her
official capacity as Chief Judge of the
District of Columbia Court of Appeals, and
the District of Columbia Court of Appeals*

*/s/ Benjamin C. Mizer*
BENJAMIN C. MIZER [204906]
Samuel I. Ferenc [1616595]
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, D.C. 20001-3743
Phone: (202) 942-5000
Email: benjamin.mizer@arnoldporter.com

*Counsel for Robert L. Walker, in his official
capacity as Chair of the Board on
Professional Responsibility, and the Board
on Professional Responsibility*

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of
Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Mitchell P. Reich*
MITCHELL P. REICH [1044671]
Senior Counsel to the Attorney General

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Equity Section, Civil Litigation
Division

*/s/ Honey C. Morton*
HONEY C. MORTON [1019878]
Assistant Chief, Equity Section, Civil
Litigation Division

*/s/ Conrad Z. Risher*
CONRAD Z. RISHER [1044678]
Adam J. Tuetken [242215]
Assistant Attorneys General
Karthik P. Reddy [1048848]
Special Assistant Attorney General
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 279-1261
Email: mitchell.reich@dc.gov

*Counsel for the District of Columbia*

*/s/ Sydney Foster*
SYDNEY FOSTER [982340]
Joseph W. Mead [1740771]
Kyle R. Freeny [1684764]
Washington Litigation Group
1717 K Street, NW, Suite 1120
Washington, DC 20006
Phone: (202) 521-8764
Email: sfoster@washingtonlitigationgroup.org

*Counsel for Hamilton P. Fox III, in his*
*official capacity as District of Columbia*
*Disciplinary Counsel; Theodore (Jack)*
*Metzler, in his official capacity as District of*
*Columbia Assistant Disciplinary Counsel;*
*and the D.C. Office of Disciplinary Counsel*