**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **No. 1:26-cv-01658-RJL** |
| **HAMILTON P. FOX III,** *et al.*, | |
| **Defendants.** | |

**ODC DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS' CONSOLIDATED
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................. ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 3

    I.       Count I Does Not State a Claim for Additional Reasons. .......................................... 3

    II.      Count III Does Not State a Claim for Additional Reasons. ....................................... 6

CONCLUSION ............................................................................................................................ 10

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**

*Am. Hist. Ass'n v. Trump*,
   No. 26-cv-1169, 2026 WL 1412395 (D.D.C. May 20, 2026),
   *appeal docketed*, Nos. 26-5185, 26-5186 (D.C. Cir. June 3, 2026).............................................. 7

*Citizens for Resp. & Ethics in Wash. v. OMB*,
   No. 25-5266, 2025 U.S. App. LEXIS 20247 (D.C. Cir. Aug. 9, 2025).................................... 9

*Covad Commc'ns Co. v. Bell Atl. Corp.*,
   407 F.3d 1220 (D.C. Cir. 2005)................................................................................................. 4

*Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.*,
   642 F.2d 527 (D.C. Cir. 1980)................................................................................................... 3

*Ex parte Curtis*,
   106 U.S. 371 (1882).................................................................................................................. 7

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982).................................................................................................................. 8

*Imbler v. Pachtman*,
   424 U.S. 409 (1976).................................................................................................................. 8

*In re Nixon*,
   385 N.Y.S.2d 305 (N.Y. App. Div. 1976) ................................................................................ 8

*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997).............................................................................................. 9, 10

*Johnson v. Maryland*,
   254 U.S. 51 (1920)................................................................................................................. 2, 3

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985).................................................................................................................. 8

*Neal v. Clinton*,
   No. CIV 2000-5677, 2001 WL 34355768 (Ark. Cir. Ct. Jan. 19, 2001).................................. 8

*Scahill v. District of Columbia*,
   909 F.3d 1177 (D.C. Cir. 2018)................................................................................................. 5

*Tanzin v. Tanvir*,
   592 U.S. 43 (2020).................................................................................................................... 8

*Trump v. United States*,
   603 U.S. 593 (2024).................................................................................................................. 7

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
   592 U.S. 261 (2021)................................................................................................................. 10

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952).................................................................................................................. 7

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
    576 U.S. 1 (2015) ............................................................................................... 6, 7


**Statute**

28 U.S.C. § 530B(a) ............................................................................................... 2, 6


**Other Materials**

D.C. Bar Rule XI § 2(a) ......................................................................................... 8

Brief for Petitioner, *Mitchell v. Forsyth*,
    472 U.S. 511 (1985) (No. 84-225), 1984 WL 565653 ...................................... 8

**INTRODUCTION**

This Court should dismiss the United States' Complaint, which seeks to halt attorney disciplinary proceedings pending in the D.C. Court of Appeals against Jeffrey B. Clark. As explained in Defendants' joint brief (Doc. 23-1), multiple threshold barriers require dismissal of the United States' extraordinary effort to bypass a state high court, and the United States' claims fail on the merits because the state-court proceedings do not violate the Supremacy Clause or Article II.

The Defendants associated with the Office of Disciplinary Counsel (ODC) submit this supplemental brief to explain why the D.C. Court of Appeals can impose a sanction on Clark without raising any constitutional concerns. Because this brief addresses issues that were litigated before the Board on Professional Responsibility (Board) and remain pending before the D.C. Court of Appeals, the Defendants associated with those neutral adjudicative bodies take no position on those issues. The District of Columbia, which is not involved in those proceedings, likewise takes no position.

As an initial matter, the United States' Complaint mischaracterizes the misconduct that the Board found Clark committed. Contrary to the United States' repeated assertions, the Board did not recommend that Clark be disbarred based on a mere "internal disagreement" within the Department of Justice over whether to send a letter he drafted to Georgia officials about the 2020 election. Compl. ¶ 1. Rather, the Board found that the letter contained false statements of fact, and even after Clark knew those statements were false, he repeatedly pressed his Department of Justice superiors to send the letter anyway. Clark's efforts ceased only after the President declined to appoint him Acting Attorney General in order to avoid the resignation of numerous senior Department of Justice officials who opposed sending the letter containing falsehoods. The D.C.

1

Court of Appeals will evaluate whether to affirm the Board's factual findings and discipline Clark for attempting to engage in intentional dishonesty.

