**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff,*<br><br>    v.<br><br>HAMILTON P. FOX III, et al.,<br><br>    *Defendants.* | Civil Case No. 1:26-cv-01658-RJL<br><br>**AMICUS BRIEF OF COLORADO, MINNESOTA, AND 18 OTHER STATES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

**TABLE OF CONTENTS**

INTERESTS OF THE AMICI CURIAE ......................................................................... 1

ARGUMENT ............................................................................................................... 3

    I.      Plaintiff's claims ignore that, as a matter of state sovereignty, the States, not the federal government, regulate attorneys practicing within their jurisdictions ................................................................................................. 3

        A.      The States have a unique, historic, and sovereign responsibility to regulate attorneys practicing within their jurisdictions. .................................... 4

        B.      Confirming the States' sovereignty in this area, the federal government has expressly deferred regulation of attorneys to the States. ........................... 11

    II.      Fundamental abstention principles highlight the dangers of allowing DOJ to interfere in ongoing State disciplinary proceedings. ........................................ 17

    III.    The United States' arguments, if credited, would undermine public confidence in regulation of the legal profession. .................................................... 19

CONCLUSION ........................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Am. Fam. Prepaid Legal Corp. v. Columbus Bar Ass'n,*
 498 F.3d 328 (6th Cir. 2007)................................................................17

*Bates v. State Bar of Ariz.,*
 433 U.S. 350 (1977)..............................................................................5

*Berman v. Parker,*
 348 U.S. 26 (1954)................................................................................4

*Burford v. Sun Oil Co.,*
 319 U.S. 315 (1943)............................................................................18

*Canatella v. California,*
 404 F.3d 1106 (9th Cir. 2005)............................................................17

*Cohen v. Hurley,*
 366 U.S. 117 (1961)..........................................................................6, 7

*Danner v. Bd. of Pro. Resp.,*
 277 F. App'x 575 (6th Cir. 2008) .......................................................18

*Eisenberg v. W. Va. Off. of Disciplinary Couns.,*
 856 F. App'x 314 (D.C. Cir. 2021) .....................................................17

*Ex parte Burr,*
 22 U.S. 529 (1824)................................................................................7

*Ex parte Burr,*
 4 F. Cas. 791 (C.C.D.D.C. 1823) (No. 2186) ......................................5

*Goldfarb v. Va. State Bar,*
 421 U.S. 773 (1975)..........................................................................4, 5

*Gunn v. Minton,*
 568 U.S. 251 (2013)..............................................................................5

*Hillsborough County v. Automated Med. Lab'ys, Inc.,*
 471 U.S. 707 (1985)..............................................................................4

*In re Att'y Discipline Sys.,*
 967 P.2d 49 (Cal. 1998)........................................................................6

*In re Baron,*
  136 A.2d 873 (1957) ...................................................................................... 5

*In re Clark,*
  678 F. Supp. 3d 112 (D.D.C. 2023) ........................................................ 12, 13

*In re Rouss,*
  221 N.Y. 81 (1917) ........................................................................................ 5

*In re Shannon,*
  876 P.2d 548 (Ariz. 1994) ............................................................................. 6

*In re Thatcher,*
  190 F. 969 (C.C.N.D. Ohio 1911) .................................................................. 5

*JMM Corp. v. District of Columbia,*
  378 F.3d 1117 (D.C. Cir. 2004) ....................................................... 17, 18, 19

*Leis v. Flynt,*
  439 U.S. 438 (1979) .................................................................................... 4, 5

*Linder v. United States,*
  268 U.S. 5 (1925) .......................................................................................... 4

*Martin v. United States,*
  605 U.S. 395 (2025) ..................................................................................... 16

*Metro. Life Ins. Co. v. Massachusetts,*
  471 U.S. 724 (1985) ...................................................................................... 4

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,*
  457 U.S. 423 (1982) ................................................................................. 5, 17

*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
  567 U.S. 519 (2012) ..................................................................................... 11

*Ohralik v. Ohio State Bar Ass'n,*
  436 U.S. 447 (1978) ...................................................................................... 5

*Thomas v. Knight,*
  257 F. Supp. 2d 86 (D.D.C. 2003) .............................................................. 18

*United States ex rel. O'Keefe v. McDonnell Douglas Corp.,*
  132 F.3d 1252 (8th Cir. 1998) .................................................................... 13

*United States ex rel. O'Keefe v. McDonnell Douglas Corp.,*
  961 F. Supp. 1288 (E.D. Mo. 1997) ............................................................ 13

iv

*United States v. Ferrara,*
    847 F. Supp. 964 (D.D.C. 1993)................................................................12

*Younger v. Harris,*
    401 U.S. 37 (1971)..................................................................................17

**Statutes**

28 U.S.C. § 530B ..........................................................................................13

**Other Authorities**

Ala. State Bar, *History of the Alabama State Bar,*
    https://www.alabar.org/about/culture (last visited July 16, 2026) .........6

Am. Bar Ass'n, *About – ABA Timeline,*
    https://www.americanbar.org/about_the_aba/timeline (last visited July 16, 2026) 7

Charles Doyle, Cong. Rsch. Serv., RL30060, *McDade-Murtha Amendment: Ethical
    Standards for Justice Department Attorneys* (2001) ........................ 12, 15

Conf. of Chief Justices, *Resolution 1-2026 Reaffirming the Authority of
    Jurisdictions' Highest Courts to Regulate the Professional Conduct of All
    Attorneys Authorized to Practice in their Jurisdictions* (March 20, 2026),
    https://ccj.ncsc.org/resources-courts/reaffirming-authority-jurisdictions-highest-
    courts-regulate-professional-conduct ......................................................7

