**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITES STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>HAMILTON P. FOX III, ET AL.<br>*Defendants*. | No. 1:26-CV-01658 (RJL) |

**PROPOSED BRIEF OF *AMICI CURIAE* LEGAL ETHICS SCHOLARS AND EXPERTS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

David W. Ogden
Norman L. Eisen
Christopher J. Swartz*
Democracy Defenders Fund
600 Pennsylvania Ave., S.E., No. 15180
Washington, D.C. 20003
(202) 594-9958

Mitt Regan *
McDevitt Professor of Jurisprudence
Georgetown University Law Center
600 New Jersey Avenue, NW
Washington, D.C. 20001

Counsel for *Amici Curiae*

**Pro Hac Vice applications forthcoming.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

IDENTITY AND INTEREST OF AMICI ........ 1

SUMMARY OF ARGUMENT ........ 1

I. Since the Founding, State Courts Have Had the Authority to License and Regulate the Conduct of Lawyers ........ 3

II. Congress Established a Comprehensive Framework Requiring DOJ Attorneys Licensed in the District of Columbia to Adhere to the D.C. Rules of Professional Conduct Administered by the D.C. Court of Appeals ........ 6

III. Legislative History Shows that Congress Passed the McDade Amendment to Avoid the Exact Result Urged by DOJ ........ 12

IV. Judicial Regulation of the Legal Profession Provides Substantial Procedural Guarantees ........ 20

V. Courts Must Maintain their Authority to Regulate the Legal Profession to Avoid Creating a Class of Attorneys Immune from Ethical Obligations ........ 21

VI. The Proper Forum for the Department of Justice's Objections to the Board's Recommendations is in Clark Disciplinary Appeal ........ 23

CONCLUSION ........ 24

APPENDIX A ........ 1a

## TABLE OF AUTHORITIES

### Cases

*Cohen v. Hurley*, 366 U.S. 117 (1961) .......... 4
*District of Columbia v. John R. Thompson Co*., 346 U.S. 100 (1953) .......... 7
*Ex parte Garland*, 71 U.S. 4 Wall. 333 (1867).......... 4
*In re Clark*, 678 F. Supp. 3d 112 (D.D.C. 2023) .......... 9
*In re Order*, No. M-245-14 , 2015 D.C. App. LEXIS 519 (D.C. Ct. App. Oct. 16, 2015).......... 20
*In re Snyder*, 472 U.S. 634 (1985) .......... 4, 5, 22
*Leis v. Flynt*, 439 U.S. 438 (1979). .......... 4
*Malloy v. Hogan*, 378 U.S. 1 (1964).......... 4
*Puerto Rico. Dep't of Consumer Affairs v. Isla Petroleum Corp.,* 485 U.S. 495 (1988).......... 9
*Trump v. United States,* 603 U.S. 593 (2024) .......... 11
*U.S. ex rel. O'Keefe v. McDonnell Douglas Corp*., 132 F.3d 1252 (8th Cir. 1998).......... 10, 14
*United States v. Ferrara* 54 F.3d 825 (D.C. Cir. 1995).......... 14
*United States v. Ferrara* 847 F. Supp. 964 (D.D.C. 1993).......... 14
*United States v. Lopez* 765 F. Supp. 1433 (N.D. Cal. 1991) .......... 13, 14
*United States v. Lopez*, 4 F.3d 1455 (9th Cir. 1993).......... 10, 13
*United States v. Nixon,* 418 U. S. 683 (1974) .......... 11
*United States v. Supreme Court of New Mexico*, 839 F.3d 888 (10th Cir. 2016).......... 11, 12
*United States v. Lopez* 989 F.2d 1032 (9th Cir. 1993).......... 13

### Statutes

Act to Establish the Department of Justice, ch. 150, 16 Stat. 162 (1870) .......... 10
28 U.S.C. § 509.......... 10
28 U.S.C. § 515(a) .......... 10
28 U.S.C. § 515(c) .......... 10
28 U.S.C. § 516.......... 10
28 U.S.C. § 530B .......... 8, 17
28 U.S.C. § 530B(a).......... 7, 9
28 U.S.C. § 530C(c).......... 7, 8, 13, 15
28 U.S.C. § 530C(c)(1) .......... 8
28 U.S.C. § 533.......... 10
28 U.S.C. § 547.......... 10
D.C. Code § 11-2501 .......... 7
D.C. Code § 11-2502 .......... 7
Judiciary Act of 1789, ch. 20, 1 Stat. 73.......... 10
Mich. Comp. Laws Ann. § 600.904 (West 2026).......... 4

**Rules**

D.C. Bar R. XI, § 4 ........ 20
D.C. Bar Rule XI § 9(a) ........ 21
D.C. Bar Rule XI § 9(b). ........ 21
D.C. Bar Rule XI § 9(h)(1) ........ 21
D.C. Bar Rule XI § 8(d) ........ 21
D.C. Bar Rule XI § 8(e) ........ 20
D.C. Bar Rule XI § 9(g)(1) ........ 21
D.C. Bar Rule XI, § 8(c) ........ 20
D.C. Bar Rule XI, § 9(j) ........ 21
D.C. Ct. App. R. 29(a)(2) ........ 23
D.C. R. Prof. Conduct R. 8.4(a), (c), (d). ........ 9
Del. Lawyers' Rules of Prof'l Conduct r. 5.5(d)(2) ........ 5
Md. Atty's Rule of Prof'l. Conduct r. 19-305.5(c) ........ 5

**Regulations**

28 C.F.R. § 77 (1994) ........ 14
28 C.F.R. § 77.2(h)-(i) ........ 9

**Constitutional Provisions**

Fla. Const. art. V, § 15 ........ 4
Ohio Const. art IV ........ 4
U.S. Const. Art. I, § 8, cl. 17 ........ 7
U.S. Const. Art. II, § 3, cl. 3 ........ 10

**Other Authorities**

144 Cong. Rec. H718 (1998) ........ 17, 18
ABA's Model Rules for Lawyer Disciplinary Enforcement (2002) ........ 20
American Bar Foundation. *1971 Lawyer Statistical Report* 75 (1972) ........ 8
*Brief for the United States of America as Amicus Curiae in Support of Respondent*, *In the Matter of Jeffrey B. Clark* 13, DCCA No. 25-BG-0731 (October 6, 2025) ........ 22
*Communications with Represented Persons*, 59 Fed. Reg. 39910 (Aug. 4, 1994) ........ 14
*Ethical Standards for Federal Prosecutors Act of 1996: Hearing on H.R. 3386 Before the Subcomm. On Cts. & Intell. Prop. Of the Comm. Of the Judiciary*, 104th Cong. 109 (1996) ........ 15
Federal Prosecutor Ethics Act, S. 250, 106th Cong. § 2 (1999) ........ 18
Federal Prosecutors Act of 1997, H.R. 3386, 104th Cong. (1997) ........ 14
H.R. Rep. No. 105-636 (1998) ........ 17

*Hearing on H.R. 3386, the Prosecutors Act of 1997,* Before the Subcommittee on Courts and Intellectual Property of the House Committee on the Judiciary, 104th Cong. 1-2 (1997) .. 15, 16

Memorandum from Attorney General Thornburgh, *Re: Communication with Persons Represented by Counsel* (June 8, 1989), *set forth in Matter of Doe*, 801 F. Supp. 478, 490 (D.N.M. 1992)............ 13