When evaluated in light of the actual issues pending before the D.C. Court of Appeals, the United States' contention that Clark's disciplinary proceedings violate the Supremacy Clause falls apart. Requiring honesty from attorneys plainly involves a "general rule of conduct" that has only "incidental[]" effects on the "mode" by which attorneys represent their clients. *Johnson v. Maryland*, 254 U.S. 51, 56-57 (1920). It follows that the disciplinary proceedings against Clark for his dishonest course of conduct do not directly regulate the federal government, and they comport with the Supremacy Clause.

Regardless, as explained in Defendants' joint brief, the McDade Amendment expressly authorizes the challenged disciplinary proceedings, thus resolving any doubt about whether the case against Clark violates the Supremacy Clause. That statute provides that Department attorneys "shall be subject to State [ethics] laws and rules" where they practice "*to the same extent* and *in the same manner* as other attorneys in that State*." 28 U.S.C. § 530B(a) (emphases added). Clark—a member of the Bar of the D.C. Court of Appeals who was practicing in the District at the time of the conduct at issue—was thus required to follow D.C. ethics rules, and he must now comply with the procedures the D.C. Court of Appeals has established for determining whether to discipline members of its bar. Count I should be dismissed.

The United States' only retort—and the basis for Count III of its Complaint—is to claim that the D.C. disciplinary proceedings (and, by extension, the McDade Amendment) run afoul of Article II of the Constitution. But, as explained in Defendants' joint brief, Article II does not forbid the D.C. Court of Appeals from evaluating Clark's case, and that court can decide in the first instance whether Article II bars it from disciplining Clark. In addition, as explained below,

2

the D.C. Court of Appeals would not contravene Article II if it sanctioned Clark for his dishonest course of conduct.  Congress thus fully complied with separation-of-powers principles when it confirmed that Department of Justice attorneys must abide by state ethics rules and procedures, and this Court should dismiss Count III of the Complaint on that additional basis.

## ARGUMENT

### I.    Count I Does Not State a Claim for Additional Reasons.

As Defendants' joint brief explains (Doc. 23-1, at 37-39), the United States' Supremacy Clause claim in Count I should be dismissed because the United States has not adequately alleged that any of the Defendants are "directly regulating" the federal government.  Under well-established case law, proceedings against a federal employee do not directly regulate the federal government if they involve only a "general rule of conduct" that "incidentally" affects the "mode" by which federal employees perform their jobs.  *Johnson*, 254 U.S. at 56-57; *see also Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.*, 642 F.2d 527, 535-36 (D.C. Cir. 1980) ("federal programs" are not "necessarily insulated" from "incidental or nonburdensome" local laws).  That description perfectly matches these proceedings, given that they concern the ethical rule against engaging in intentional dishonesty, *see* Doc. 23-1, at 3, 9—a fundamental rule of conduct that only incidentally affects an attorney's representation of his clients.  Tellingly, the United States fails to explain how it is burdened in the slightest if Department attorneys are prohibited from urging the Department, even in internal deliberations, to make intentionally false statements as a tool of advocacy.  Quite the opposite, such a prohibition manifestly *furthers* the federal government's interests, as it promotes sound advocacy predicated on the actual facts and law.

At bottom, the United States' contention (*e.g.*, Compl. ¶ 1) that the challenged disciplinary proceedings inappropriately burden the Department is premised on a mischaracterization of the issues the D.C. Court of Appeals will decide as it reviews the Board's recommendation.  The Board

3

found that in late 2020 and early 2021, Clark repeatedly urged Department leadership to issue a letter he drafted to Georgia officials asserting that the Department's investigations into "irregularities" during the 2020 election had "identified significant concerns that may have impacted the outcome of the election in multiple States." R. & R. of Bd. Pro. Resp. 1, 15 (Board R&R), *In re Clark*, No. 22-BD-039 (D.C. Bd. Pro. Resp. July 31, 2025) (Doc. 23-5).[1] The Board found that, in fact, the Department had *not* identified such outcome-determinative concerns. *Id.* at 2, 5, 9-13, 76-77. The Board further found that Clark *knew* the Department had not uncovered such concerns because (1) his superiors—who, unlike Clark, had "actual knowledge about the Justice Department's investigation[s]"—told him so "in no uncertain terms," *id.* at 2-6, 10-11, 16-19; and (2) the limited steps Clark took to familiarize himself with the Department's investigations revealed no facts supporting such concerns, *id.* at 3, 20-24, 71-74, 77-78, 95-97 (finding, *e.g.*, that the Office of the Director of National Intelligence told Clark that it had identified no such concerns, and that Clark declined to talk with the relevant U.S. Attorney about his investigations in Georgia).