District of Columbia Court Reorganization Act of 1970, Pub. L. No. 91-358, 84 Stat.
    473 ...........................................................................................................3

*Ethical Standards for Attorneys for the Government*, 64 Fed. Reg. 19273 (Apr. 20,
    1999)........................................................................................................13

*Ethical Standards for Federal Prosecutors Act of 1996: Hearing on H.R. 3386 Before
    the Subcomm. on Courts and Intell. Prop. of the H. Comm. on the Judiciary,*
    104th Cong. (1996)............................................................................ 14, 15

Md. State Archives, *State Board of Law Examiners – Origin & Functions* (July 30,
    2025), https://2025mdmanual.msa.maryland.gov/msa/mdmanual/33jud/html/
    05lawf.html ..............................................................................................6

OARC, *About Us*, https://www.coloradolegalregulation.com/aboutus/ (last visited
    July 16, 2026)...........................................................................................8

Review of State Bar Complaints and Allegations Against Department of Justice
    Attorneys, 91 Fed. Reg. 10780 (proposed Mar. 5, 2026) ......................20

Rhona McMillion, *Playing By the Same Rules*, 85 ABA J. 91 (June 1999) ............... 14

**Rules**

C.R.C.P. 242.13 ........................................................................................................ 8

C.R.C.P. 242.14 ........................................................................................................ 8

C.R.C.P. 242.15 ........................................................................................................ 9

C.R.C.P. 242.2 .......................................................................................................... 8

C.R.C.P. 242.25 ........................................................................................................ 9

C.R.C.P. 242.26 ........................................................................................................ 9

C.R.C.P. 242.27 ........................................................................................................ 9

C.R.C.P. 242.28 ........................................................................................................ 9

C.R.C.P. 242.29 ........................................................................................................ 9

C.R.C.P. 242.30 ........................................................................................................ 9

C.R.C.P. 242.33 ........................................................................................................ 9

C.R.C.P. 242.5 .......................................................................................................... 8

Model Rules for Law. Disciplinary Enforcement r. 11(F) (Am. Bar Ass'n 2020) ........ 8

R.L.P.R. 12 .............................................................................................................. 10

R.L.P.R. 13 .............................................................................................................. 10

R.L.P.R. 14 .............................................................................................................. 10

R.L.P.R. 15(c) .......................................................................................................... 10

R.L.P.R. 18 .............................................................................................................. 10

R.L.P.R. 4(c) ............................................................................................................ 10

R.L.P.R. 6(b) ............................................................................................................. 9

R.L.P.R. 8(a) ............................................................................................................ 10

R.L.P.R. 8(d) ............................................................................................................ 10

R.L.P.R. 8(d)(4) ............................................................................................... 10

R.L.P.R. 9(h) .................................................................................................... 10

R.L.P.R. 9(j) ..................................................................................................... 10

**Regulations**

28 C.F.R. § 0.29 *et seq.* ................................................................................... 11

28 C.F.R. § 0.39 ............................................................................................... 11

28 C.F.R. § 0.39a ............................................................................................. 11

28 C.F.R. § 0.39b ............................................................................................. 11

28 C.F.R. § 0.39c ............................................................................................. 11

28 C.F.R. § 77.2 ......................................................................................... 13, 15

**Constitutional Provisions**

U.S. Const. amend. X ......................................................................................... 4

**INTERESTS OF THE AMICI CURIAE**

The D.C. Court of Appeals Board on Professional Responsibility ("Board") has recommended that a D.C. bar member, Jeffrey Clark, receive professional discipline for attempting to make intentionally false statements about the legitimacy of the 2020 presidential election while serving as an Assistant Attorney General for the U.S. Department of Justice. The Board's recommendation is not final; it remains subject to a fulsome and ongoing review by the D.C. Court of Appeals (and potentially the U.S. Supreme Court).

Through this brief, the undersigned Amici States of Colorado, Minnesota, Arizona, California, Connecticut, Delaware, Hawai'i, Illinois, Maine, Maryland, Massachusetts, Michigan, New Jersey, New York, North Carolina, Oregon, Rhode Island, Vermont, Virginia, and Washington take no position on the merits of the ongoing disciplinary proceeding against Mr. Clark. Amici States instead write to express their deep concern over Plaintiff's unprecedented effort to enjoin an active attorney disciplinary proceeding, and to explain the potential consequences if Plaintiff's arguments were credited. If successful, Plaintiff's challenge would open the door to challenges not only from current but also *former* Department of Justice ("DOJ") attorneys claiming that they cannot be subject to disciplinary proceedings in any of the jurisdictions in which they practice for legal work done while they were federal employees. Such a result is untenable.

Plaintiff's lawsuit seeks to upend a centuries-old system of attorney discipline that traces back to the English common law, and which has continued in every State

1

in the nation to the present day. Under that system, attorneys are "officers of the court," and they must be admitted to the bar of that court before they may enjoy the privileges of practicing law within its jurisdiction. After attorneys are admitted as officers of the court, they must adhere to the ethical rules and standards governing the legal profession in their State, and they similarly face consequences if they fail to do so.

As an exercise of their police powers under the Tenth Amendment, the States' regulation of attorneys within their borders is robust and comprehensive, and the federal government has repeatedly acknowledged and deferred to the States in this area. Permitting Plaintiff's action to proceed would risk upending the States' longstanding right to discipline attorneys practicing in their borders; it would contravene the text and purpose of a federal statute that expressly subjects DOJ attorneys to state disciplinary proceedings; and it would undermine the States' ability to implement their disciplinary systems even handedly and without special treatment accorded to some lawyers, but not others.