*Review of State Bar Complaints and Allegations Against Department of Justice Attorneys*, 91 Fed. Reg. 10780 (Mar. 5, 2026)............ 23

*The Effect of State Ethics Rules on Federal Law Enforcement: Hearing Before the Subcomm. On Criminal Justice Oversight*, 106th Cong. 4 (1999)............ 18, 19

U.S. Dep't of Just., *Justice Manual* § 1-4.110 (2018) ............ 8

## IDENTITY AND INTEREST OF AMICI

Amici Curiae Legal Ethics Scholars are scholars who study issues relating to lawyers' ethical conduct and work to improve the rules of professional conduct, the regulatory processes governing lawyers, and to analyze forms of accountability for lawyers who violate their ethical responsibilities. Amici Curiae Legal Ethics Experts are lawyers who practice in the field of legal ethics, teach legal ethics, and/or serve on lawyer disciplinary bodies. Amici Curiae Legal Ethics Scholars and Legal Ethics Experts are committed to strengthening lawyer regulation and professional conduct so that lawyers can better fulfil their ethical duties, including to protect the administration of justice and sustain the rule of law. The full list of Amici is listed in Appendix A. Amici are also committed to helping make lawyer disciplinary systems fair and effective. Amici have a strong interest in this case because Plaintiff's challenge to the judiciary's authority to regulate Department of Justice ("DOJ") lawyers poses a significant threat to effective ethical regulation of lawyers and their fulfillment of their distinctive professional responsibilities. [1]

## SUMMARY OF ARGUMENT

Plaintiff's lawsuit is part of DOJ's campaign to usurp the authority of the D.C. Court of Appeals to regulate lawyer conduct, including to sanction DOJ lawyers admitted to practice law in the District. Indeed, the DOJ is attempting to usurp the power of all State courts to regulate DOJ lawyers who have been admitted in their jurisdictions. This is evident not only in Plaintiff's collateral attack on the disciplinary proceedings involving Jeffrey Clark now pending in the D.C. Court of Appeals. It can also be seen in the DOJ's amicus brief filed in Clark's disciplinary case

[1] All parties have consented to the filing of this brief. No party's counsel authored this brief in whole or in part; no party or a party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person—other than the amici curiae and their counsel—contributed money that was intended to fund preparing or submitting this brief.

and in the DOJ's recently proposed regulations that would indefinitely delay the ability of court-appointed State regulators to consider complaints against DOJ lawyers.

DOJ's efforts to insulate its lawyers from ethical regulation by State courts and the D.C. Court of Appeals would contravene basic separation of powers principles, disregarding the long history of lawyer regulation by State courts, and Congressional mandates that government lawyers are to be regulated like all other lawyers by the judiciary in the jurisdiction in which they are admitted to practice.

Since the founding of this country, State courts have exercised the power to admit, regulate, and discipline lawyers they have admitted to practice. This power is essential to the proper functioning of the judicial system and the rule of law. Congress has ensured that DOJ lawyers are subject to this judicial regulation by requiring that all lawyers employed by the DOJ be admitted to practice in one State or the District of Columbia.

In the District of Columbia, the power of the D.C. Court of Appeals to regulate lawyers derives directly from Congress. Acting under its Constitutional authority over the District of Columbia, Congress has empowered the D.C. Court of Appeals to establish rules for attorneys licensed in the District and to discipline such attorneys. Congress created no exception for DOJ lawyers.

On the contrary, when the DOJ attempted to unilaterally exempt its lawyers from certain State ethics rules in the 1980s and 1990s, Congress explicitly rejected that effort. In 1998, it enacted the McDade Amendment, which provides that Government attorneys "shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, *to the same extent and in the same manner* as other

attorneys in that State" (emphasis added.) The legislative history leaves no question that Congress intended that DOJ lawyers be fully subject to State discipline.

Nor is there any basis for Plaintiff's claim that the Supremacy clause should shield Mr. Clark from D.C. regulatory proceedings. There is no conflict between federal and D.C. law because the District of Columbia's regulatory authority over lawyers has been established by federal legislation, and because this legislation does not intrude on any executive branch authority under Article II that would exempt its lawyers from State or D.C. ethical regulation.

Plaintiff's claim that Defendants are engaged in "weaponization" of the disciplinary process is also misplaced. The disciplinary process in the District of Columbia involves multiple levels of review and many procedural protections for lawyers, including review by the D.C. Court of Appeals. These are precisely the protections that Mr. Clark is receiving now in his appeal of the D.C. Bar's disciplinary recommendation in his case. Plaintiff attempts to circumvent that process through this lawsuit, which would effectively strip the D.C. Court of the power conferred on it by Congress.

These issues should be presented to and ruled upon by the D.C. Court of Appeals because it has licensed Mr. Clark. Consistent with applicable law and the history of State regulation of attorney conduct dating back to the beginning of the Nation, this Court should reject Plaintiff's attempt to usurp the D.C. Court of Appeals's authority to oversee the conduct of attorneys who, like Mr. Clark, are or were employed by the DOJ.

## I. Since the Founding, State Courts Have Had the Authority to License and Regulate the Conduct of Lawyers

As the U.S. Supreme Court has recognized, since the beginning of this country States have had the authority to license lawyers to practice in their jurisdictions and to regulate their conduct:

> Since the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions. The States prescribe the qualifications for admission to practice and the standards of professional conduct. They also are responsible for the discipline of lawyers.

*Leis v. Flynt*, 439 U.S. 438, 442 (1979).

These functions have been carried out by the judicial branch in each State and in D.C. Indeed, regulation of the bar by the judiciary has a history even deeper than that of the American Republic; it is "the exertion of disciplinary powers which English and American courts (the former primarily through the Inns of Court) have for centuries possessed over members of the bar, incident to their broader responsibility for keeping the administration of justice and the standards of professional conduct unsullied." *Cohen v. Hurley*, 366 U.S. 117, 123–24 (1961), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964).

The Supreme Court has recognized that lawyers' "admission or their exclusion is not the exercise of a mere ministerial power. It is the exercise of judicial power, and has been so held in numerous cases." *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 378-79 (1867)*; see also In re Snyder*, 472 U.S. 634, 643 (1985).[2] The Court has explained:

> The order of admission is the judgment of the court that the parties possess the requisite qualifications as attorneys and counsellors, and are entitled to appear as such and conduct causes therein. From its entry the parties become officers of the court, and are responsible to it for professional misconduct. They hold their office during good behavior, and can only be deprived of it for misconduct ascertained and declared by the judgment of the court after opportunity to be heard has been afforded.

*Ex parte Garland*, 71 U.S. at 378.

---

[2] In some jurisdictions, the courts' authority to discipline lawyers is also written into statutes and State constitutions. *See, e.g.,* Fla. Const. art. V, § 15; Ohio Const. art IV, § 2; Mich. Comp. Laws Ann. § 600.904 (West 2026).

This regulatory authority reflects the fact that the conduct of lawyers admitted to practice has crucial implications for the integrity of the legal system and public confidence in it. As the Supreme Court has stated:

> As an officer of the court, a member of the bar enjoys singular powers that others do not possess; by virtue of admission, members of the bar share a kind of monopoly granted only to lawyers. Admission creates a license not only to advise and counsel clients but to appear in court and try cases; as an officer of the court, a lawyer can cause persons to drop their private affairs and be called as witnesses in court, and for depositions and other pretrial processes that, while subject to the ultimate control of the court, may be conducted outside courtrooms. The license granted by the court requires members of the bar to conduct themselves in a manner compatible with the role of courts in the administration of justice.