The Board determined that Clark attempted to engage in intentional dishonesty based not merely on the false statement in Clark's initial draft letter, but on "what he did afterwards," Board R&R 75 (cleaned up)—"continu[ing] to advocate [sending] the false statement" about whether the Department had uncovered outcome-determinative issues with the election, even though he knew that statement was false. *Id.* at 71, 93-94. In the face of steadfast resistance, Clark even upped the ante: he told the Acting Attorney General and another official that the President had offered Clark the position of Acting Attorney General, but he stressed that he would decline (and they could save

---

[1] This Court may take judicial notice of the record of Clark's disciplinary proceeding in considering Defendants' motion to dismiss. *See, e.g.*, *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (a court "may look to [the] record of another proceeding" in resolving "a motion to dismiss").

their jobs) if they sent the letter. *Id.* at 23; *id.* at 2. Clark's efforts ended only after the President decided not to appoint him Acting Attorney General to avoid "mass resignations" of senior Department officials. *Id.* at 26-28 (finding, *e.g.*, that all but one of the other Assistant Attorneys General said they would resign if the letter were sent). In concluding that Clark attempted to engage in intentional dishonesty, the Board emphasized that "[t]his case is not about a professional disagreement" or the "advice to provide to the President." *Id.* at 5. "Instead," the Board said, the case "focus[es] on the truthfulness of the factual assertions contained in the . . . letter" that Clark doggedly pressed his superiors to send. *Id.*; *see also id.* at 73-74.

The United States is thus incorrect to assert that the Board predicated its recommendation on nothing more than an "internal disagreement" within the Department. Compl. ¶ 1; *see also id.* ¶¶ 6, 66-67, 75-76 (similar).[2] The United States is also wrong to claim that the Board found that Clark's letter "reflected" his "sincere view of the law and facts"—not intentional misrepresentations of fact. *Id.* ¶ 1; *see also id.* ¶¶ 5, 114. It follows that this case does not implicate concerns the United States invokes that would arise if a state *were* to discipline a Department attorney merely for disagreeing with his colleagues. *Id.* ¶ 114. Rather, the Board recommended that Clark be disciplined for persistently pressing his superiors to transmit a highly consequential letter that he knew included false statements. The D.C. Court of Appeals will review that recommendation when it ultimately adjudicates this case, and in doing so, it is not engaging in any "direct" regulation of the federal government.

In any event, as Defendants' joint brief explains (Doc. 23-1, at 39-41), Congress has eliminated any Supremacy Clause problem by confirming that Department attorneys "shall be

---

[2] This Court "need not accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice." *Scahill v. District of Columbia*, 909 F.3d 1177, 1186 (D.C. Cir. 2018) (cleaned up).

subject" to state ethics laws and rules "to the same extent and in the same manner as other attorneys in [the relevant] State"—here, the District of Columbia.  28 U.S.C. § 530B(a).  As a result, the D.C. Court of Appeals is entitled to discipline Clark for his conduct as a Department attorney if the court finds that he violated the court's Rules of Professional Conduct by attempting to engage in conduct involving dishonesty.  The application of the Rules to Clark is no different from a proceeding seeking to discipline a Department lawyer who intentionally misrepresented facts to the court or withheld exculpatory information in a criminal case.  As explained below, the United States' constitutional attack on the McDade Amendment has no legal foundation, and thus the United States' direct-regulation claim under the Supremacy Clause (Count I) should be dismissed.

## II.     <u>Count III Does Not State a Claim for Additional Reasons.</u>

As explained in Defendants' joint brief (Doc. 23-1, at 43-45), Count III of the United States' Complaint should be dismissed because the mere pendency of disciplinary proceedings in the D.C. Court of Appeals does not violate Article II, and that court is capable of deciding whether Article II prohibits it from imposing discipline on Clark.  Count III should also be dismissed because Article II allows the D.C. Court of Appeals to discipline Clark.  The United States appears to rest its contrary position on one of two theories, neither of which holds water.

**1.** First, the United States may be contending that Article II forbids any court—including state and federal courts—from imposing discipline on any Department of Justice attorney for violating any ethics rule, including bedrock rules forbidding attorneys from lying to a court or otherwise engaging in dishonesty.  *See, e.g.*, Compl. ¶ 31.  That startling position—which would mean that the McDade Amendment is facially unconstitutional—is devoid of any legal support.