Individual lawyers employed by the DOJ enjoy no special immunity from attorney discipline, nor should they. An officer of the court remains an officer of the court, regardless of who their current or former employer (or their client) may be. Having sworn an oath to abide by the rules of the D.C. Court of Appeals, Mr. Clark must be held to his oath, and it is the D.C. Court of Appeals that properly has jurisdiction to adjudge the issues his case presents. To the extent he (or the DOJ)

2

take issue with the merits of Board's recommended action against him, the D.C. Court of Appeals—and not this Court—is the proper venue to hear those complaints.

Amici States therefore urge this Court to grant Defendants' Motion to Dismiss.

## ARGUMENT

I. **Plaintiff's claims ignore that, as a matter of state sovereignty, the States, not the federal government, regulate attorneys practicing within their jurisdictions.**

Plaintiff grounds its claims on the Supremacy Clause (Counts 1 and 2) and unenumerated executive authority (Count 3), asserting that, because the District of Columbia's discipline stems from Mr. Clark's official work as a DOJ attorney, "States and the District of Columbia do not have the inherent authority to regulate Federal officials for their official acts, including internal Executive Branch deliberations." Compl. ¶ 108. Accepting Plaintiff's claims in this case would open the door for DOJ to raise novel and sweeping arguments that neither the States nor the District of Columbia can regulate federal attorneys practicing within their borders. But such claims would be a clear contradiction of the States' exercise of their police powers under the Tenth Amendment, as well as the police powers of the District of Columbia.[1] It would also conflict with federal law specifically endorsing state

---

[1] For more than half a century, Congress has endowed the D.C. Court of Appeals with the same authority to discipline attorneys within its jurisdiction as the States have historically possessed. *See* District of Columbia Court Reorganization Act of 1970, Pub. L. No. 91-358, ch. 25, 84 Stat. 473, 521 (codified at D.C. Code §§ 11-2501 to -2504). Plaintiff does not challenge that statutory authority here, and the District of Columbia's sovereignty interests are therefore equivalent to those of the States for purposes of this case.

regulation of federal attorneys and be out-of-step with established precedent, including that of the U.S. Supreme Court.

### A. The States have a unique, historic, and sovereign responsibility to regulate attorneys practicing within their jurisdictions.

The States and the District of Columbia have long-settled sovereign rights to regulate the practice of law within their borders, including the practice of law by attorneys employed by the federal government.

Under the Tenth Amendment, all powers not delegated to the federal government are reserved to the States, including the traditional "police powers" to safeguard public health and safety. U.S. Const. amend. X. *See Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985); *see also Linder v. United States*, 268 U.S. 5, 18 (1925); *Berman v. Parker*, 348 U.S. 26, 32 (1954); *Hillsborough County v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 719 (1985). State authority over licensing and the regulation of professions lies at the zenith of those historical police powers. *See Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975). And a State's authority to regulate attorneys practicing within its jurisdiction is a classic example of such regulation: "Since the founding of the Republic, the licensing and regulation of lawyers has been left *exclusively* to the States and the District of Columbia within their respective jurisdictions." *Leis v. Flynt*, 439 U.S. 438, 442 (1979) (emphasis added).

The U.S. Supreme Court has repeatedly acknowledged that the States and the District of Columbia have exclusive authority to discipline members of their bars, recognizing that the States have an "especially great" interest in regulating lawyers,

4

which strikes "at the core of the State's power to protect the public." *Bates v. State Bar of Ariz.*, 433 U.S. 350, 361 (1977) (quoting *Goldfarb*, 421 U.S. at 792); *see Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982) ("States traditionally have exercised extensive control over the professional conduct of attorneys. The ultimate objective of such control is 'the protection of the public, the purification of the bar and the prevention of a re-occurrence.'" (quoting *In re Baron*, 136 A.2d 873, 875 (1957)). "The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and [they] have historically been 'officers of the courts.'" *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978) (quoting *Goldfarb*, 421 U.S. at 792); *see Gunn v. Minton*, 568 U.S. 251, 264 (2013) (similar); *Leis*, 439 U.S. at 442 (addressing District of Columbia).

The roots of the States' and the District of Columbia's authority over attorney discipline derive from their courts' inherent authority to regulate the lawyers appearing before them and practicing law in their jurisdiction. *See Ex parte Burr*, 4 F. Cas. 791, 793 (C.C.D.D.C. 1823) (No. 2186) (detailing common law and founding-era authority for state courts imposing attorney discipline); *see also In re Rouss*, 221 N.Y. 81, 83 (1917) (Cardozo, J.) (emphasizing historical power of state courts to disbar attorneys to, *inter alia*, protect the "dignity of the profession" (citation omitted)); *In re Thatcher*, 190 F. 969, 975 (C.C.N.D. Ohio 1911) (stating that hindering a court's ability to regulate lawyers "is to say that a court may not by its own proper methods protect itself against its creatures"). Conversely, as courts have consistently

5

recognized, the "lack of a functioning attorney disciplinary system places at grave risk the public, the integrity of the legal profession, and the interests of the courts." *In re Att'y Discipline Sys.*, 967 P.2d 49, 52 (Cal. 1998).

Recognizing the need to regulate attorney conduct, the States have long exercised their disciplinary authority within their respective jurisdictions. *See In re Shannon*, 876 P.2d 548, 571 (Ariz. 1994) (explaining "[t]he judiciary's authority to regulate and control the practice of law is universally accepted and dates back to the year 1292" and detailing historical background); *see also Cohen v. Hurley*, 366 U.S. 117, 123–24 (1961) (acknowledging that the States' interests in attorney regulation stems from "the exertion of disciplinary powers which English and American courts (the former primarily through the Inns of Court) have for centuries possessed over members of the bar"), *overruled on other grounds by Spevack v. Klein*, 385 U.S. 511 (1967). Indeed, as early as 1715, Maryland courts, for example, were empowered to examine applicants seeking to practice law.[2] And in 1887, Alabama's state bar promulgated the first official code of legal ethics in the country.[3] The promulgation of the Canons of Professional Ethics by the American Bar Association in 1908 inspired

---

[2] Md. State Archives, *State Board of Law Examiners – Origin & Functions* (July 30, 2025), https://2025mdmanual.msa.maryland.gov/msa/mdmanual/33jud/html/05lawf. html (on file with the Colorado Attorney General's Office).