*In re Snyder*, 472 U.S. at 644-45.

Every State and D.C. thus require bar admission before an individual can engage in law practice in that jurisdiction.[3] In addition, admission to a State bar or the D.C. Bar is a prerequisite to gain admission to federal courts. *See, e.g.,* D.D.C. Civ. R. 83.8; *see also* Restatement (Third) of the Law Governing Lawyers § 2, cmt. b (2000). It is also required for employment as a DOJ lawyer. 28 U.S.C. § 530C(c). As described in greater detail in Part II below, in the District of Columbia, Congress explicitly directed the D.C. Court of Appeals to exercise licensing and disciplinary authority over lawyers admitted to practice in the District through the District of Columbia Court Reform and Criminal Procedure Act of 1970 ("Court Reform Act"), Pub. L. No. 91-358, § 11-2501(a) (1970) (codified at D.C. Code § 11-2501).

---

[3] Several States permit temporary practice by lawyers admitted to practice in another jurisdiction. *See, e.g.*, Md. Atty's Rule of Prof'l. Conduct r. 19-305.5(c). Lawyers who practice exclusively federal law, such as patent law, may also practice in a jurisdiction where they are not licensed so long as they are licensed to practice law in some other jurisdiction. *See, e.g.*, Del. Lawyers' Rules of Prof'l Conduct r. 5.5(d)(2).

The American Bar Association's ("ABA") House of Delegates affirmed these principles in 1989 in adopting the Model Rules for Lawyer Disciplinary Enforcement ("MRLDE"), later amended in 2002. The MRLDE provide guidance to State courts and the D.C. Court of Appeals in the establishment of lawyer discipline agencies and procedures. The MRLDE acknowledge the judiciary's exclusive responsibility for lawyer discipline and the rules of professional conduct:

> This court declares that it has exclusive responsibility within this state for the structure and administration of the lawyer discipline and disability system and that it has inherent power to maintain appropriate standards of professional conduct and to dispose of individual cases of lawyer discipline and disability[.]

Model Rules for Law. Disciplinary Enf't Preamble (ABA 2002); *see also* Wash. Sup. Ct. Rules for Enf't of Law. Conduct 2.1 (2002).

State court regulatory authority over the conduct of lawyers therefore has a long-standing historical pedigree. As the next section describes, Congress has also explicitly mandated that all lawyers licensed in the District of Columbia, including DOJ lawyers, are subject to the licensing and the rules and regulations of the D.C. Court of Appeals.

## II. Congress Established a Comprehensive Framework Requiring DOJ Attorneys Licensed in the District of Columbia to Adhere to the D.C. Rules of Professional Conduct Administered by the D.C. Court of Appeals

Plaintiff argues that the Defendants' actions regarding Mr. Clark violate the Supremacy Clause and that "disciplinary proceedings based on executive branch deliberations are unlawfully intruding upon the President's and Attorney General's core Article II prerogative." Complaint at ¶¶ 30, 131. That argument cannot be squared with the comprehensive federal statutory framework established by Congress, nor with the fact that this framework does not intrude upon any authority delegated by the Constitution to the executive branch.

First, federal law enacted by Congress requires all DOJ attorneys to be licensed by a State or by D.C. and, for those who are licensed in the District, to adhere to the D.C. Rules of Professional Conduct as administered by the D.C. Court of Appeals. Congress has enacted three statutes that effectuate this framework. These authorize the D.C. Court of Appeals to establish rules of professional conduct for all attorneys in the District and to discipline attorneys (D.C. Code § 11-2501); require DOJ attorneys licensed by the District to maintain a license in good standing (28 U.S.C. § 530C(c)); and affirm that such lawyers "be subject to" those rules "to the same extent and in the same manner" as all other licensed attorneys (28 U.S.C. § 530B(a)). These statutes, enacted by Congress under Article I of the Constitution, resolve any Supremacy Clause concerns that otherwise might arise from the application of State laws to Federal functions.

In the first of these statutes, Congress in 1970 directed the D.C. Court of Appeals to "make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion" through the Court Reform Act. D.C. Code § 11-2501. Congress further provided that the "Court of Appeals may censure, suspend from practice, or expel a member of its bar for crime, misdemeanor, fraud, deceit, malpractice, professional misconduct, or conduct prejudicial to the administration of justice." *Id.* § 11-2502.

The Court Reform Act was adopted under Congress's plenary constitutional authority over the District of Columbia. *See* U.S. Const. Art. I, § 8, cl. 17; *District of Columbia v. John R. Thompson Co*., 346 U.S. 100, 108 (1953) ("The power of Congress over the District of Columbia relates not only to national power but to all the powers of legislation which may be exercised by a State in dealing with its affairs") (cleaned up). It provides express authority to the D.C. Court

of Appeals to both establish rules for attorneys licensed in the District and to discipline such attorneys up-to-and-including disbarment. At the time of enactment, more than 8,500 attorneys were employed in Washington D.C. by the Federal government in the executive and legislative branches, including at the DOJ. American Bar Foundation. *1971 Lawyer Statistical Report* 75 (1972). Yet Congress created no exception to the D.C. Court of Appeals's jurisdiction under the Court Reform Act for attorneys serving with the DOJ or other federal agencies.

Next, in 1979, section 201 of the 21st Century Department of Justice Appropriations Authorization Act (codified at 28 U.S.C. § 530C(c)) codified a longstanding appropriations rider that prohibited payment by the DOJ to any attorney "unless such individual is duly licensed and authorized to practice as an attorney under the law of a State, a territory of the United States, or the District of Columbia." 28 U.S.C. § 530C(c)(1). The effect of this provision is to forbid the Department from employing an individual as an attorney unless they are licensed to practice and are in good standing. The Department's *Justice Manual* recognizes the import of this requirement, explaining that in the event that an attorney's bar membership lapses, the DOJ "must direct the attorney in writing immediately to cease performing representational or counseling work for the United States, or rendering any legal advice to the United States, pending reinstatement to an active bar membership status." U.S. Dep't of Just., *Justice Manual* § 1-4.110 (2018).

Finally, Congress enacted section 801 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1998 (the "McDade Amendment" or the "Citizens Protection Act") (codified at 28 U.S.C. § 530B). This provides: "An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, *to the same extent and in the same*

*manner* as other attorneys in that State." 28 U.S.C. § 530B(a) (emphasis added). As the District Court for the District of Columbia recently recognized, "section 530B unambiguously applies to D.C." *In re Clark*, 678 F. Supp. 3d 112, 129 n.9 (D.D.C. 2023), *aff'd,* No. 23-7073, 2024 WL 3385251 (D.C. Cir. July 12, 2024); *see also* 28 C.F.R. § 77.2(h)-(i). The plain text of the McDade Amendment indicates that its purpose was to make clear that DOJ attorneys are fully subject to applicable State bar rules and disciplinary processes when engaged in their official duties. As its legislative history reflects, *see* Part III below, the McDade Amendment was a resounding Congressional rejection of the DOJ's prior attempts to unilaterally shield DOJ lawyers from State professional rules of conduct and disciplinary processes.