It is firmly established that "when 'the President takes measures incompatible with the expressed or implied will of Congress,'" his "power is 'at its lowest ebb,'" and his "asserted power must be both 'exclusive' and 'conclusive' on the issue."  *Zivotofsky ex rel. Zivotofsky v. Kerry*,

576 U.S. 1, 10 (2015) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637-38 (1952) (Jackson, J., concurring)).  The United States offers no support for the position that the President has the "exclusive" power to ensure that Department of Justice attorneys comport with professional standards, and such a position is contradicted by longstanding precedent recognizing that Congress can—and frequently does—regulate "the conduct of certain officers and employe[es] of the United States" in order "to promote efficiency and integrity in the discharge of official duties, and to maintain proper discipline in the public service." *Ex parte Curtis*, 106 U.S. 371, 372-73 (1882) (upholding restriction on political activity by Executive Branch employees and citing examples of similar statutes dating back to 1789); *see also, e.g.*, *Am. Hist. Ass'n v. Trump*, No. 26-cv-1169, 2026 WL 1412395, at *20 (D.D.C. May 20, 2026), *appeal docketed*, Nos. 26-5185, 26-5186 (D.C. Cir. June 3, 2026).  Indeed, if this position were adopted, federal attorneys could commit any number of misdeeds as part of their job but be exempt from discipline.  That is plainly not the law.

Nor does *Trump v. United States*, 603 U.S. 593 (2024), give Department attorneys absolute immunity from disciplinary proceedings, as the United States suggests (Compl. ¶ 3).  Rather, *Trump* recognized that the President is entitled to (1) absolute immunity from criminal prosecution "when *he* acts pursuant to the powers invested *exclusively in him* by the Constitution"; and (2) at least presumptive immunity from criminal prosecution for other official acts, but only because of his "*unique position* in the constitutional scheme as the only person who alone composes a branch of government."  603 U.S. at 607-14 (citations omitted; emphases added).  That unique immunity does not extend beyond the President or apply to attorney disciplinary proceedings.

Indeed, when it comes to damages remedies, even the Attorney General is not entitled to absolute immunity from suit based on actions undertaken in furtherance of national security.  *See*

7

*Mitchell v. Forsyth*, 472 U.S. 511, 520-21 (1985).  As the Supreme Court has explained, damages suits against officials other than the President "generally do not invoke separation-of-powers considerations to the same extent as suits against the President himself."  *Harlow v. Fitzgerald*, 457 U.S. 800, 810-11 & n.17 (1982).  Thus, "since the dawn of the Republic," Executive Branch officials have been held accountable for actions taken in the scope of their duties without running afoul of separation-of-powers principles.  *Tanzin v. Tanvir*, 592 U.S. 43, 52 (2020).

A grant of absolute immunity is especially unwarranted in attorney discipline proceedings. Unlike the imposition of criminal or civil penalties, which are backwards looking, "[t]he license to practice law in the District of Columbia is a continuing proclamation by [the D.C. Court of Appeals] that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and an officer of the Court."  D.C. Bar Rule XI § 2(a). Given the unique function served by disciplinary proceedings, the Supreme Court has held that even prosecutors who enjoy absolute immunity from damages claims are "amenab[le] to professional discipline" as members of the bar of a court.  *Imbler v. Pachtman*, 424 U.S. 409, 429 (1976).  And even Presidents—who have a unique immunity from civil or criminal suits—have faced consequences from state courts for professional misconduct committed while in office.  *Neal v. Clinton*, No. CIV 2000-5677, 2001 WL 34355768 (Ark. Cir. Ct. Jan. 19, 2001); *In re Nixon*, 385 N.Y.S.2d 305 (N.Y. App. Div. 1976).  Consistent with this wall of precedent, the Department of Justice recognized in *Mitchell* that the Attorney General, too, is amenable to professional discipline.  *See* Brief for Petitioner at 47 n.35, *Mitchell*, 472 U.S. 511 (No. 84-225), 1984 WL 565653.  Any facial attack the United States mounts to the McDade Amendment is meritless.

**2.**  Alternatively, the United States may be contending that Article II forbids state and federal courts from imposing discipline on Department of Justice attorneys when their misconduct

8

occurs during "internal Executive Branch deliberations." Compl. ¶¶ 133-34. This argument fails on the facts and on the law. Factually, it misstates the nature of the misconduct alleged here. As the Board explained, "this case is not about vigorous debate," Board R&R 28, but about all the steps that Clark took to try to compel the Department of Justice to issue a letter containing a statement of fact that Clark knew was false. *See supra* pp. 4-5. Legally, to the extent the United States argues that the McDade Amendment is unconstitutional as applied to attorneys who commit misconduct during deliberations within the Department of Justice, the argument fails.