[3] Ala. State Bar, *History of the Alabama State Bar*, https://www.alabar.org/about/ culture (last visited July 16, 2026) (on file with the Colorado Attorney General's Office).

similar systems throughout the country.[4] Today, every State in the country maintains a bar admissions body, disciplinary authority, and framework for regulating professional conduct through their judiciary.[5]

Although there are differences in how each state system regulates its attorneys, they share a common thread. All strive to balance the needs of safeguarding the public while also ensuring due process for attorneys accused of misconduct. *See Cohen*, 366 U.S. 117 at 123–24 (analyzing due process challenge to disbarment of attorney who refused to answer questions in disciplinary investigation and finding process sufficient); *Ex parte Burr*, 22 U.S. 529, 530 (1824) ("On one hand, the profession of an attorney is of great importance to an individual. . . . On the other, it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved. For these objects, some controlling power, some discretion ought to reside in the Court."). In all States and the District of Columbia, judicial review is available to ensure the fairness and legality of the disciplinary process. *See* Model Rules for Law. Disciplinary

---

[4] Am. Bar Ass'n, *About – ABA Timeline*, https://www.americanbar.org/about_ the_aba/timeline (last visited July 16, 2026) (on file with the Colorado Attorney General's Office).

[5] Conf. of Chief Justices, *Resolution 1-2026 Reaffirming the Authority of Jurisdictions' Highest Courts to Regulate the Professional Conduct of All Attorneys Authorized to Practice in their Jurisdictions* (March 20, 2026), https://ccj.ncsc.org/resources-courts/reaffirming-authority-jurisdictions-highest-courts-regulate-professional-conduct (on file with the Colorado Attorney General's Office).

Enforcement r. 11(F) (Am. Bar Ass'n 2020); *see also* Compl. ¶ 37 ("The D.C. Court of Appeals imposes final discipline and retains review authority.").

At least two examples serve to illustrate. In Colorado, the Colorado Supreme Court "exercises jurisdiction over all matters arising under the Rules Governing the Practice of Law." C.R.C.P. 242.2. To that end, the Colorado Supreme Court regulates the practice of law through the independent Office of Attorney Regulation Counsel ("OARC"), which administers the bar examination, screens applicants' character and fitness to practice law, enforces attorney admission and registration, and prosecutes allegations of violations of the Rules of Professional Conduct by attorneys in Colorado. C.R.C.P. 242.5.[6]

Colorado's attorney disciplinary system reflects careful consideration, designed to move minor cases quickly while safeguarding the hallmarks of due process for any cases that may result in discipline. Specifically, when OARC receives a request for investigation, it conducts a preliminary investigation to determine if the attorney is subject to C.R.C.P. 242.1(a), whether a violation has been alleged, and whether to conduct a formal investigation. C.R.C.P. 242.13. If OARC commences a formal investigation, the attorney is given notice and an opportunity to respond, and OARC may appoint an investigator that may conduct interviews and procure evidence, ultimately resulting in a written report. C.R.C.P. 242.14. From there, OARC will take one of several possible actions, one of which may be to request that

---

[6] *See* OARC, *About Us*, https://www.coloradolegalregulation.com/aboutus/ (last visited July 16, 2026) (on file with the Colorado Attorney General's Office).

8

the Legal Regulation Committee authorize OARC to file a Complaint. C.R.C.P. 242.15. A complaint initiates formal disciplinary proceedings before the Presiding Disciplinary Judge, where the individual has an opportunity to answer, engage in discovery, provide expert witness reports, file dispositive motions, and participate in a hearing. C.R.C.P. 242.25–30. Any final decision by the Presiding Disciplinary Judge or a Hearing Board is subject to direct appeal to the Colorado Supreme Court. C.R.C.P. 242.33.

Similarly in Minnesota, the Minnesota Supreme Court licenses attorneys and regulates them by promulgating and publishing both the Minnesota Rules of Professional Conduct ("MRPC") which govern attorney conduct, and the Rules on Lawyers Professional Responsibility ("R.L.P.R."), which establish procedures for attorney discipline complaints. To carry out its work regulating and disciplining practicing attorneys, the Minnesota Supreme Court has created three entities, each with distinct roles: the Lawyers Professional Responsibility Board ("LPRB"), District Ethics Committees ("DECs"), and the Office of Lawyers Professional Responsibility ("OLPR"). All public discipline is issued by the Minnesota Supreme Court. All of these bodies are used to intake, assess, and ultimately determine the numerous reports of attorney misconduct received yearly in a fair and even-handed manner.

The OLPR conducts an initial screening of complaints against attorneys in Minnesota to determine whether the complaint will be investigated or dismissed without investigation. Minn. R.L.P.R. 6(b). Most initial investigations are conducted by DEC members, who make a recommendation to the OLPR on whether discipline

9

is warranted. R.L.P.R. 4(c). After receiving a report from the DEC, the OLPR conducts additional investigation and determines whether no discipline, a private admonition, or private probation are warranted. R.L.P.R. 8(a) & (d). If the OLPR concludes that public discipline is warranted, it prepares charges and refers the matter to a panel of the LPRB for further review. R.L.P.R. 8(d)(4). The LPRB holds a hearing at which the lawyer is permitted to testify and present evidence. R.L.P.R. 9(h). If the LPRB panel finds probable cause to believe that public discipline is warranted, it instructs the Director of the OLPR to file a petition for disciplinary action with the Minnesota Supreme Court. R.L.P.R. 9(j); R.L.P.R. 12. The lawyer is permitted to file an answer and to have a hearing before a referee and/or before the Minnesota Supreme Court. R.L.P.R. 13; R.L.P.R. 14. Following any decision before the Minnesota Supreme Court, the lawyer may petition for rehearing or, if they have been disbarred, may file a petition for reinstatement. R.L.P.R. 15(c); R.L.P.R. 18. At every stage in the proceedings, the lawyer is provided with notice and an opportunity to be heard.