Individually and together, these three statutes lead to a single, inexorable conclusion: Congress—not once, not twice, but three times—passed legislation that ensures that attorneys licensed by D.C. who are employed by the DOJ adhere to the D.C. Rules of Professional Conduct as promulgated and enforced by the D.C. Court of Appeals. By requiring DOJ attorneys to abide by D.C. Rules of Professional Conduct, Congress has made clear that there can be no Supremacy Clause issue regarding the interaction between Federal and State law: the applicability of State law ethics rules and procedures is the governing *federal* law.

In addition, there is no Supremacy Clause or other constitutional concern because D.C.'s disciplinary process based on this federal statute does not intrude on any executive authority nor interfere with any executive function. It is axiomatic that "[t]here is no federal preemption *in vacuo*, without a constitutional text or federal statute to assert it." *Puerto Rico. Dep't of Consumer Affairs v. Isla Petroleum Corp.,* 485 U.S. 495, 503 (1988). Yet Plaintiff has pointed to no federal requirement for DOJ lawyers that poses a conflict with D.C. Rules of Professional Conduct 8.4(a), (c), (d).

Article II of the U.S. Constitution provides that the President is to "take Care that the Laws be faithfully executed." U.S. Const. Art. II, § 3, cl. 3. In this instance, those laws include: (1) the statutory authority Congress provided to the Attorney General to represent the United States when it established the position through the Judiciary Act of 1789, ch. 20, 1 Stat. 73; (2) the powers conferred upon the Department of Justice since Congress established the DOJ in 1870 (Act to Establish the Department of Justice, ch. 150, 16 Stat. 162 (1870)); and (3) the statutory requirements that DOJ attorneys be licensed and in good standing in at least one jurisdiction and must adhere to applicable ethical standards.

No statute, nor any constitutional provision, provides the Attorney General with the authority to exempt DOJ attorneys from applicable State ethics rules. *See United States v. Lopez*, 4 F.3d 1455, 1461 (9th Cir. 1993) (holding that statutory provisions regarding DOJ investigation of crime, including 28 U.S.C. §§ 509, 515(a) and (c), 516, 533 and 547, did not nullify responsibility to adhere to applicable ethics requirements*); U.S. ex rel. O'Keefe v. McDonnell Douglas Corp*., 132 F.3d 1252, 1257 (8th Cir. 1998) (holding that "nothing in any [statute overseen by the DOJ] expressly or impliedly gives the Attorney General the authority to exempt lawyers representing the United States from the local rules of ethics which bind all other lawyers appearing in that court of the United States"). Congress has made clear that the D.C. Rules are part of the legal framework for how DOJ attorneys are to conduct their activities.

Compliance with State ethics rules is therefore a central *part of,* not *in tension with,* the DOJ's constitutional duty to assist the President in his Article II responsibility to "take Care that the Laws be faithfully executed." U.S. Const. Art. II, § 3, cl. 3. To fulfill this responsibility, Justice Department attorneys must adhere to all applicable statutes, including those that require compliance with State ethics rules. There is no usurpation of Presidential power here; lawyers'

fulfillment of their ethical responsibilities instead assists the President in faithfully executing the law.

The Supreme Court in *Trump v. US*, for instance, noted "'the President's 'need for complete candor and objectivity from advisers.'" *Trump v. United States,* 603 U.S. 593, 613 (2024) (quoting *United States v. Nixon,* 418 U. S. 683, 706 (1974)). Lawyers perform this function by complying with Model Rule of Professional Conduct 2.1, which says: "[i]n representing a client, a lawyer shall exercise independent professional judgment and render candid advice." Long-standing regulation by state judicial bodies that license lawyers, regulate their conduct, and impose discipline for violations ensures adherence to this professional obligation.

The case at hand is therefore easily distinguishable from the Tenth Circuit case Plaintiff cites for the position that "a state rule of ethics is invalid when it conflicts with Federal law." Compl. ¶ 52 (citing to *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 923 (10th Cir. 2016)). Even assuming, *arguendo*, that this case was correctly decided, the case at hand poses none of the putative conflicts addressed in that one. In *United States v. Supreme Court of New Mexico*, the Tenth Circuit considered New Mexico's Rule of Professional Conduct 3.8, which imposed special obligations on prosecutors. The Tenth Circuit held that the rule did not apply specifically to federal prosecutors' issuance of subpoenas in the grand jury context, given the unique nature of grand juries in the federal constitutional framework. 839 F.3d at 922-923.[4]

[4] Judge Tymkovich in his partial concurrence would have found that the McDade Amendment applied even in the grand jury context, stating that "this Supremacy Clause challenge must fail if Congress has authorized the application of this rule—and it has" and that "without some indication that [the Rule] stands as an obstacle to the accomplishment and execution of *Congress's* purposes and objectives, I respectfully dissent from the majority's determination that

The Tenth Circuit explicitly upheld, however, this State ethics rule outside the grand jury context. *Id.* at 922 ("[W]e conclude that the district court appropriately determined that the challenged provisions of [the Rule] are not preempted relative to federal prosecutors' issuance of attorney subpoenas in criminal proceedings outside of the grand-jury context").

In addition, none of the considerations that drove the majority's restriction of the State rule in that case are applicable here. Unlike the application of the New Mexico rule in that case, this case does not involve a special ethical obligation imposed on DOJ attorneys. Rather, Mr. Clark is charged with violating a basic obligation of all attorneys regarding false statements in the conduct of their duties as lawyers. This requirement of truthfulness does not implicate any conflicting federal legal obligations.

Finally, separation of powers principles strongly support the D.C. Court of Appeals's authority here because of Congress's constitutional authority over the District of Columbia and that body's clear requirement that D.C. attorneys employed by the DOJ adhere to the D.C. Rules of Professional Conduct. Put simply, Plaintiff's approach would invade an area reserved exclusively for Congress and the States. At its core, Plaintiff's complaint is simply an attempt to evade ethics regulation that Congress intended to apply to all DOJ attorneys admitted to practice in the District of Columbia.

## III. Legislative History Shows that Congress Passed the McDade Amendment to Avoid the Exact Result Urged by DOJ

It is important to appreciate that Congress passed the McDade Amendment directly to respond to, and explicitly to reject, the DOJ's previous attempts to exempt its attorneys from State and D.C. Rules of Professional Conduct and discipline. The McDade Amendment resolved

---

the rule conflicts with federal interests and is thus preempted." *Supreme Court of New Mexico*, 839 F.3d at 930, 938.

more than a decade of dispute between the Department of Justice and State bar authorities about ethics regulation of DOJ lawyers.

As noted above, in 1979, Congress issued a licensing mandate for all DOJ attorneys that is now codified at 28 U.S.C. § 530C(c). The DOJ nevertheless attempted to carve out exemptions to certain State ethics rules, most notably Rule 4.2, which forbids lawyer contact with represented parties. In 1989, Attorney General Richard Thornburgh issued an opinion declaring that State ethics rules were not binding on DOJ attorneys. Memorandum from Attorney General Thornburgh, *Re: Communication with Persons Represented by Counsel* (June 8, 1989), *set forth in Matter of Doe*, 801 F. Supp. 478, 490 (D.N.M. 1992) ("Thornburgh Memorandum").