The Complaint's frequent description of Clark's misconduct as "deliberative and pre-decisional" (*e.g.*, Compl. ¶ 1) suggests that the United States may be seeking to invoke the deliberative-process privilege—a "qualified" privilege that is sometimes used to "resist [the] disclosure of information" that is both "predecisional" and "deliberative." *In re Sealed Case*, 121 F.3d 729, 736-37 (D.C. Cir. 1997). But that privilege offers no reason to doubt the McDade Amendment's constitutionality. To start, the deliberative-process privilege is a common-law privilege, *id.* at 737, and there is "no precedent from [the D.C. Circuit] or the Supreme Court that has ever held the privilege to be a constitutional baseline from which the legislature is not free to depart." *Citizens for Resp. & Ethics in Wash. v. OMB*, No. 25-5266, 2025 U.S. App. LEXIS 20247, at *28 (D.C. Cir. Aug. 9, 2025) (Henderson, J., statement respecting denial of a stay). Further, the privilege is one that may allow the *government* to resist the *disclosure* of certain documents, *In re Sealed Case*, 121 F.3d at 737; it does not entitle federal *employees* to *immunity* for misconduct relating to deliberations.[3]

---

[3] In the disciplinary proceedings the United States challenges, Clark argued that certain evidence was protected by the deliberative-process privilege. The Board disagreed, affirming the Hearing Committee's determination that the Department of Justice "did not assert any privilege" and that the privilege "could not be asserted over information that had already been publicly disclosed." Board R&R 38. Indeed, the Hearing Committee explained that the Department of

Finally, the purpose of the qualified deliberative-process privilege is to "encourage candor, which improves agency decisionmaking," *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021), and the privilege "is routinely denied" where "there is reason to believe the documents sought may shed light on government misconduct." *In re Sealed Case*, 121 F.3d at 738 (explaining that "shielding internal government deliberations in this context does not serve the public's interest in honest, effective government" (citation omitted)). The deliberative-process privilege does nothing to advance the United States' Article II theory.

* * *

In sum, Count III lacks any legal foundation and may be dismissed on that basis. It follows that the United States' constitutional attacks on the McDade Amendment are meritless, and Count I may be dismissed because the McDade Amendment resolves any Supremacy Clause problem.

**CONCLUSION**

For the reasons articulated in Defendants' joint brief in support of their motion to dismiss, and for the foregoing additional reasons, the Court should dismiss the Complaint.

---

Justice expressly authorized Department attorneys to provide relevant information to ODC. *See* Order of Hr'g Comm. No. Twelve at 6, *In re Clark*, No. 22-BD-039 (D.C. Bd. Pro. Resp. Feb. 27, 2024) (Ex. A) (citing Letter from Bradley Weinsheimer, Associate Deputy Attorney General, U.S. Dep't of Justice, to Hamilton P. Fox, III, Ex. 1 to Disciplinary Counsel's Opp. to Resp't's Feb. 14, 2024, Mot. in Limine (Ex. B), which observed that there was "ample precedent for Department employees . . . testifying about their work at the Department in other D.C. Bar disciplinary proceedings," that "Department employees previously ha[d] been authorized to provide the information [ODC] [sought] to congressional committees," and that "much of that information already ha[d] been made public").

10

Date: July 10, 2026

Respectfully submitted,

*/s/ Sydney Foster*
Sydney Foster [982340]
Joseph W. Mead [1740771]
Kyle R. Freeny [1684764]
Washington Litigation Group
1717 K Street, NW, Suite 1120
Washington, DC 20006
Phone: (202) 521-8764
Email: sfoster@washingtonlitigationgroup.org

*Counsel for Hamilton P. Fox III, in his
official capacity as District of Columbia
Disciplinary Counsel; Theodore (Jack)
Metzler, in his official capacity as District of
Columbia Assistant Disciplinary Counsel;
and the D.C. Office of Disciplinary Counsel*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2026, an electronic copy of the foregoing will be sent to Proposed Intervenor Erwin Rosenberg at the email address at which he consented to receive service.

<u>/s/ Sydney Foster</u>
Sydney Foster

*Counsel for Hamilton P. Fox III, in his official capacity as District of Columbia Disciplinary Counsel; Theodore (Jack) Metzler, in his official capacity as District of Columbia Assistant Disciplinary Counsel; and the D.C. Office of Disciplinary Counsel*