In sum, the States and the District of Columbia, consistent with the exercise of their constitutional and statutory police powers, have created comprehensive systems for regulating the practice of law within their borders. These systems apply to *all* attorneys within a state's borders; there is no Constitutional "hold back" of the States' police powers for federal employees. Accepting Plaintiff's contrary claims here, which seek to immunize a former DOJ attorney from attorney-disciplinary proceedings, would encroach on this fundamental power reserved for the States.

### B.    Confirming the States' sovereignty in this area, the federal government has expressly deferred regulation of attorneys to the States.

In contrast to comprehensive state disciplinary systems, the federal government has no similar system of attorney discipline. While federal courts have authority to regulate the attorneys who appear before them, any orders of those federal courts do not necessarily affect attorneys' licensure or form the basis of reciprocal discipline in the attorneys' jurisdictions of licensure. As to DOJ attorneys specifically, the DOJ has a process for internally investigating its *employees'* conduct, but it has no authority whatsoever to regulate the practice of law for its attorneys. *See generally* 28 C.F.R. §§ 0.29–0.29j (powers of the Office of the Inspector General); 28 C.F.R. §§ 0.39–0.39c (powers of the Office of Professional Responsibility). Rather, the heaviest professional punishment that the DOJ can deliver to its attorneys is termination from federal employment and a referral to their state bar disciplinary authority. *See* 28 C.F.R. § 0.39a(a)(6), (9). It has no authority to regulate the practice of law in the States.[7]

In recognition of the DOJ's lack of attorney regulatory authority, Congress has made clear that DOJ attorneys are subject to state regulation where they reside and practice law. For example, congressional appropriations historically required DOJ

---

[7] It is unclear what provision of the Constitution Plaintiff might rely upon to try to justify an assertion of authority over the practice of law generally, but any such claim would fall outside the scope of the federal government's enumerated powers under the U.S. Constitution. *See, e.g., Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 550 (2012) (opinion of Roberts, C.J.) (explaining limits on federal authority under the Commerce Clause).

attorneys to be duly licensed and authorized to practice under the laws of a State, territory, or the District of Columbia such that compliance with underlying ethics rules was also mandatory. *See* Charles Doyle, Cong. Rsch. Serv., RL30060, *McDade-Murtha Amendment: Ethical Standards for Justice Department Attorneys* 2 n.3 (2001) (citing 93 Stat. 1044 (1979)); *see also United States v. Ferrara*, 847 F. Supp. 964, 969 (D.D.C. 1993). Thus, every DOJ attorney is—and must be—licensed to practice in a State, territory, or the District of Columbia. And by being so licensed, those attorneys agree (and swear an oath) to be subject to the applicable jurisdiction's rules and discipline on professional conduct. Plaintiff's lawsuit seeks an unprecedented exception to that oath.

To be sure, the DOJ has on several occasions contested the applicability of state attorney regulations to DOJ attorneys. For instance, in 1989, Attorney General Richard Thornburgh issued a memorandum in response to States' adoption of the no-contact rule, which prohibits direct contact with a represented opposing party without the consent of the party's counsel. The Thornburgh memorandum provided the "Department's position that contact with a represented individual in the course of authorized law enforcement activity does not violate [the no-contact rule]," and that the DOJ would "resist, on Supremacy Clause grounds, local attempts to curb legitimate federal law enforcement techniques." *See In re Clark*, 678 F. Supp. 3d 112, 117 (D.D.C. 2023) (citations omitted), *aff'd*, No. 23-7073, 2024 WL 3385251 (D.C. Cir. July 12, 2024) (describing memorandum). Needless to say, "[b]oth the courts and Congress took issue with the Thornburgh Memorandum." *Id.* And in 1994, the "DOJ,

12

under Attorney General Janet Reno, promulgated regulations 'intended to preempt and supersede the application of state laws and rules and local federal court rules to the extent that they relate to contacts by attorneys for the government with represented parties.'" *Id.* (citation modified) (quoting *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 961 F. Supp. 1288, 1293 (E.D. Mo. 1997)). In 1998, the Eighth Circuit, in *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, invalidated these regulations as exceeding the Attorney General's authority. 132 F.3d 1252 (8th Cir. 1998).

In 1999 and in response to the DOJ's efforts to excuse its attorneys from state bar regulation and discipline, Congress enacted the McDade-Murtha Amendment. 28 U.S.C. § 530B. The McDade-Murtha Amendment provides that all attorneys for the federal government are "subject to State laws and rules . . . governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State." 28 U.S.C. § 530B(a). By its plain terms, the McDade-Murtha Amendment applies to any "attorney for the Government," which necessarily includes DOJ attorneys, and subjects them to the same state laws and rules that bind nongovernmental attorneys where they practice. *See id.* § 530B(a); 28 C.F.R. § 77.2(a); *Ethical Standards for Attorneys for the Government*, 64 Fed. Reg. 19273, 19273–74 (Apr. 20, 1999) (construing the statute to extend to "codes of professional responsibility adopted by states").