Courts confronted with the Thornburgh Memorandum's attempt to exempt DOJ attorneys from the application of States' versions of Rule 4.2 (including State ethics rules adopted by federal courts as local rules) rejected the DOJ's efforts. For example, in *United States v. Lopez,* the district court held that the Thornburgh Memorandum could not excuse a DOJ prosecutor's unethical contact with represented parties from the application of California's professional conduct rule prohibiting contact with represented persons, which had been adopted in the federal district court's local rules. 765 F. Supp. 1433 (N.D. Cal. 1991), *vacated on other grounds,* 989 F.2d 1032 (9th Cir. 1993)*, opinion amended and superseded,* 4 F.3d 1455 (9th Cir. 1993). The district court held that the Attorney General lacked the statutory authority to exclude DOJ attorneys from the application of the applicable ethics rules, and further that the imposition of such rules did not implicate separation-of-powers concerns. *Id.* at 1446-1450, 1453-1455. As the court stated, "[t]here are profound flaws in the Attorney General's policy and they are demonstrated within the four corners of the Thornburgh Memorandum." *Id.* at 1446. On appeal, DOJ dropped its reliance on the Thornburgh Memorandum to excuse the DOJ prosecutor's

conduct. The Ninth Circuit remarked that in doing so, DOJ "spared us the need of reiterating the district court's trenchant analysis of the inefficacy of the Attorney General's policy statement." *United States v. Lopez*, 989 F.2d at 1035.

A similar result occurred in *United States v. Ferrara*, in which the DOJ sued to prevent enforcement of New Mexico's version of Rule 4.2. 847 F. Supp. 964 (D.D.C. 1993), *aff'd*, 54 F.3d 825 (D.C. Cir. 1995). Although the Court of Appeals did not reach the merits, the district court held that the Thornburgh Memorandum could not supplant State law and that "Congress intended federal lawyers to be subject to regulation by the state bars of which they are members" through the licensure requirements found in yearly Congressional appropriations. *Id.* at 969. As a result, the district court held that "[b]ecause state regulation of the federal function is here authorized by Congress, this Court will not interfere with that regulation." *Id.* at 970.

In 1994 the Department attempted to formalize the Thornburgh Memorandum through the "Reno Rule," a regulation that would have exempted DOJ lawyers from State no-contact rules and instead would have subjected those attorneys to the DOJ's own rule about contacts with represented parties and enforcement by the DOJ—not the States. 28 C.F.R. § 77 (1994); *Communications with Represented Persons*, 59 Fed. Reg. 39910 (Aug. 4, 1994). The Eighth Circuit struck down the "Reno Rule" four years later, finding that the DOJ had no "authority to exempt lawyers representing the United States from the local rules of ethics which bind all other lawyers appearing in [a] court of the United States." *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1256-1257 (8th Cir. 1998).

In 1996 – after the DOJ had promulgated the Reno Rule but before the Eighth Circuit's rejection of it – Representative Joseph McDade introduced the Ethical Standards for Federal

Prosecutors Act of 1997, H.R. 3386, 104th Cong. (1997). The bill was intended to ensure that Federal prosecutors were required to comply with the same ethical obligations as other attorneys.

The House Judiciary Subcommittee on Courts and Intellectual Property subsequently held a hearing on the bill. *Ethical Standards for Federal Prosecutors Act of 1996: Hearing on H.R. 3386 Before the Subcomm. On Cts. & Intell. Prop. Of the Comm. Of the Judiciary*, 104th Cong. 109 (1996). In his opening statement, Chairman Moorhead explained that "[h]istorically, States have had the *exclusive authority* to determine the membership of [their] bars and to regulate the conduct of [their] members." *Id.* at 1 (emphasis added). Noting that every State and the District of Columbia had promulgated rules of ethics, and that the "highest court of each jurisdiction has the authority to investigate and discipline the members of its bar," *id*., he asked: "Does the Department believe that is has the authority to preempt and supersede any State ethical rule or State law that it deems to conflict with its goals?" *Id*. (cleaned up). He argued that DOJ should not have such authority:

> If you hold one Group of attorneys that happen to be defense attorneys or non-Federal attorneys to one standard of judicial ethics and you hold the other group of attorneys, who happen to represent the Federal Government, to another standard of judicial ethics, you do not have an even playing field in the courtroom.

*Id*. at 2.

Chairman Moorhead explained that to avoid that kind of injustice, Congress had affirmed that it was the responsibility of the States to determine the qualifications of DOJ lawyers when it had passed appropriations riders (later codified at 28 U.S.C. § 530C(c)) that required every DOJ attorney to be "duly licensed and authorized to practice as an attorney under the laws of a State, territory, or the District of Columbia." *Hearing on H.R. 3386, the Prosecutors Act of 1997, Before the Subcomm. On Courts & Intell. Prop. Of the Comm. Of the Judiciary*, 104th Cong.

(1997). When a DOJ witness argued that the DOJ sought the "role of principal ethics arbiter and decisionmaker" only with respect to a single rule, Rule 4.2, *id*. at 53, Chairman Moorhead replied that Congress's concern was the idea that DOJ was claiming the authority to "disregard State ethics rules where they think it's necessary." *Id.* at 56.

The sponsor, Representative McDade, testified during the hearing that his amendment was intended to hold federal prosecutors "accountable, as all other lawyers in this country are, to charges of misconduct and to ethical standards. . . . That is the way it ought to be, and we would be unwise to abandon this longstanding arrangement in favor of some kind of self-regulation internally by DOJ." *Id*. at 8. Representative McDade's prepared statement built on that sentiment, explaining that:

> U.S. prosecutors, like all other lawyers, have historically been subject to *investigation and discipline* by the ethics authorities of the state in which they are licensed to practice. We have to ask ourselves whether we want to permit the Attorney General to create ethics rules for prosecutors which demand less of prosecutors than of all other lawyers? The answer, of course, is no.

*Id*. at 10 (emphasis added). During the hearing, Representative McDade also criticized previous attempts by the DOJ to control the applicability of ethics rules to its lawyers, including the 1989 Thornburgh Memorandum and 1994 Reno regulation, stating:

> This Justice Department effort to exempt its prosecutors from this one rule is the foot in the door, the precedent which would pave the way for a blanket exemption for all rules. Federal prosecutors would answer to nobody but themselves, as I believe they do today, unrestrained by the ethical rules which govern all other lawyers. This one regulation would be a foot in the door to a wholesale exemption.... Department of Justice prosecutors, as you have pointed out, Mr. Chairman, have always been monitored for ethics compliance by independent outside observers: the State or the Federal court.

*Id*. at 8.

Although H.R. 3386 was not passed in the 104th Congress, Representative McDade reintroduced the bill in the 105th Congress as the Citizens Protection Act of 1998, H.R. 3396,

105th Cong. (1998), and it was then incorporated into Title VIII of the Omnibus Consolidation and Emergency Supplemental Appropriations Act. During debate on the bill, many Representatives remarked on the goal of establishing parity between DOJ attorneys and all other attorneys. For example, Representative Tillie Fowler stated that DOJ attorneys should "be required to abide by the same ethics rules as all other attorneys." 144 Cong. Rec. H7181, H7234 (1998). She went on to quote approvingly a U.S. district court judge who had said, "Congress intended Federal lawyers to be subject to regulation by the State boards of which they are members and to comply with the appropriate ethical standards." *Id*. at H7235.