Proponents of the bill explained that "[t]he failure of the federal government to have an adequate mechanism in place to hold accountable federal law enforcement

13

officers who are guilty of abuses undermines trust in the integrity of the system." *Ethical Standards for Federal Prosecutors Act of 1996: Hearing on H.R. 3386 Before the Subcomm. on Courts and Intell. Prop. of the H. Comm. on the Judiciary*, 104th Cong. 83 (1996) (statement of Ira Glasser et al., Executive Director, ACLU). Several other proponents of the bill spoke to the ineffectiveness of the DOJ's proposed system of self-regulation. The American Bar Association argued for the necessity of an "independent, external observer" and charged that the DOJ had "not disclosed improprieties by its personnel and has been reluctant to discipline." *Id.* at 171 (statement of William W. Taylor III, Section of Criminal Justice, Am. Bar Ass'n).

The McDade-Murtha Amendment enjoyed overwhelming bipartisan support. It was introduced by members of both political parties, and it received endorsements from a broad swath of organizations in the legal profession, including the American Bar Association, the American Civil Liberties Union, the Conference of Chief Justices, the U.S. Chamber of Commerce, and a representative of the Cato Institute. *See id.*; Rhona McMillion, *Playing By the Same Rules*, 85 ABA J. 91, 91 (June 1999). The notion that DOJ attorneys should be "playing by the same rules" was widely embraced as a "common-sense" codification of historically long-established practice. *See Ethical Standards for Federal Prosecutors Act of 1996: Hearing on H.R. 3386 Before the Subcomm. on Courts and Intell. Prop. of the H. Comm. on the Judiciary*, 104th Cong. 7 (1996) (statement of Rep. Joseph M. McDade). Thus, state oversight of federal government attorneys was not (and should not be) especially controversial; Congress did not see its law as an incursion into executive power, but instead as

14

simply acknowledging a position consistent with the Tenth Amendment that "confirm[ed]" that DOJ attorneys are subject to the same ethical rules as other lawyers regulated by the States. Doyle, *supra*, at 1.

The principal opposition to the McDade-Murtha Amendment came from the DOJ itself, which challenged the Amendment on grounds very similar to those raised by Plaintiff now. At the time, DOJ argued that the Amendment would interfere with law enforcement efforts and conflicted with federal preemption. *Ethical Standards for Federal Prosecutors Act of 1996: Hearing on H.R. 3386 Before the Subcomm. on Courts and Intell. Prop. of the H. Comm. on the Judiciary*, 104th Cong. 11–14, 46–49 (1996) (statement of Seth P. Waxman, Associate Deputy Attorney General, Dep't of Just.). All of these arguments were considered in committee, including DOJ's suggestion that the Supremacy Clause should grant the federal government authority to trump state rules regulating the practice of law. *See id.* at 62–63 (statement of Tim Evans, Director, Nat'l Ass'n of Crim. Def. Laws). Congress heard testimony about the risks from both sides, including the threats of both unchecked prosecutors and hostile state bar associations.

Ultimately, after considered debate, Congress decided to subject federal government attorneys to the same ethical rules as other attorneys in the jurisdictions where they practice. *Compare id.* at 12 (Statement of Waxman) *with id.* at 78 (Statement of Glasser). After its passage, DOJ promulgated a regulation recognizing that its attorneys are "subject" to these rules and may be disciplined by the state bars in which they practice. *See* 28 C.F.R. §77.2(h) (interpreting Section 530B to apply to

rules "that prescribe ethical conduct for attorneys *and that would subject an attorney, whether or not a Department attorney, to professional discipline*" (emphasis added)).

The McDade-Murtha Amendment not only stands as a federal codification of the States' longstanding sovereign authority to regulate attorneys practicing within their jurisdiction; it also undermines any argument by Plaintiff that state disciplinary proceedings violate the Supremacy Clause. *See* Compl. Counts 1 & 2. Specifically, "[t]he Supremacy Clause supplies a rule of decision when federal and state laws conflict," and "tells us the state law must yield" "when a regulated party cannot comply with both federal and state directives." *Martin v. United States*, 605 U.S. 395, 409 (2025). While the McDade-Murtha Amendment is the "supreme" federal law addressing attorney regulation, it incorporates and recognizes the States' regulation, meaning there is no conflict to resolve. *See id.* at 410 (rejecting Supremacy Clause claim where Federal Tort Claims Act incorporated state law). In other words, state and federal law are perfectly aligned in this case.[8]

In sum, the McDade-Murtha Amendment codifies and preserves state autonomy over regulation of attorneys, and it stands as a firm rejection of the DOJ's attack on the authority of the D.C. Bar to enforce the D.C. Rules of Professional Conduct. Thus, as a matter of state sovereignty, and as recognized by Congress and

---

[8] This case is unlike *United States v. Supreme Court of New Mexico*, in which the Tenth Circuit found an express conflict between a specific New Mexico ethical rule and the grand jury power of federal prosecutors. 839 F.3d 888, 923 (10th Cir. 2016). Here, Plaintiff challenges D.C.'s entire disciplinary system (as it relates to specific conduct by a former DOJ employee), and it identifies no affirmative provision of federal law with which that system even allegedly conflicts. There is no conflict between local and federal law here.

the DOJ, all attorneys—no matter who they work for—are held accountable by the applicable professional standards maintained by the States and territories possessing the constitutional authority, historical mandate, and expertise to regulate the practice of law.

## II.     Fundamental abstention principles highlight the dangers of allowing DOJ to interfere in ongoing State disciplinary proceedings.