Representative Sheila Jackson Lee stated that prosecutors should be subject to the "same State laws and rules and local court rules and State Bar rules of ethics" as all other lawyers. *Id*. at H7237. Representative Dana Rohrabacher stated, "In essence, [the McDade Amendment] codifies the long-recognized but recently-ignored principles that U.S. Attorneys must abide by the same rules of ethics as all other practicing lawyers." *Id*. at H7239. Representative John Murtha characterized the DOJ's attempts to self-regulate and apply exemptions to State ethics rules as, "a ploy by the prosecutors to continue their unethical conduct without any kind of regard to the ordinary citizen." *Id*. at H7229.

The Committee on Appropriations also submitted a report discussing the McDade Amendment, explaining that the provision included "language to make government attorneys subject to laws and rules of the State and the rules of the local Federal court in which they are practicing." H.R. Rep. No. 105-636, at 154 (1998). The Committee explained that the McDade Amendment "makes it clear that employees of the Department of Justice must abide by the law." *Id*. On October 21, 1998, the McDade Amendment was passed and it was later signed into law by President Bill Clinton.

Not only are the language and intent of the law clear that Plaintiff's arguments are unconvincing, but Congress specifically rejected efforts to water down the McDade Amendment pre- and post-enactment. Before enactment, Congress rejected provisions that would have required complaints against DOJ lawyers to first be sent to the Attorney General for preliminary investigation, and to establish a federal "Misconduct Review Board" for complaints "that the Attorney General had not imposed satisfactory discipline on a DOJ attorney." 144 Cong. Rec. H7181, H7227 (1998) (Section 823 of the Amendment title VIII by Senator Hutchinson). Congress's rejection of such provisions reflected its refusal to deviate from the long-standing status quo of reliance on State disciplinary procedures. For example, Representative Bill Delahunt found the Misconduct Review Board problematic and insisted on the primacy of State ethics rules and procedures, because the DOJ should not be "immune from these ethical rules whenever they find them unduly confining." *Id.* at H7245-46.

Post-enactment, Senator Orrin Hatch introduced a bill that would have provided an exception to the McDade Amendment for any State law or rule that was inconsistent with or interfered with the effectuation of Federal law or policy. Federal Prosecutor Ethics Act, S. 250, 106th Cong. § 2 (1999). In March 1999, the Senate Subcommittee on Criminal Justice Oversight held hearings on the bill. *The Effect of State Ethics Rules on Federal Law Enforcement: Hearing Before the Subcomm. On Criminal Justice Oversight*, 106th Cong. 4 (1999). One supporter of Senator Hatch's bill, Senator Strom Thurmond, raised concerns that the McDade Amendment would make certain prosecution practices and investigative techniques unethical. *Id*. at 1. Deputy Attorney General Eric Holder, however, said "the Department has no desire to oust states of *disciplinary authority* or to exempt Department attorneys from the reach of states ethics rules." *Id*. at 39 (emphasis added). Speaking on behalf of the DOJ, he recognized that the

McDade Amendment subjected federal prosecutors to "all rules in all jurisdictions." *Id*. The bill did not advance out of committee, and the McDade Amendment has been the law of the land for more than 25 years.

The legislative history of the McDade Amendment and the relevant post-enactment history show that it was Congress's intent to subject DOJ attorneys fully and completely to the professional conduct rules and procedures, including disciplinary procedures, that apply to all attorneys. Members of Congress were emphatic that State rules and processes should apply to all lawyers and rejected all efforts to carve DOJ attorneys out of the coverage of applicable State rules and disciplinary processes. Moreover, members of Congress were aware of the breadth of that obligation, as is reflected in their choice to use the expansive requirement that DOJ attorneys adhere to State ethics rules "to the same extent and in the same manner" as all other attorneys. Congress made no exception for ethics rules that would require the DOJ to abandon certain investigative tactics: in fact, preventing the DOJ from taking actions considered unethical if engaged in by other attorneys was the very point of the McDade Amendment.

In this light, Plaintiff's claim that D.C. is engaged in "weaponization" of the disciplinary process, a process that involves multiple levels of review and opportunities for briefing by a respondent lawyer, reflects a fundamental misunderstanding of Defendants' role in carrying out their duties under the Court Reform Act and DOJ attorneys' responsibility to adhere to those rules under the McDade Amendment. Enforcing rules requiring that attorneys not make or attempt to make false statements in the course of their duties as attorneys is not weaponization; it is the system of ethics regulation operating as Congress requires. Disciplinary proceedings brought against DOJ attorneys who do not comport their actions to the relevant D.C. Rules of Professional Conduct is not a bug of the system, but a deliberate feature of its design. DOJ

attorneys are not allowed to engage in unethical conduct any more than are other licensed lawyers.

## IV. Judicial Regulation of the Legal Profession Provides Substantial Procedural Guarantees

Notwithstanding Plaintiff's complaints about the States' and D.C.'s lawyer disciplinary process, that process affords lawyers substantial procedural protections. These proceedings typically incorporate recommendations in the ABA's Model Rules for Lawyer Disciplinary Enforcement described above.

The State courts and the D.C. Court of Appeals have established disciplinary agencies that are arms of the courts to process disciplinary complaints, investigate those complaints, and hold hearings. As the MRLDE explains:

> The agency assists the court in the exercise of its inherent power to supervise the bar, inquiring into all matters assigned to its jurisdiction by the court's rules of disciplinary enforcement. The agency performs prosecutorial and adjudicative functions, and reports its findings and recommendations to the court.

Model Rules for Law. Disciplinary Enf't R. 2 cmt. The court authorizes the procedures used by disciplinary agencies. *See, e.g.*, *In re Order*, No. M-245-14 , 2015 D.C. App. LEXIS 519 , at *1-27 (D.C. Ct. App. Oct. 16, 2015) (describing court-approved changes in several rules governing discipline). It also appoints the Board on Professional Responsibility that oversees the disciplinary agency. *See, e.g.*, D.C. Bar R. XI, § 4.

Furthermore, lawyers are afforded substantial procedural protections. DC Bar Rule XI is an example. It requires that in order to initiate disciplinary proceedings, Disciplinary Counsel must file a petition under oath and provide a copy to the attorney who is the subject of the proceedings. The petition must be "sufficiently clear and specific to inform the attorney of the alleged misconduct." D.C. Bar Rule XI, § 8(c).

The attorney has 20 days to file a reply to the petition. *Id.* § 8(e). After a hearing is scheduled, the attorney must be given notice of the date and place of the hearing, which must be at least 15 days after the service of the notice. *Id.* § 8(d). The notice "shall also advise the attorney that, at the hearing, the attorney shall have the right to be represented by counsel, to cross-examine witnesses, and to present evidence in defense or mitigation of the charges." *Id.*

The Hearing Committee must submit a report to the Board on Professional Responsibility within 120 days with its findings and recommendations. *Id.* § 9(a). If the attorney files an exception to the report, the matter is scheduled for submission of briefs and oral argument before the Board. *Id.* § 9(b). If the Board recommends disbarment or suspension, the attorney has 30 days to show cause why the Court should not enter an order of suspension pending final action on the Board's recommendation. *Id.*§ 9(g)(1). In cases in which exceptions have been filed, the D.C. Court of Appeals schedules the matter for consideration. *Id.* § 9(h)(1).[5]

These procedural protections are available to every lawyer who is subject to disciplinary proceedings in the District of Columbia. Mr. Clark has availed himself of all these procedural rights in his disciplinary case, including his right to challenge the Board's recommendation that he be disbarred.