Recognizing the States' unique sovereign interest in regulating the legal profession, the U.S. Supreme Court has unambiguously held that federal courts should abstain from "considering a challenge to the constitutionality of disciplinary rules that are the subject of pending state disciplinary proceedings." *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 425 (applying *Younger v. Harris*, 401 U.S. 37 (1971)); *Eisenberg v. W. Va. Off. of Disciplinary Couns.*, 856 F. App'x 314, 315 (D.C. Cir. 2021) ("*Younger* abstention applies when, as here, the ongoing state proceedings are state bar disciplinary proceedings.").[9] *Younger* rests on (1) principles of equity, including the rule that injunctions are improper where an adequate remedy at law exists, and (2) concerns over comity and federalism. *See JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1121 (D.C. Cir. 2004) (holding *Younger* abstention applies to the District of Columbia). The principles animating *Younger* (and other federal abstention

---

[9] *See, e.g., Am. Fam. Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 330 (6th Cir. 2007) (affirming dismissal of constitutional challenge to Ohio law governing unauthorized practice of law based on *Younger* abstention); *Canatella v. California*, 404 F.3d 1106, 1108–09 (9th Cir. 2005) (denying intervention in constitutional challenge to state disciplinary action on abstention grounds when proceedings against proposed intervenor were ongoing).

17

doctrines) demonstrate the dangers of permitting federal interference with ongoing state disciplinary proceedings.[10]

*First*, Mr. Clark (and Plaintiff) have an adequate remedy at law, meaning there is no need to short-circuit the ongoing state disciplinary proceedings. *See JMM Corp.*, 378 F.3d at 1121. As Plaintiff acknowledges, the challenged action here is a recommendation only; the D.C. Court of Appeals has ultimate decision-making authority in the disciplinary proceeding against Mr. Clark and has not rendered any decision. *See* Compl. ¶ 37. Allowing Plaintiff's action to proceed would remove that well-established avenue for judicial review and frustrate D.C.'s disciplinary procedures, both in this action and potentially in other future proceedings involving DOJ attorneys. As to this action, the United States is essentially asking this Court to stop the ongoing disciplinary proceedings *midprocedure* simply because it does not agree with the D.C. Board's first-line recommendation to discipline a D.C. bar member and former DOJ attorney. But that recommendation is not the end of the inquiry, and it remains subject to a fulsome and ongoing consideration by the D.C. Court of Appeals (and potentially the U.S. Supreme Court on a petition for certiorari).

---

[10] *See, e.g.*, *Thomas v. Knight*, 257 F. Supp. 2d 86, 93 (D.D.C. 2003) (holding *Rooker-Feldman* abstention doctrine barred indirect challenge to disbarment decision by D.C. Court of Appeals), *aff'd*, No. 03-7041, 2003 WL 22239653 (D.C. Cir. Sept. 24, 2003); *Danner v. Bd. of Pro. Resp.*, 277 F. App'x 575, 580 (6th Cir. 2008) (explaining that neither *Younger* nor *Rooker-Feldman* abstention doctrines permitted review of challenge to adverse disciplinary action); *see also Burford v. Sun Oil Co.*, 319 U.S. 315, 332 (1943) (citing abstention cases "reflect[ing] a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion', restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary'" (citation omitted)).

The DOJ can participate and raise any objections it has to the D.C. Board's recommendation (including its immunity arguments, *see, e.g.*, Compl. ¶¶ 3, 48). Indeed, the DOJ has done so by filing an amicus brief in that proceeding. The DOJ offers no explanation why that established legal procedure is so inadequate as to justify this Court injecting itself into the process.

*Second*, principles of federalism and comity preclude Plaintiff's request for relief. *See JMM Corp.*, 378 F.3d at 1121. Granting the United States the power to stop ongoing state disciplinary proceedings against DOJ attorneys would frustrate each State's regulation of federal attorneys within their borders. Any investigation stopped midstream—whether temporarily or permanently—would impact its efficacy: delays mean witnesses may no longer be available, memories fade, and records or other evidence can be destroyed or otherwise compromised. And in States where disciplinary authorities are limited by statutes of limitations, such extended delay could permanently immunize DOJ attorneys from state discipline. Such effective immunization of DOJ attorneys would leave no avenue for discipline, impugning the integrity of both the States' disciplinary systems and the legal profession as a whole. *See infra* § III.

### III.    The United States' arguments, if credited, would undermine public confidence in regulation of the legal profession.

Public confidence in the legal profession must be earned and maintained. It is not something to be taken for granted. To safeguard that public confidence, courts have long considered the regulation of attorneys to be a matter of public safety, and it is unsurprising that States have developed such robust disciplinary regimes for the

19

regulation of the attorneys licensed to practice under their borders. No attorney within a State's borders is above these requirements, nor should any be. Any erosion of that principle threatens public confidence in the legal profession at both the national and the local level.

At the national level, allowing individual federal attorneys to get exemptions from state disciplinary systems would leave a glaring enforcement void. Allowing the United States to selectively prohibit the States from engaging in their ordinary attorney disciplinary procedures with regard to particular federal government attorneys would not only ignore the States' power to regulate attorneys within their borders, it also would supplant established and detailed state procedures, leaving the DOJ's internal employment review process as the only check on professional or ethical rule violations by such attorneys. But the DOJ's review process would not be a substitute for those developed by the States over centuries. DOJ discipline is limited to internal punishment and/or termination; DOJ has no power to disbar an attorney and no mechanisms for (nor any commitment to) public reporting where it eschews state regulatory power over DOJ attorneys. *See* Review of State Bar Complaints and Allegations Against Department of Justice Attorneys, 91 Fed. Reg. 10780, 10781 (proposed Mar. 5, 2026). Indeed, the DOJ's position is tantamount to a rejection of the professional obligation that accrues to each and every one of the DOJ's attorneys to report professional misconduct through each jurisdiction's adoption of Rule of Professional Conduct 8.3, a cornerstone of the system famously referred to as "self-regulation" of the legal profession.