## V. Courts Must Maintain their Authority to Regulate the Legal Profession to Avoid Creating a Class of Attorneys Immune from Ethical Obligations

Admission to practice in a State or D.C. requires that a lawyer commit to abiding by the ethical obligations established by that jurisdiction, which are broadly the same across

[5] In addition, "In any disciplinary proceeding in which a dismissal, an informal admonition, or a reprimand is contemplated or effected, the Court shall have the right to review the matter on its own motion and to enter an appropriate order, including an order directing further proceedings." D.C. Bar Rule XI, § 9(j).

jurisdictions. Exempting DOJ lawyers from those obligations effectively would risk creating a class of lawyers who are above the law.

This prospect is deeply troubling in light of the "singular powers" that a State law license confers on a lawyer. *See In re Snyder*, 472 U.S. at 644-45. Lawyers play a critical role in protecting the rule of law in our constitutional democracy. Ensuring ethical conduct through State court regulation of lawyers is especially important where Federal executive branch lawyers – particularly those at DOJ – are concerned. These lawyers advise the most powerful governmental officials in the United States, and their decisions on matters such as criminal prosecution can directly affect life and liberty. Basic principles of separation of powers require that an independent judiciary must be able to regulate the right to practice and the disciplinary process for government attorneys just as they do for any other lawyer.

In a broader context, it is important to appreciate that the Complaint in this case is but one element of DOJ's larger effort to claim expansive regulatory authority over the conduct of their lawyers and thereby concentrate power in the executive branch. The amicus brief DOJ filed in Clark's disciplinary case makes clear that it is attempting to immunize its lawyers from regulation by State courts. *Brief for the United States of America as Amicus Curiae in Support of Respondent*, *In the Matter of Jeffrey B. Clark* 13, DCCA No. 25-BG-0731, at 13 (October 6, 2025) (arguing that State bars do not "enjoy a roving commission to police the conduct of the Department attorneys").

In addition, the Department has recently proposed a rule that would prevent states from investigating or disciplining a DOJ lawyer until the Department first evaluates an allegation of ethical misconduct, with no period during which such a review must be completed. *Review of State Bar Complaints and Allegations Against Department of Justice Attorneys*, 91 Fed. Reg.

10780 (Mar. 5, 2026). The proposed rule also announces the Department's intention to prohibit DOJ lawyers from cooperating with state disciplinary proceeding during such review. Expressing concern that State bar disciplinary proceedings may "interfere with the broad statutory authority of the Attorney General to manage and supervise Department attorneys," *id*. at 10782, the Proposed Rule's Preamble also asserts that "the Attorney General retains the discretion to displace state bar enforcement and to create an entirely Federal enforcement mechanism, or to displace state bar enforcement in part when it is inconsistent with the Federal Government's determinations regarding the regulation of Federal attorneys." *Id.* at 10784. Whatever the proper scope of the executive's authority over DOJ, it does not extend to the exemption of government attorneys from complying with the ethical obligations or from being subject to oversight by state disciplinary bodies as Congress clearly intended. Doing so would mean that DOJ attorneys would not be held to the same ethical standards "to the same extent and in the same manner" as other lawyers similarly licensed.

## VI. The Proper Forum for the Department of Justice's Objections to the Board's Recommendations is in Clark Disciplinary Appeal

This collateral attack on the D.C. Court of Appeals's authority is altogether improper. Pursuant to Rule 29(a)(2) of the of the Rules of the D.C. Court of Appeals, "[t]he United States . . . may file an amicus brief without the consent of the parties or leave of court." This is the appropriate mechanism for the DOJ to object to the Board's disbarment recommendation. That is exactly what the DOJ did when it filed an amicus brief in October 2025 objecting to Mr. Clark's interim suspension pending the Court's decision on the merits. In that amicus brief, the Department made similar arguments to its arguments in the Complaint in this case. The government should not be able to file a collateral challenge in another court when it has already had its chance to present its views in the D.C. Court of Appeals proceeding.

Moreover, the DOJ and other executive branch federal government agencies and departments can only sanction the lawyers they currently employ with respect to their employment. They have no authority to sanction current or former DOJ employees with respect to their license to practice law. Since the DOJ does not license the lawyers it employs, it cannot be the final arbiter as to whether a lawyer has complied with the terms of their licensure. Only the D.C. Court of Appeals has subject matter jurisdiction over the professional discipline of lawyers it has licensed who are employed by the federal government.

## CONCLUSION

Congress has exercised its constitutional authority over the District of Columbia by granting the D.C. Court of Appeals regulatory authority over the professional conduct of lawyers that it licenses and explicitly providing in the McDade Amendment that lawyers at the DOJ are subject to regulation by jurisdictions in which they are licensed to practice. This reflects the long-standing historical authority of the State judiciaries that has been repeatedly recognized by the Supreme Court.

This federal legislation does not intrude on any authority of the executive branch, because the Attorney General has no authority to exempt lawyers in the DOJ from ethical obligations applicable to all other lawyers. Indeed, the constitutional obligation of the executive branch to faithfully execute the laws requires that lawyers in that branch comply with ethical rules that govern their conduct. The Plaintiff's position would disrupt this deliberate arrangement. For the reasons set forth in this amicus brief, the amici curiae respectfully request that this Court grant Defendants' Motion to Dismiss the Complaint.

Dated: July 17, 2026

*(Signature page to follow)*

Respectfully submitted,

*/s/ David W. Ogden*
David W. Ogden DDC Bar #375951
Norman L. Eisen DDC Bar #435051
Christopher J. Swartz*
Democracy Defenders Fund
600 Pennsylvania Ave., S.E., No. 15180
Washington, D.C. 20003
(202) 594-9958
david@democracydefenders.org

*/s/ Mitt Regan*
Mitt Regan* DC Bar #410985
McDevitt Professor of Jurisprudence
Georgetown University Law Center
600 New Jersey Avenue, NW
Washington, D.C. 20001
regan@georgetown.edu

Counsel for *Amici Curiae*

## APPENDIX A

### Amici Curiae*

Richard L. Abel
*Michael J. Connell Distinguished Professor of Law Emeritus*
*UCLA School of Law*

David P. Atkins
*Visiting Lecturer in Law*
*Yale Law School*

Dr. Gilat J. Bachar
*Associate Professor of Law*
*Temple University Beasley School of Law*

Anita Bernstein
*Anita and Stuart Subotnick Professor of Law*
*Brooklyn Law School*

James S. Bolan
*Past President, Association of Professional Responsibility Lawyers*

Jennifer G. Brown
*Professor of Law and Dean Emerita*
*Quinnipiac University School of Law*

Ethan S. Burger
*President, Law Firm Client Integrity Initiative*
*Georgetown University Law Center*

Susan D. Carle
*Distinguished Professor of Law*
*American University Washington College of Law*

Elizabeth Chambliss
*Henry Harman Edens Professor of Law*
*Director, NMRS Center on Professionalism*
*Joseph F. Rice School of Law*
*University of South Carolina*

George R. Clark
*George R. Clark, Attorney at Law*
*Past President, Association of Professional Responsibility Lawyers*

George M. Cohen
*Brokaw Professor of Corporate Law*
*University of Virginia School of Law*

James W. Conrad
*Conrad Law & Policy Counsel*
*Volunteer, Lawyers Defending American Democracy*

Benjamin P. Cooper
*Frank Montague, Jr. Professor of Legal Studies and Professionalism*
*University of Mississippi School of Law*

Scott L. Cummings
*Robert Henigson Professor of Legal Ethics*
*UCLA School of Law*

Evan A. Davis
*Co-Editor, Ethical Standards in the Public Sector: A Guide for Lawyers, Clients and Public Officials*
*Past President, New York City Bar Association*

* All Amici join solely in their individual capacities and not as representatives of their affiliated institutions. The views and opinions expressed in this brief are those of the individual Amici and do not necessarily reflect the position of the institutions with which they are affiliated.