20

DOJ procedures are even more lacking where, as is the case here, the attorney at issue (Mr. Clark) is a *former* DOJ attorney. In those circumstances, the DOJ cannot compel participation in any ethics investigation. Even if the DOJ determined that the former DOJ attorney had engaged in rule violations warranting discipline, the DOJ would have no disciplinary authority because termination of employment is not applicable and admonishment would do nothing. These employment-based powers that the DOJ exerts over attorneys while they are employed stand in stark contrast to the States' power to publicly reprimand, suspend a law license, or disbar an attorney to redress serious violations. And, while state disciplinary proceedings typically carry state-to-state reciprocity, there is no basis to conclude that the DOJ would share the results of any internal investigative or disciplinary process with state bar disciplinary authorities, much less notify the public about the underlying details.

Such disruption of state proceedings, combined with the inadequate internal DOJ procedures, risks allowing other DOJ attorneys to effectively become immunized from state bar discipline procedures, with potentially grave consequences. Even federal prosecutors—who hold dramatic influence over the liberty of individuals—might be immune from disbarment for egregious ethical violations. Similarly, the worst punishment that DOJ's civil litigators might face would be loss of their job. The same is true for all manner of DOJ attorneys who might abuse their position of trust in contravention of ethical rules, so long as they claim their acts were performed within the scope of their federal employment and concerned purportedly internal federal government deliberations. While all attorneys are expected to practice in a

manner that respects their oaths to uphold the law, maintain ethical standards, and act in the best interests of clients and the justice system, state disciplinary systems are the means for providing that necessary check on all attorneys.

This Court should allow States to continue to hold individuals responsible for their adherence to their oaths to serve as officers of the court. Indeed, the very reason for the States' detailed regulation of attorneys is to protect the public by ensuring that attorneys within their borders abide by their oaths as officers of the courts that have granted them their admission. And it is through centuries of regulation that States have developed their systems to balance protection of the public with due process to attorneys. External interference in the attorney regulation process risks disrupting this delicate balance, undermining state courts' ability to administer justice and opening the door to intrusive oversight of a well-established core state judicial function.

## CONCLUSION

For these reasons, the Amici States respectfully urge this Court to grant Defendants' motion to dismiss and to deny Plaintiffs the relief requested.

22

Dated: July 17, 2026

Respectfully Submitted,

**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/Kolya Glick*
Kolya D. Glick (D.C. Bar No. 1015074)*
Senior Assistant Attorney General
  *Counsel of Record*
Nora Q.E. Passamaneck
Senior Assistant Attorney General
Sarah H. Weiss
Senior Assistant Attorney General
Erin Farinelli
Assistant Attorney General Fellow
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Kolya.Glick@coag.gov
Nora.Passamaneck@coag.gov
Sarah.Weiss@coag.gov
Erin.Farinelli@coag.gov

*Attorneys for the State of Colorado*

*Practice in Colorado temporarily authorized pending admission under C.R.C.P. 205.6.

**KEITH ELLISON**
Attorney General
State of Minnesota

*/s/Kimberly Svendsen*
Kimberly Svendsen
Special Counsel, Rule of Law
445 Minnesota Street, Suite 1400
St. Paul, MN 55101
(651) 757-1141
kimberly.svendsen@ag.state.mn.us

*Counsel for the State of Minnesota*

23

**KRISTIN K. MAYES**
*Attorney General*
*State of Arizona*
2005 N. Central Ave.
Phoenix, AZ 85004

**WILLIAM TONG**
*Attorney General*
*State of Connecticut*
165 Capitol Ave.
Hartford, CT 06106

**ANNE E. LOPEZ**
*Attorney General*
*State of Hawai'i*
425 Queen St.
Honolulu, HI 96813

**AARON M. FREY**
*Attorney General*
*State of Maine*
6 State House Station
Augusta, ME 04333

**ANDREA JOY CAMPBELL**
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Pl.
Boston, MA 02108

**JENNIFER DAVENPORT**
*Attorney General*
*State of New Jersey*
25 Market St.
Trenton, NJ 08625

**JEFF JACKSON**
*Attorney General*
*State of North Carolina*
114 W. Edenton St.
Raleigh, NC 27603

**ROB BONTA**
*Attorney General*
*State of California*
1300 I St.
Sacramento, CA 95814

**KATHLEEN JENNINGS**
*Attorney General*
*State of Delaware*
820 N. French St.
Wilmington, DE 19801

**KWAME RAOUL**
*Attorney General*
*State of Illinois*
115 S. LaSalle St.
Chicago, IL 60603

**ANTHONY G. BROWN**
*Attorney General*
*State of Maryland*
200 Saint Paul Pl.
Baltimore, MD 21202

**DANA NESSEL**
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

**LETITIA JAMES**
*Attorney General*
*State of New York*
28 Liberty St.
New York, NY 10005

**DAN RAYFIELD**
*Attorney General*
*State of Oregon*
1162 Court St. NE
Salem, OR 97301

24

**PETER F. NERONHA**
*Attorney General*
*State of Rhode Island*
150 S. Main St.
Providence, RI 02903

**JAY JONES**
*Attorney General*
*Commonwealth of Virginia*
202 North Ninth Street
Richmond, Virginia 23219

**CHARITY R. CLARK**
*Attorney General*
*State of Vermont*
109 State St.
Montpelier, VT 05609

**NICHOLAS W. BROWN**
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

25

## CERTIFICATE OF COMPLIANCE

This document complies with the page limit of LCvR 7(o)(4) [no more than 25 pages].

☒        This document contains 22 pages.

This document complies with the typeface and typestyle requirements of LCvR 5.1(d):

☒        This document has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook type.

This document has been submitted in compliance with the court's ECF requirements.

/s/ *Kolya D. Glick*

26