Fabio de Sa e Silva
*Associate Professor*
*University of Oklahoma, David L. Boren School of International Studies*

Mary B. DeRosa
*Professor from Practice*
*Georgetown University Law Center*

Matthew Diller
*Dean Emeritus and Professor of Law*
*Fordham University School of Law*

Mark Dubois
*Former Chief Disciplinary Counsel, Connecticut Judicial Branch*
*Past President, Connecticut Bar Association.*

Timothy S. Fisher
*Dean and Professor of Law Emeritus*
*University of Connecticut School of Law*

Catherine L. Fisk
*Barbara Nachtrieb Armstrong Distinguished Professor*
*University of California, Berkeley Law*

Brenner M. Fissell
*Professor of Law*
*Villanova University Charles Widger School of Law*

Mark F. Friedman
*Volunteer, Lawyers Defending American Democracy*

Michael Frisch
*Ethics Counsel*
*Georgetown University Law Center*

Charles G. Geyh
*John F. Kimberling Chair in Law*
*Indiana University Maurer School of Law*

Cynthia M. Godsoe
*Professor of Law*
*Brooklyn Law School*

Richard E. Grayson
*The Law Offices of Richard E. Grayson*
*Member, Association of Professional Responsibility Lawyers*

Bruce A. Green
*Louis Stein Chair of Law*
*Fordham University School of Law*

Lawrence K. Hellman
*Professor Emeritus and Dean Emeritus*
*Oklahoma City University School of Law*

Peter A. Joy
*Henry Hitchcock Professor of Law*
*Washington University in St. Louis*

Pamela S. Karlan
*Kenneth & Harle Montgomery Professor of Public Interest Law*
*Stanford Law School*

Renee Knake Jefferson
*Doherty Endowed Chair in Legal Ethics & Professor of Law*
*University of Houston Law Center*

Susan P. Koniak
*Professor of Law Emerita*
*Boston University School of Law*

James B. Kobak, Jr.
*Former Law Firm General Counsel*
*Past President, New York County Lawyers Association*

Katherine R. Kruse
*Professor*
*Mitchell Hamline School of Law*

Lisa Lerman
*Professor of Law Emerita*
*Columbus School of Law, The Catholic University of America*

Leslie C. Levin
*Hugh Macgill Professor of Law Emerita*
*University of Connecticut School of Law*

Sanford V. Levinson
*W. St. John Garwood and W. St. John Garwood Junior Centennial Chair in Law*
*University of Texas Law School*

Theo Liebmann
*Clinical Professor of Law*
*Maurice A. Deane School of Law at Hofstra University*

David Luban
*Distinguished University Professor*
*Georgetown University Law Center*

Steven Lubet
*Williams Memorial Professor Emeritus*
*Northwestern University Pritzker School of Law*

Myles V. Lynk
*Peter Kiewit Foundation Professor Emeritus of Law and the Legal Profession*
*Sandra Day O'Connor College of Law*
*Arizona State University*

Stephen H. Marcus
*Adjunct Professor*
*Georgetown University Law Center*
*Volunteer, Lawyers Defending American Democracy*

Milan Markovic
*Professor of Law & Presidential Impact Fellow*
*Texas A&M University School of Law*

Sonia Mittal
*Clinical Lecturer in Law and Associate Research Scholar*
*Yale Law School*

Jim Moliterno
*Vincent Bradford Professor of Law, Emeritus*
*Washington and Lee University*

John T. Montgomery
*Board Member, Lawyers Defending American Democracy*

Melissa D. Mortazavi
*Professor of Law*
*University of Oklahoma College of Law*

Wendy J. Muchman
*Professor of Practice*
*Northwestern University Pritzker School of Law*
*Past President, National Organization of Bar Counsel*

M. Ellen Murphy
*Professor of Practice*
*Wake Forest University School of Law*

Douglas NeJaime
*Anne Uroswky Professor of Law*
*Yale Law School*

Carol A. Needham
*Emanuel Myers Professor of Law*
*Saint Louis University School of Law*

Marisol Orihuela
*Clinical Professor of Law*
*Yale Law School*

Jonah E. Perlin
*Professor of Law, Legal Practice*
*Georgetown University Law Center*

Ellen S. Podgor
*Professor of Law*
*Stetson University College of Law*

Nancy B. Rapoport
*UNLV Distinguished Professor & Garman Turner Gordon Professor of Law*
*William S. Boyd School of Law, University of Nevada, Las Vegas*

Margaret Raymond
*Warren P. Knowles Chair*
*University of Wisconsin Law School*

Dennis A. Rendleman
*Member, Illinois State Bar Association Committee on Professional Conduct*
*Former Ethics Counsel, American Bar Association*

Cassandra Burke Robertson
*Professor of Law*
*Case Western Reserve University School of Law*

Tanina Rostain
*Agnes Williams Sesquicentennial Professor of Justice Innovation*
*Georgetown University Law Center*

Toby Rothschild
*Of Counsel*
*OneJustice*

Philip G. Schrag
*Delaney Family Professor of Public Interest Law Emeritus*
*Georgetown University Law Center*

Anthony Sebok
*Joseph and Sadie Danciger Chair in Law*
*Benjamin N. Cardozo School of Law*

Rima Sirota
*Professor of Law, Legal Practice*
*Georgetown University Law Center*

Deborah R. Slater
*Assistant United States Attorney (retired), District of Connecticut*
*Member, Federal Grievance Committee for the District of Connecticut*

Abbe Smith
*Scott K. Ginsburg Professor of Law*
*Georgetown University Law Center*

Kevin M. Smith
*Wiggin and Dana, LLP*
*Member, Federal Grievance Committee for the District of Connecticut*

Linda F. Smith
*Professor Emerita*
*University of Utah S. J. Quinney College of Law*

Ann Southworth
*Professor of Law and Raymond Pryke Chair*
*University of California, Irvine, School of Law*

Norman W. Spaulding
*Professor of Law*
*Stanford Law School*

Drury D. Stevenson
*Vinson & Elkins Research Professor*
*South Texas College of Law Houston*

Margaret C. Tarkington
*Samuel R. Rosen Professor of Law*
*Indiana University Robert H. McKinney School of Law*

Eli Wald
*Charles W. Delaney Jr. Professor of Law*
*University of Denver Sturm College of Law*

W. Bradley Wendel
*Edwin H. Woodruff Professor of Law*
*Cornell Law School*

Ellen Yaroshefsky
*Professor of Legal Ethics Emerita*
*Hofstra Law*

Benjamin C. Zipursky
*Professor & James H. Quinn '49 Chair in*
*Legal Ethics*
*Fordham University School of Law*