**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HAMILTON P. FOX III, *et al.*,**<br><br>**Defendants.** | **No. 1:26-cv-01658-RJL** |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' CONSOLIDATED MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**


INTRODUCTION ..... 1

ARGUMENT ..... 2

I. The United States' Claims Are Not Justiciable ..... 2

A. The United States Has Not Adequately Pleaded an Injury-in-Fact ..... 2

B. The United States' Claims Are Not Ripe ..... 4

C. The United States Has Failed to Establish an Article III Case or Controversy with Each Defendant for Additional Reasons ..... 6

1. The Complaint Fails to Plausibly Allege a Case or Controversy Between the United States and the ODC and Board Defendants ..... 6

2. The Complaint Fails to Plausibly Allege a Case or Controversy Between the United States and the Court Defendants ..... 9

3. The Complaint Fails to Plausibly Allege a Case or Controversy Between the United States and the District. ..... 10

II. Many Defendants Are Not Subject to Suit ..... 11

A. The D.C. Court of Appeals and Its Instrumentalities Cannot Be Sued ..... 11

B. The Official-Capacity Claims Should Be Dismissed ..... 12

1. The Claims Against the Individual Defendants are Duplicative ..... 12

2. Two of the Individual Defendants Are Immune from Suit. ..... 13

III. The Court Should Abstain Under *Younger v. Harris* ..... 14

A. *Younger* Abstention Applies in Suits by the United States ..... 15

B. *Younger*'s Narrow Bad Faith Exception Is Inapplicable ..... 17

IV. The United States' Claims Fail on the Merits ..... 19

A. Count I Fails to State a Claim ..... 19

1. The United States Has Not Adequately Alleged Any "Direct" Regulation of the Federal Government ..... 19

2. Congress Has Expressly Authorized the D.C. Disciplinary Proceedings the United States Seeks to Halt ..... 20

B. Count II Fails to State a Claim ..... 23

C. Count III Fails to State a Claim ..... 25

CONCLUSION ..... 25

**TABLE OF AUTHORITIES**

**Cases**

*Action All. of Senior Citizens v. Heckler*,
789 F.2d 931 (D.C. Cir. 1986) ........ 6

*In re Al-Nashiri*,
835 F.3d 110 (D.C. Cir. 2016) ........ 17

*Alaska Right to Life Pol. Action Comm. v. Feldman*,
504 F.3d 840 (9th Cir. 2007) ........ 6

*Am. Encore v. Fontes*,
152 F.4th 1097 (9th Cir. 2025) ........ 4

*Am. Libr. Ass'n v. Barr*,
956 F.2d 1178 (D.C. Cir. 1992) ........ 4

**Am. Petrol. Inst. v. EPA*,
683 F.3d 382 (D.C. Cir. 2012) ........ 5

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) ........ 10

*ASPCA v. Ringling Bros. & Barnum & Bailey Circus*,
317 F.3d 334 (D.C. Cir. 2003) ........ 9

*Bennett v. Spear*,
520 U.S. 154 (1997) ........ 7, 8

*Biden v. IRS*,
752 F. Supp. 3d 97 (D.D.C. 2024) ........ 12, 14

*Blackmar v. Guerre*,
342 U.S. 512 (1952) ........ 12

*In re Carter*,
333 A.3d 558 (D.C. 2025) ........ 5, 7

*Cato Inst. v. SEC*,
438 F. Supp. 3d 44 (D.D.C. 2020) ........ 4

*Chisholm v. Superior Ct. of D.C.*,
2007 WL 1601718 (D.D.C. June 4, 2007) ........ 11

*In re Clark*,
311 A.3d 882 (D.C. 2024) ........ 24

*Colvin v. Tunnage*,
2026 WL 1174105 (D.D.C. Mar. 9, 2026)....14

*Cullen v. Fliegner*,
18 F.3d 96 (2d Cir. 1994) ....18

*Diamond "D" Constr. Corp. v. McGowan*,
282 F.3d 191 (2d Cir. 2002)....18

*In re Dobbie*,
305 A.3d 780 (D.C. 2023) ....5, 7

*Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.*,
642 F.2d 527 (D.C. Cir. 1980) ....20

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)....8, 9

*Frederick Douglass Found., Inc. v. District of Columbia*,
82 F.4th 1122 (D.C. Cir. 2023)....24

*Giron v. Zeytuna, Inc.*,
597 F. Supp. 3d 29 (D.D.C. 2022) ....25

**Hoai v. Superior Ct. of D.C.*,
539 F. Supp. 2d 432 (D.D.C. 2008) ....11, 12

*In re Hopkins*,
677 A.2d 55 (D.C. 1996) ....7

*Huerta v. Ducote*,
792 F.3d 144 (D.C. Cir. 2015) ....22

*Jefferson Cnty. v. Acker*,
527 U.S. 423 (1999)....23, 24

*Jenkins v. Kerry*,
928 F. Supp. 2d 122 (D.D.C. 2013) ....14

*JMM Corp. v. District of Columbia*,
378 F.3d 1117 (D.C. Cir. 2004) ....13, 14, 15, 17, 18

*Johnson v. Fankell*,
520 U.S. 911 (1997)....25

**Johnson v. Maryland*,
254 U.S. 51 (1920)....19, 20

*In re Justs. of Supreme Ct. of P.R.*,
695 F.2d 17 (1st Cir. 1982)....10

*Kareem v. Haspel*,
986 F.3d 859 (D.C. Cir. 2021)....2

**Klayman v. Fox*,
2019 WL 2396538 (D.D.C. June 5, 2019)....12

**Klayman v. Lim*,
830 F. App'x 660 (D.C. Cir. 2020)....17

*Kundrat v. District of Columbia*,
106 F. Supp. 2d 1 (D.D.C. 2000)....11

*Leiter Minerals, Inc. v. United States*,
352 U.S. 220 (1957)....15, 16

*Lewellen v. Raff*,
843 F.2d 1103 (8th Cir. 1988)....18

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)....23

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....3, 11

*Martin v. United States*,
605 U.S. 395 (2025)....22

*McHenry Cnty. v. Raoul*,
44 F.4th 581 (7th Cir. 2022)....24

*Media Matters for Am. v. Paxton*,
138 F.4th 563 (D.C. Cir. 2025)....3, 4

*Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*,
828 F.2d 1385 (9th Cir. 1987)....13

*Murthy v. Missouri*,
603 U.S. 43 (2024)....11

*In re Neagle*,
135 U.S. 1 (1890)....22

*PACEM Sols. Int'l, LLC v. U.S. Small Bus. Admin.*,
148 F.4th 258 (4th Cir. 2025)....9

*Phelps v. Hamilton*,
59 F.3d 1058 (10th Cir. 1995) ....................18

*Pulliam v. Allen*,
466 U.S. 522 (1984)....................10, 11, 14

*Rhodes v. Superior Ct. of D.C.*,
2019 WL 6894045 (D.D.C. Dec. 18, 2019)....................11

*Saline Parents v. Garland*,
88 F.4th 298 (D.C. Cir. 2023)....................4, 6

*Seed v. EPA*,
100 F.4th 257 (D.C. Cir. 2024)....................8, 9

*Spargo v. N.Y. State Comm'n on Jud. Conduct*,
351 F.3d 65 (2d Cir. 2003)....................17

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................2, 3

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013)....................14

*Stern v. U.S. Dist. Ct.*,
214 F.3d 4 (1st Cir. 2000) ....................23

*Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*,
446 U.S. 719 (1980)....................10, 11

*Texas v. DHS*,
123 F.4th 186 (5th Cir. 2024) ....................20

*Texas v. United States*,
523 U.S. 296 (1998)....................5

*Trump v. Vance*,
941 F.3d 631 (2d Cir. 2019)....................16

*Twitter, Inc. v. Paxton*,
56 F.4th 1170 (9th Cir. 2022) ....................3

*United Presbyterian Church in the U.S.A. v. Reagan*,
738 F.2d 1375 (D.C. Cir. 1984)....................4

*United States v. Anderson Cnty.*,
705 F.2d 184 (6th Cir. 1983) ....................15

*United States v. Composite State Bd. of Med. Exam'rs*,
656 F.2d 131 (5th Cir. Unit B Sep. 1981)....15, 16, 17

*United States v. Lowery*,
166 F.3d 1119 (11th Cir. 1999) ....23

*United States v. Morros*,
268 F.3d 695 (9th Cir. 2001) ....16, 17

*United States v. Ohio*,
614 F.2d 101 (6th Cir. 1979) ....15, 16

*United States v. Supreme Ct. of N.M.*,
839 F.3d 888 (10th Cir. 2016) ....3, 23

**United States v. Washington*,
596 U.S. 832 (2022)....20

*Virginia v. Am. Booksellers Ass'n, Inc.*,
484 U.S. 383 (1988)....3

*Whole Woman's Health v. Jackson*,
595 U.S. 30 (2021)....9, 10, 13

*In re Wolff*,
490 A.2d 1118 (D.C. 1985) ....7

**Younger v. Harris*,
401 U.S. 37 (1971)....14, 18

**Statutes and Regulations**

28 U.S.C. § 530B ....20, 21

28 U.S.C. § 530C ....20

28 U.S.C. § 1346....22

28 U.S.C. § 2283....16

28 U.S.C. § 2674....22

Pub. L. No. 91-358, 84 Stat. 475 (1970)....12

Pub. L. No. 104-317, 110 Stat. 3847 (1996)....14

28 C.F.R. § 77.1(b) ....23

## INTRODUCTION

The United States rests its opposition on the contention that Defendants are "punishing" Jeffrey Clark for engaging in internal executive branch deliberations. Opp. 8. But Defendants have not punished Clark for anything. Instead, the Office of Disciplinary Counsel ("ODC") and the Board on Professional Responsibility ("Board") have taken actions that culminated in a non-binding recommendation to the D.C. Court of Appeals to sanction Clark for engaging in dishonesty. That court—the sole entity authorized to make findings of attorney misconduct or impose discipline—is considering that recommendation through an impartial judicial proceeding in which the United States and Clark have raised arguments much like the ones the United States presses here. The United States cannot explain why this Court should short-circuit that ongoing proceeding based on speculation about how the D.C. Court of Appeals might ultimately rule.

Instead, the United States' opposition confirms that this suit is improper several times over. The United States concedes that its case for standing rests on the conclusory and unsubstantiated allegation that the disciplinary proceeding against Clark is "chilling" current federal government attorneys from giving candid legal advice. Opp. 11. It does not dispute this case meets the ordinary criteria for *Younger* abstention, claiming instead that the case falls within a bespoke "exception[]" to that doctrine that the D.C. Circuit has never adopted. Opp. 28–29. And, on the merits, it repeats its untenable position that the application of attorney ethics rules to Clark unconstitutionally regulates and discriminates against the federal government, even though the McDade Amendment expressly subjects federal attorneys to those rules, and the United States cannot identify a single similarly situated non-federal attorney whom Defendants treated differently. Opp. 38.[1]

At bottom, this suit threatens a serious intrusion on the authority of states and the District

---

[1] As already explained, the Court Defendants do not express any views on the merits of this controversy. *See* Mot. 2 n.1.

of Columbia to regulate attorney misconduct. As numerous *amici* explain, allowing the United States to run to federal court to halt ongoing attorney-misconduct proceedings would "upend a centuries-old system of attorney discipline," Amicus Br. of Colorado et al. at 1, ECF No. 26, degrade the "effective ethical regulation of lawyers," Amicus Br. of Legal Ethics Scholars at 1, ECF No. 35, pose a "direct challenge to the rule of law as it applies to government lawyers," Amicus Br. of Former Presidents of the District of Columbia Bar et al. at 2, ECF No. 34, and undermine the credibility and effectiveness of Department of Justice attorneys themselves, Amicus Br. of More than 500 U.S. Department of Justice Attorneys at 6–8, ECF No. 36. The Court should reject the United States' invitation to provoke these consequences by disregarding basic rules of federal jurisdiction, comity, and prudence. Defendants' motion to dismiss should be granted.

## ARGUMENT

### I. <u>The United States' Claims Are Not Justiciable.</u>

#### A. <u>The United States Has Not Adequately Pleaded an Injury-in-Fact.</u>

The United States lacks Article III standing because its alleged injury-in-fact is vague, speculative, and implausible on its face. It is bedrock law that "[t]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice." *Kareem v. Haspel*, 986 F.3d 859, 865–66 (D.C. Cir. 2021) (citation modified). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim [of standing] that is plausible on its face." *Id.* (citation omitted). The Complaint here falls well short of that threshold, and the United States offers nothing to cure its fatal defects.

The United States' primary alleged injury is that the disciplinary proceeding is "chilling the internal deliberative process and candid legal advice of current government attorneys." Opp. 8, 10–11. Yet the Complaint offers no concrete, non-speculative allegation to support that claim, and it certainly does not establish an injury that is "real, and not abstract," *Spokeo, Inc. v. Robins*,

578 U.S. 330, 340 (2016) (citation modified), or "likely, as opposed to merely speculative," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation modified). The United States' "naked assertion that its [attorneys'] speech has been chilled is 'a bare legal conclusion' upon which it cannot rely to assert injury-in-fact." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1175 (9th Cir. 2022) (citation omitted); *see Media Matters for Am. v. Paxton*, 138 F.4th 563, 587 (D.C. Cir. 2025) (Henderson, J., concurring in the judgment) (discussing *Twitter*). That conclusion is especially warranted in this case, where the United States' claims of chill are so far-fetched, resting on the implausible theory that current Department attorneys are not providing candid legal advice due to the pendency of disciplinary proceedings applying a bedrock ethics rule barring dishonesty to a single former Department attorney in highly unusual factual circumstances.

The United States relies on two cases to support its threadbare allegations, Opp. 10, but both support Defendants. First, the complaint in *United States v. Supreme Court of New Mexico*, 839 F.3d 888 (10th Cir. 2016), included what the United States lacks here: concrete and plausible allegations about the effect of facially challenged state disciplinary rules on federal attorneys. *See* Mot. 14–15. The *New Mexico* complaint alleged that rules imposing "higher" subpoena standards than federal law "deterred" federal prosecutors "from issuing [those] subpoenas," thereby limiting "the information available to grand juries and courts." 839 F.3d at 899. The Complaint here offers no comparably plausible or specific allegations. And while the United States quibbles with the observation that the Complaint fails to allege the Clark proceeding has actually *had* a chilling effect, the issue is not the "grammatical tense of the allegations," Opp. 11; it is their vagueness and implausibility, which would remain no matter how they were phrased.

The United States also cites *Virginia v. American Booksellers Association, Inc.*, 484 U.S. 383 (1988), a First Amendment challenge to a state obscenity law, for the proposition that "self-

censorship in response to a 'well-founded fear that the law will be enforced against them' is an injury in fact." Opp. 10 (citation omitted). But the United States never explains why "First Amendment cases," which "raise unique standing considerations," are relevant here. *Am. Encore v. Fontes*, 152 F.4th 1097, 1113 (9th Cir. 2025) (citation modified). And even in the First Amendment context, "self-censorship" does not "count as an injury in fact" where—as here—a plaintiff's "claims of chilling effects [a]re too vague and conclusory" and are not "supported by sufficient evidence of chilled speech." *Media Matters for Am.*, 138 F.4th at 582. The United States' observation that attorney disciplinary sanctions seek to "'deter' 'other attorneys from engaging in similar misconduct'" adds nothing. Opp. 10 (citation omitted). The deterrent effect extends only to "similar misconduct," and many First Amendment cases challenge criminal prohibitions carrying an even stronger deterrent function. Yet even there, "subjective 'chill' alone will not suffice to confer standing." *Am. Libr. Ass'n v. Barr*, 956 F.2d 1178, 1194 (D.C. Cir. 1992).

**B. <u>The United States' Claims Are Not Ripe.</u>**

The United States similarly fails to demonstrate that its claims are ripe. The United States' claims of "chill" cannot satisfy the constitutional element of ripeness because they are conclusory and implausible, *see supra* pp. 2–3, and because an allegation of "chill" cannot establish ripeness unless the plaintiff suffers some "concrete harm (past or immediately threatened) apart from the 'chill' itself." *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984) (Scalia, J.); *see Cato Inst. v. SEC*, 438 F. Supp. 3d 44, 51 (D.D.C. 2020). Here, the United States has not alleged any concrete harm apart from the alleged chill; instead, it rests its "claim[s] . . . on hypotheticals" about how the D.C. Court of Appeals will ultimately rule. *Saline Parents v. Garland*, 88 F.4th 298, 308 (D.C. Cir. 2023). That claim is "too remote, speculative, and abstract" to establish ripeness. *Id.*

The United States also cannot satisfy the prudential ripeness requirements of fitness and

hardship to the parties. As to fitness, the United States argues that the case has "sufficiently 'crystallized'" because the D.C. Court of Appeals must "adopt[] the Board's 'recommended disposition' 'unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.'" Opp. 21 (citation omitted). But the United States neglects to acknowledge that the Board's legal conclusions are reviewed *de novo*, *In re Carter*, 333 A.3d 558, 563–64 (D.C. 2025), meaning that the Board will receive no deference on the constitutional arguments that Clark and the United States press. As the United States' own authority shows, the governing standard also affords the D.C. Court of Appeals wide latitude to depart from Board recommendations. *See In re Dobbie*, 305 A.3d 780, 810–11 (D.C. 2023) (rejecting Board recommendation and reaffirming that "responsibility of 'imposing sanctions rests with this court in the first instance'" (citation omitted)); *see infra* p. 7. The United States simply has "no idea whether . . . a sanction will be ordered" against Clark, so "the issue is not fit for adjudication." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation modified).

The United States contends that one "legal issue"—"whether the Constitution bars Defendants from regulating . . . internal, predecisional deliberative documents and discussions"—is "sufficiently concrete and fit for review." Opp. 21. That does not accurately describe the issue presented by the United States' first claim, which is addressed *infra* on page 19. In any event, the United States does not dispute that its action raises some issues that are not "purely legal," nor does it grapple with the point that the fitness requirement more broadly protects "the court's interest in avoiding unnecessary adjudication" and avoiding interference with ongoing decisionmaking. *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 386–87 (D.C. Cir. 2012) (citation modified). Although the United States claims that such concerns come from "non-controlling Administrative Procedure Act cases," Opp. 21, they apply just as well when plaintiffs ask federal

courts to interfere with state-court proceedings. *See, e.g.*, *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 850 (9th Cir. 2007).

The United States' efforts to manufacture hardship fare no better. The United States asserts that, as a result of the Clark proceeding, it suffers from "government attorneys' lack of zealous advocacy." Opp. 21. But a chilling effect is not "hardship" where, as here, "the Government has not in any way restricted or regulated [plaintiff's] activities." *Saline Parents*, 88 F.4th at 308. Moreover, any hardship must be "immediate and significant," *Action All. of Senior Citizens v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986), and the United States' conclusory and unsupported allegations cannot credibly make this showing.

The same goes for the United States' claim that awaiting resolution of the D.C. Court of Appeals proceedings would inflict hardship because the *Rooker-Feldman* doctrine "would potentially" bar the United States from bringing a subsequent suit. Opp. 22. It is doubtful that the United States' desire to evade an anticipated jurisdictional bar is a cognizable "hardship" for ripeness purposes. And, in any event, the fact that even the United States believes it would only "potentially" be subject to *Rooker-Feldman* precludes it from carrying its burden of showing that any hardship is both "immediate and significant." *Action All.*, 789 F.2d at 940.

### C. <u>The United States Has Failed to Establish an Article III Case or Controversy with Each Defendant for Additional Reasons.</u>

#### 1. The Complaint Fails to Plausibly Allege a Case or Controversy Between the United States and the ODC and Board Defendants.

The United States lacks standing against the ODC and Board Defendants for another reason: Even if this Court credits the United States' claimed injury, the relief the United States seeks against these Defendants would not redress it.

The parties agree that the D.C. Court of Appeals possesses ultimate authority to discipline Clark. As the United States does not dispute, that court could sanction Clark regardless of what

ODC and the Board do—or don't do—going forward and regardless of any order by this Court "voiding" their past actions. Indeed, the D.C. Court of Appeals grants *no* deference to the Board or ODC in determining whether an ethical violation occurred. *E.g.*, *Carter*, 333 A.3d at 563–64. The United States thus lacks support for its claim that without the Board's recommendation and ODC's advocacy, the D.C. Court of Appeals "likely would not sanction Clark." Opp. 15–16.

Resisting the conclusion that its claims lack redressability, the United States highlights that the D.C. Court of Appeals may give Board recommendations and ODC positions some weight in determining the *severity* of sanction to impose for misconduct. Opp. 15–16. But the gravamen of the United States' challenge is that *any* sanction is inappropriate—and the very cases the United States cites recognize that "the responsibility of imposing sanctions rests with th[e] court in the first instance." *Dobbie*, 305 A.3d at 810–11 (citation modified); *Carter*, 333 A.3d at 566; *see also supra*, p. 5 (discussing *Dobbie*). Indeed, there are prior examples—including *Dobbie* itself—in which the court departed from the Board's recommendation after giving it careful consideration. *See, e.g.*, *Dobbie*, 305 A.3d at 811 (departing from Board's recommendation and imposing a lesser sanction than suggested); *In re Wolff*, 490 A.2d 1118, 1119 (D.C. 1985) (ordering disbarment despite Board recommendation of dismissal), *vacated*, 494 A.2d 932 (D.C. 1985), *disbarment reimposed*, 511 A.2d 1047 (D.C. 1986); *In re Hopkins*, 677 A.2d 55, 57 (D.C. 1996).

The independent judgment that the D.C. Court of Appeals brings to bear makes this case unlike *Bennett v. Spear*, 520 U.S. 154 (1997), on which the United States relies. Opp. 13, 15. In *Bennett*, the Fish and Wildlife Service—the defendant—issued a biological opinion that the Bureau of Reclamation—a nonparty—adhered to, causing injury to the plaintiffs. 520 U.S. at 157–59. *Bennett* concluded that redressability was nonetheless satisfied because the Service's biological opinion had "virtually determinative effect," and a "powerful coercive effect" that

"alter[ed] the legal regime" applicable to the Bureau. *Id.* at 169–70. That is miles apart from these facts, where neither the Board nor ODC can coerce or pressure the D.C. Court of Appeals.

It makes no difference that the United States has also named the D.C. Court of Appeals as a defendant. *Contra* Opp. 13. As explained below, there are multiple problems with seeking relief against the court. *See* sections I.C.2, II.A, *infra*. Regardless, the court's presence as a party does not mean that an order against the ODC or Board Defendants redresses any injury.

The United States' standing theory is even further attenuated for the Board and its chair, who have fully discharged their duties in the disciplinary proceedings against Clark, leaving "no present harm [attributable to the Board Defendants] . . . left to enjoin." *Seed v. EPA*, 100 F.4th 257, 265 (D.C. Cir. 2024) (citation modified). The United States tries to manufacture an ongoing role for the Board out of the D.C. Court of Appeals' request in the Clark proceeding for the Board's and ODC's views on the proper interpretation of the court's rules of disciplinary procedure. Order, *In re Clark*, No. 25-BG-0731 (D.C. Oct. 30, 2025) (Ex. A). But the Board's response is an advisory position that makes no mention of Clark and could have been offered in any other proceeding, or outside of a proceeding. *See* Resp. of the Board, *In re Clark*, No. 25-BG-0731 (D.C. Nov. 25, 2025) (Ex. B). It has also been fully submitted, and the United States' alternative claim that the court's pending decision on Clark's preliminary suspension "could require further advocacy" by the Board is baseless speculation. Opp. 16.

The United States thus is left to argue that ODC's and the Board's "past actions" are causing current injury by chilling the candid advice of federal attorneys. Opp. 13, 16. As explained, the United States' allegations of chill are woefully insufficient. But even if the United States *had* plausibly alleged a chilling effect caused by ODC's or the Board's actions, it still must establish redressability, which "pose[s] an independent bar." *FDA v. All. for Hippocratic Med.*, 602 U.S.

367, 381 n.1 (2024). Arguments that rely on "harm in the past," *ASPCA v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 336 (D.C. Cir. 2003), and seek only "a retrospective opinion that [a plaintiff] was wrongly harmed by the defendant[s]," *PACEM Sols. Int'l, LLC v. U.S. Small Bus. Admin.*, 148 F.4th 258, 264 (4th Cir. 2025) (citation omitted), are nonjusticiable, *see Seed*, 100 F.4th at 265. That rule squarely applies here, where the relief sought is limited to declaring past actions "void" and enjoining future actions "against Mr. Clark." Opp. 14 (quoting Compl. ¶ 137). The United States does not explain how an order immunizing one former federal official from further scrutiny would dissipate the purported chill felt by others in the Department.

**2. The Complaint Fails to Plausibly Allege a Case or Controversy Between the United States and the Court Defendants.**

In addition, the United States cannot establish that Article III permits litigation against the D.C. Court of Appeals and its Chief Judge in their role as disinterested adjudicators. "Article III of the Constitution affords federal courts the power to resolve only 'actual controversies arising between adverse litigants.'" *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (quoting *Muskrat v. United States*, 219 U.S. 346, 361 (1911)). And the D.C. Court of Appeals and its Chief Judge, when acting as neutral arbitrators in an attorney's disciplinary proceeding, are "'in no sense adverse' to the parties whose cases they decide." *Id.* at 41.

The United States does not dispute these fundamental principles. Instead, the United States points to the D.C. Court of Appeals' role in issuing the D.C. Rules of Professional Conduct and its oversight of ODC and the Board. *See* Opp. 17. But the United States is not challenging a substantive rule that the D.C. Court of Appeals enacted. Nor is it challenging any managerial decision that the court made in overseeing ODC or the Board. Rather, the United States is mounting a prospective challenge to a decision that the D.C. Court of Appeals may or may not make in adjudicating Clark's disciplinary proceedings. That type of challenge squarely implicates

the Court defendants' role as adjudicators who "find[] facts and determin[e] law in a neutral and impartial judicial fashion." *In re Justs. of Supreme Ct. of P.R.*, 695 F.2d 17, 21 (1st Cir. 1982); *see* Mot. 24. The D.C. Court of Appeals cannot, "consistent with [its] ethical obligation of neutrality," defend against that challenge on the merits when doing so would require responding in an adversarial posture to the same arguments it must impartially consider in its adjudicative capacity. *Whole Woman's Health*, 595 U.S. at 41. The United States has no answer to this point.

The cases the United States relies on do not support a contrary conclusion. Those cases recognize that in addition to adjudicating disciplinary proceedings, state courts often play a legislative and enforcement role in attorney discipline by promulgating attorney bar rules or initiating enforcement proceedings. *See Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719 (1980); *Pulliam v. Allen*, 466 U.S. 522, 538 n.18 (1984) (challenge to a judge-made rule of imposing bail on persons arrested for nonjailable offenses and incarcerating them if they could not meet bail). But the mere existence of that legislative or enforcement "authority does not create a case or controversy with the . . . [court] official." *Consumers Union*, 446 U.S. at 736 n.15. Rather, to establish an Article III case or controversy, the plaintiff must make out a "concrete dispute" against the court in this legislative or enforcement capacity—as distinct from its adjudicative role. *Id.* And here, as explained, the United States' suit against the D.C. Court of Appeals and the Chief Judge implicates only their roles as adjudicators.[2]

### 3. The Complaint Fails to Plausibly Allege a Case or Controversy Between the United States and the District.

The United States also cannot establish standing against the District. The United States

[2] In any event, as the United States concedes, both *Consumers Union* and *Pulliam* addressed whether judges were immune from suit, not whether there was an Article III case or controversy. Opp. 18. And while Article III is a jurisdictional requirement, the Supreme Court has held that "drive-by jurisdictional rulings" where jurisdiction is not specifically addressed have "no precedential effect." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) (citation omitted).

does not dispute that the Complaint's one allegation about the District—that it authorized the D.C. Court of Appeals to issue ethics rules—is incorrect. Mot. 25–26 (citing Compl. ¶ 36). Instead, it asserts that if the Court dismisses the other Defendants as non-*sui juris* or immune, it should substitute the District. Opp. 19–20. That is a *non sequitur*: whether the other Defendants are suable has no bearing on whether the United States has met the "irreducible constitutional minimum of standing" against the District itself. *Lujan*, 504 U.S. at 560.

The United States is mistaken to suggest that the Court can disregard these standing defects because "[s]ome entity has to be legally responsible for the DCCA's actions." Opp. 19. "Plaintiffs must demonstrate standing for each claim that they press against each defendant." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation modified). The United States' cases are not to the contrary: in each instance it cites in which the District was substituted as a defendant, the plaintiffs sought monetary damages for which the District would ultimately have been responsible. *See Chisholm v. Superior Ct. of D.C.*, 2007 WL 1601718, at *1 n.1 (D.D.C. June 4, 2007); *Rhodes v. Superior Ct. of D.C.*, 2019 WL 6894045, at *1 n.1 (D.D.C. Dec. 18, 2019); *Kundrat v. District of Columbia*, 106 F. Supp. 2d 1, 8 & n.13 (D.D.C. 2000). Here, by contrast, the United States does not seek monetary damages, the District is not responsible for the D.C. Court of Appeals' adjudication of disciplinary proceedings, and any equitable relief against the District would not redress the United States' asserted injuries. Thus, the District cannot be substituted as a defendant consistent with the limits of Article III. *Cf. Hoai v. Superior Ct. of D.C.*, 539 F. Supp. 2d 432, 435 n.6 (D.D.C. 2008) (Leon, J.) (declining to substitute the District as defendant in suit against the Superior Court because substitution "would be futile"), *aff'd*, 344 F. App'x 620 (D.C. Cir. 2009).

## II. Many Defendants Are Not Subject to Suit.

### A. The D.C. Court of Appeals and Its Instrumentalities Cannot Be Sued.

The D.C. Court of Appeals cannot be sued because Congress did not authorize the Court

to be sued in the implementing legislation. *See* Pub. L. No. 91-358, § 111, 84 Stat. 475 (1970). Numerous courts within this District have found as much, and the United States fails to substantively counter that authority. *See* Mot. 26–27. Instead, the United States contends that these cases all rely on *Blackmar v. Guerre*, 342 U.S. 512 (1952), which it wrongly claims does not apply when the United States is bringing an action. Opp. 23–24. But *Blackmar* does not support that contention: The *Blackmar* Court stated that "[w]hen Congress authorizes one of its agencies to be sued eo nomine, it does so in explicit language, or impliedly because the agency is the offspring of such a suable entity." *Id.* at 515. It did not hold or even opine that a government entity can be sued by the United States regardless of that congressional intent, nor did the relevant discussion even mention "sovereign immunity," as the United States claims. Accordingly, consistent with *Blackmar* and the weight of authority in this District, the D.C. Court of Appeals is "not [a] proper defendant[] and therefore must be dismissed." *Hoai*¸ 539 F. Supp. 2d at 435.

As for the Board and ODC, the United States concedes through forfeiture that they are "instrumentalit[ies]" of the D.C. Court of Appeals that do not have separate legal existence and cannot be sued. *Klayman v. Fox*, 2019 WL 2396538, at *11 (D.D.C. June 5, 2019). The United States does not dispute that the Board and ODC are not distinct entities, and it offers no response to Defendants' arguments that "a plaintiff cannot sue an entity that lacks a separate legal existence." Mot. 27 (quoting *Hale v. Collis*, 2022 WL 3016747, at *10 (D.D.C. July 29, 2022)). "When a plaintiff fails to address arguments made in a motion to dismiss, the Court may treat those arguments as conceded." *Biden v. IRS*, 752 F. Supp. 3d 97, 112 (D.D.C. 2024) (citation omitted). The Court should therefore dismiss the Board and ODC.

### B. The Official-Capacity Claims Should Be Dismissed.

#### 1. The Claims Against the Individual Defendants Are Duplicative.

The United States correctly recognizes that it is the "overwhelming approach in this

district" to "summarily dismiss government officials sued in their official capacity in conjunction with suits also filed against the municipality." Opp. 24 (citation modified). That principle controls here: Because the United States has sued various official-capacity defendants alongside the entity Defendants, the official-capacity claims should be dismissed as "redundant" and "unnecessary." Mot. 28 (citation omitted). The United States' only response is to observe that the "'redundancy' rationale falls away if this Court dismisses the entity Defendants as well," Opp. 24—but Defendants agree that, to the extent this case presents an Article III controversy at all and any entity Defendants are suable, the entity Defendants are the proper parties. In that circumstance, there is no need to keep the official-capacity defendants as separate defendants in this case.

**2. Two of the Individual Defendants Are Immune from Suit.**

The United States also fails to counter Defendants' judicial-immunity arguments. Courts in this Circuit have universally dismissed claims against judicial defendants for injunctive relief concerning adjudicatory acts. Mot. 29. That is unsurprising—the D.C. Circuit "treat[s] the D.C. courts like state courts," *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1124 (D.C. Cir. 2004) (citation omitted), and "an injunction against a state court or its machinery would be a violation of the whole scheme of our Government," *Whole Woman's Health*, 595 U.S. at 39 (citation modified). The United States cites no contrary example, relying instead on dismissals the D.C. Circuit affirmed after "finding injunctive relief inappropriate" for other reasons. Opp. 26 n.14. But the fact that the D.C. Circuit affirmed the dismissal of those claims for injunctive relief reinforces rather than undermines that the analogous claims here should be dismissed.[3]

The Board chair (previously Robert L. Walker, now Margaret M. Cassidy) should also be

[3] The United States' assertion that *Pulliam* "squarely held" that judicial immunity should not apply here is also misguided. Opp. 25. Courts have resisted extending *Pulliam*'s holding outside of the specific context of Section 1983. *E.g.*, *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1393–94 (9th Cir. 1987). And even as to Section 1983, Congress expressly

dismissed because the United States seeks relief only against past judicial acts. *See* Mot. 22–23, 30–31. The United States claims it seeks "prospective relief" via an order "declar[ing] the Board's decision 'void' and enjoin[ing] the Board and Chair Walker from reissuing it." Opp. 27 & n.15 (quoting Compl. ¶ 137). But judicial immunity bars claims for "retrospective declaratory relief of a violation of federal law," *Jenkins v. Kerry*, 928 F. Supp. 2d 122, 135 (D.D.C. 2013), which is all an order "declar[ing] the Board's decision 'void'" would do. And the United States identifies no context in which the Board could "reissue" its "decision." Issuance of the Board's report completed its responsibilities in the Clark proceeding, so there is nothing to enjoin prospectively.

The United States also fails to address D.C. Bar Rule XI § 19(a), which immunizes Board Chair Cassidy "from civil suit for any conduct in the course of [her] official duties." D.C. Bar R. XI § 19(a); *see* Mot. 31. The Court may therefore treat Defendants' arguments on that issue as conceded, *see Biden*, 752 F. Supp. 3d at 112, and dismiss Chair Cassidy.

## III. <u>The Court Should Abstain Under *Younger v. Harris*.</u>

The Court should abstain from this action under *Younger v. Harris*, 401 U.S. 37 (1971). A federal suit to enjoin "state-initiated disciplinary proceedings against [a] lawyer for violation of state ethics rules" is a paradigmatic "instance[] in which the prospect of undue interference with state proceedings counsels against federal relief." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72, 79 (2013); *JMM Corp.*, 378 F.3d at 1125 (finding the District a "State" for *Younger* purposes). The United States claims *Younger* does not apply because the federal government is the plaintiff

"abrogated *Pulliam*" and "restore[d] the doctrine of judicial immunity" as it existed prior to *Pulliam*. *Colvin v. Tunnage*, 2026 WL 1174105, at *2 (D.D.C. Mar. 9, 2026) (citation modified); Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (1996). Although the United States claims "that statutory immunity applies only to Section 1983 suits by private plaintiffs," courts have rejected attempts to similarly "oversimplify" Congress's "abrogat[ion]" of *Pulliam*. *Colvin*, 2026 WL 1174105, at *2 (citation modified).

and the Clark proceedings "are harassing and in bad faith." Opp. 28. Both objections fail.

### A. *Younger* Abstention Applies in Suits by the United States.

Based on out-of-circuit cases, the United States claims *Younger* abstention is improper whenever the United States is the federal plaintiff because "the comity and federalism principles underpinning *Younger* disappear when the United States brings the case." Opp. 28–29. But the United States concedes, Opp. 31, that the Sixth Circuit held the opposite in *United States v. Ohio*, 614 F.2d 101 (6th Cir. 1979), concluding that "[a]bstention from exercise of federal jurisdiction is not improper simply because the United States is the party seeking a federal forum," *id.* at 104.

The United States downplays *Ohio* and claims the Sixth Circuit "does not even appear to follow" it, Opp. 31, but *Ohio* is expressly incorporated in the case the United States cites, *United States v. Anderson Cnty.*, 705 F.2d 184, 186 (6th Cir. 1983). Nor did *Ohio* misapply *Leiter Minerals, Inc. v. United States*, 352 U.S. 220 (1957). *Contra* Opp. 32. Like *Leiter*, *Ohio* involved state-law claims brought by the United States in federal court, a posture implicating specific abstention issues that *Ohio* examined. 614 F.2d at 105. Nothing in *Leiter*, which addressed the Anti-Injunction Act, 28 U.S.C. § 2283, bars applying *Younger* abstention in U.S.-plaintiff cases.

By contrast, the cases the United States cites all relied on specific elements militating against abstention that are not present here. In *United States v. Composite State Board of Medical Examiners*, 656 F.2d 131 (5th Cir. Unit B Sep. 1981), the Fifth Circuit included a lengthy discussion of the particular factual circumstances that made abstention inappropriate in that case, including that the United States sought relief for individuals "who [we]re not the subject of pending actions in state court," that the United States would "be forced to alter its policies" during the pendency of the state proceeding, and that the state court was not "more qualified to hear the case." *Id.* at 136–38. None of the same factors exist here: the United States does not seek relief for any attorneys besides Clark; it does not allege a need to alter any policies as a result of the ongoing

proceedings; and the D.C. Court of Appeals is better qualified to address the issues the United States raises, which depend in large part on speculation about how that court will rule.

The cited Ninth Circuit decision is similarly distinct. In *United States v. Morros*, 268 F.3d 695 (9th Cir. 2001), a split Ninth Circuit panel refused to abstain from adjudicating the United States' challenge to a Nevada nuclear waste storage statute, which the state had cited to deny the federal government's water permit applications for a storage facility Congress authorized at Yucca Mountain. *See id.* at 698–99. The panel majority held that deferring to the state proceeding was unwarranted because "the state and federal governments" had a long history of disputes over Yucca Mountain, meaning they "[we]re in direct conflict before they arrive[d] at the federal courthouse." *Id.* at 707–08 (citation modified). Here, no long-running battle between the federal and D.C. governments over attorney discipline would render it "disingenuous" for this Court to "[a]bstain[] now." *Id.* at 708. Indeed, no such conflict existed until the United States filed this suit.

The Second Circuit's decision in *Trump v. Vance*, 941 F.3d 631 (2d Cir. 2019), is even further afield. There, the court held only that abstention was inappropriate "on the facts before [it]": namely, where "a county prosecutor . . . has opened a criminal investigation that involves a sitting President." *Id.* at 638. Needless to say, this case involves nothing similar.

The United States separately argues that *Younger* does not apply to suits by federal plaintiffs not involved in a challenged state proceeding except "in the extraordinary situation in which the interests of the state defendant and the federal plaintiff are so 'intertwined' as to be considered identical." Opp. 32 (citation omitted). Despite case law setting a lower threshold, *see* Mot. 34–35, the United States argues it is not subject to abstention because it has "different interests" from Clark, Opp. 32. But the relief the United States seeks belies that claim. Unlike its complaint in *Composite State Board*, which sought a declaration addressing individuals who were

"not the subject of pending actions in state court," 656 F.2d at 137–38, the only remedy the United States requests here is for the Court to halt and void the Clark proceeding, *see* Compl. ¶ 137. The United States has thus made its interests in the Clark proceeding no broader than Clark's own. For that reason, abstention would not deny a "'full and fair opportunity to litigate' [the United States'] constitutional claims," Opp. 34 (quoting *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986)), which sweep no more broadly in the relief they seek than the defenses Clark himself raises, *see* Mot. 33, 45; Opp. 32–33.

In any event, whether the federal and state parties' interests are intertwined is not in itself dispositive for abstention. Opp. 33. Rather, the question for *Younger* is whether the federal "plaintiffs' interests are so inextricably intertwined" with the state defendant's "that 'direct interference with the state court proceeding is inevitable.'" *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 82 (2d Cir. 2003) (citation omitted). Here, interference with Clark's disciplinary proceeding is not merely "inevitable"—it is the very object of the United States' suit. In these exceptional circumstances, *Younger* abstention applies.

### B. ***Younger*'s Narrow Bad Faith Exception Is Inapplicable.**

The United States cannot resort to *Younger*'s "narrow" bad faith exception. *In re Al-Nashiri*, 835 F.3d 110, 130 (D.C. Cir. 2016). The exception applies only in "extraordinary circumstances," which "include situations in which there is a showing of bad faith or harassment by state officials responsible for the prosecution, or where the state law to be applied . . . is flagrantly and patently violative of express constitutional prohibitions." *JMM Corp.*, 378 F.3d at 1122 (citation modified). The United States focuses on the harassment prong, which requires pleading "'substantial,' nonconclusory allegations that the Disciplinary Counsel defendants have pursued the matters [against Clark] 'with[out] any expectation of' sustaining the charges against him." *Klayman v. Lim*, 830 F. App'x 660, 663 (D.C. Cir. 2020) (quoting *Younger*, 401 U.S. at

48). But the United States does not dispute that it makes no such allegations here.

Instead, the United States invokes out-of-circuit decisions that marginally expand the exception to reach "prosecutions . . . brought for the purpose of chilling or preventing a defendant from exercising his or her constitutional rights." *Phelps v. Hamilton*, 59 F.3d 1058, 1065 n.12 (10th Cir. 1995); *see Lewellen v. Raff*, 843 F.2d 1103, 1109–10 (8th Cir. 1988). But the United States does not plausibly allege facts to satisfy this non-controlling framework either. It principally claims that "[t]he disciplinary proceedings are harassing and in bad faith because they come from Defendants' animus toward federal attorneys overseen by the current President." Opp. 34. But the Complaint lacks support for that factual assertion, and regardless, the United States' own authority holds that "animus or ill-will between the parties does not, by itself, constitute retaliation" that might trigger the bad faith exception. *Phelps*, 59 F.3d at 1067. Further, the cases the United States cites involved retaliation for the plaintiffs' personal *speech*. *See Phelps*, 59 F.3d at 1065 n.12; *Lewellen*, 843 F.2d at 1109–13; *Cullen v. Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994). None supports the notion that the bad faith exception could apply because a disciplinary proceeding concerned a federal attorney's execution of "his Article II duty." Opp. 35.

The United States half-heartedly raises the second "extraordinary circumstance[]" contemplated by the D.C. Circuit, *JMM Corp.*, 378 F.3d at 1122, asserting that the Clark proceeding is "predicated upon a law that is 'flagrantly and patently' unconstitutional" because "Defendants are applying the professional responsibility rules in flagrant violation of Article II and the intergovernmental immunity doctrine," Opp. at 36 (citation omitted). But that exception concerns a *law* that is egregiously unconstitutional on its face—not an allegedly unconstitutional *application* of a lawful provision. *See Younger*, 401 U.S. at 53–54; *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002) ("A state proceeding that is legitimate in its

purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception."). The United States does not (and could not) identify any law at issue in the Clark proceeding that is "flagrantly and patently" unconstitutional.

## IV. The United States' Claims Fail on the Merits.

### A. Count I Fails to State a Claim.

The United States' claim that Defendants are directly regulating the federal government in violation of the Supremacy Clause (Count I) fails for two independent reasons.

#### 1. The United States Has Not Adequately Alleged Any "Direct" Regulation of the Federal Government.

First, this Court should dismiss Count I because the Complaint does not adequately allege that any of the Defendants are "directly" regulating the federal government by participating in disciplinary proceedings against Clark. Significantly, the United States does not—and cannot—dispute that state laws may permissibly "touch" federal employees "remotely by a general rule of conduct" or "affect incidentally the mode of carrying out the employment," such as laws "regulating the mode of turning at the corners of streets." *Johnson v. Maryland*, 254 U.S. 51, 56–57 (1920). This case presents a textbook example of such a local law. Indeed, the disciplinary proceedings against Clark concern one of the most fundamental "rules of the road" for attorneys—the rule that attorneys should not "[e]ngage in" (or "attempt" to engage in) "conduct involving dishonesty" or "misrepresentation." D.C. R. Pro. Conduct 8.4(a), (c); Report and Recommendation of Bd. on Pro. Resp. at 5–6, 104, ECF No. 23-5.

The United States claims that Defendants are "attempting to directly regulate a federal attorney's deliberative communication . . . made as part of his core federal dut[ies]." Opp. 40. But the inquiry Defendants are undertaking into Clark's communications is narrow, addressing only

whether Clark violated the bedrock ethics rule barring dishonesty. The enforcement of such an "incidental or nonburdensome" rule is permissible and in no way impedes a government attorney's representation of the United States. *Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.*, 642 F.2d 527, 536 & n.77 (D.C. Cir. 1980). Just as states may apply traffic laws to postal employees engaged in their "core federal duties" of delivering mail, *Johnson*, 254 U.S. at 56–57, or bar Border Patrol agents from needlessly destroying fencing when performing their "core federal duties" of patrolling the border, *Texas v. DHS*, 123 F.4th 186, 193–94, 205–08 & nn.23–24 (5th Cir. 2024), so too may Defendants apply rules requiring honesty to Department attorneys engaged in their "core federal duties" of advocating for the federal government.

True, state laws qualify as direct regulation of the federal government when they "require[] qualifications" beyond those deemed "sufficient" by the federal government. *Johnson*, 254 U.S. at 57; *see* Opp. 38–39. For example, state requirements that federal postal employees submit to a driving test, pay a fee, and obtain a driver's license before performing their mail-delivery duties are generally impermissible absent congressional consent. *Johnson,* 254 U.S. at 55–57. But the United States does not challenge the requirement that Department attorneys obtain state licenses to practice law; nor could it, as Congress expressly required such licenses in 28 U.S.C. § 530C(c). *Johnson*'s holding on the enforceability of state licensing requirements thus has no bearing.

**2. Congress Has Expressly Authorized the D.C. Disciplinary Proceedings the United States Seeks to Halt.**

Even if the pending proceeding against Clark amounted to "direct regulation" of the federal government, Count I must be dismissed because Congress has clearly authorized the proceeding, thus eliminating any Supremacy Clause problem. *United States v. Washington*, 596 U.S. 832, 839 (2022). The McDade Amendment specifies that Department attorneys "shall be subject" to state ethics "laws and rules" to the "same extent and in the same manner as other attorneys in [the]

State." 28 U.S.C. § 530B(a). Department attorneys who have voluntarily joined the D.C. Bar thus must comply with D.C.'s Rules of Professional Conduct and are subject to disciplinary procedures, just like other members of the D.C. Bar.

Significantly, the United States does not take issue with that general rule, nor does it dispute that the proceedings against Clark concern "[e]thic[s]" rules within the meaning of the statute. The United States nonetheless argues that the McDade Amendment does not apply when the "application of [an] ethics rule conflicts with federal substantive law," and it contends that applying Rule 8.4 to Clark would "conflict[] with" Article II's "command that the executive branch 'take Care that the Laws be faithfully executed.'" Opp. 41 (citation modified). The contours of the United States' argument are unclear, but to the extent it contends that the proceedings against Clark *violate* Article II, that argument fails for the reasons discussed *infra* in Section IV.C.

If instead the United States argues that the proceedings against Clark are *compatible* with Article II but nonetheless fall outside the scope of the McDade Amendment because they concern a federal official's exercise of Article II functions, that contention is equally untenable. Opp. 42. The McDade Amendment contains no exception for officials exercising Article II functions, and it is hard to understand what function the statute would serve if it did. Such an interpretation is also contradicted by the history of the statute, which was enacted as "a rebuke" of the Department's prior position that certain state ethics rules were "preempted" as "infring[ing] on legitimate federal law enforcement practices." Amicus Br. of Former U.S. Attorneys General at 17–20, ECF No. 45-1. As the three former Attorneys General supporting the United States explain, the McDade Amendment unquestionably directs that "States . . . supply the substantive standards that each federal government attorney must follow." *Id.* at 17; *see also* Mot. 5–6, 40. Full stop.[4]

[4] These and other *amici* advance additional arguments on issues not raised by the parties,

That conclusion is supported by *Martin v. United States*, 605 U.S. 395 (2025), which addressed whether the United States could defeat a suit under the Federal Tort Claims Act (FTCA) "by invoking the Supremacy Clause and showing that a federal officer's acts had some nexus with furthering federal policy and complied with the full range of federal law." *Id.* at 409 (citation modified). Using language similar to the McDade Amendment, the FTCA generally makes the United States liable in tort "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, under state law, *id.* § 1346(b)(1). *Martin* explained that "[b]ecause the FTCA's liability rule incorporates state law, in most cases there is no conflict for the Supremacy Clause to resolve." 605 U.S. at 410 (explaining the Supremacy Clause remains relevant where federal law preempts state law with respect to both private and governmental actors). The Court concluded that *In re Neagle*, 135 U.S. 1 (1890)—a decision the United States relies on, Opp. 37, holding that state law sometimes does not apply to federal officials performing federal functions—"does not speak to a situation where, as here, Congress has entered the field and expressly bound the federal government to accept liability under state tort law on the same terms as a private individual." *Martin*, 605 U.S. at 412 (citation modified). "[N]o private individual could deploy *In re Neagle* to his advantage," and thus neither could the federal government. *Id.* That principle applies equally here and forecloses any argument that Department attorneys performing Article II functions are exempted from the McDade Amendment.

The McDade Amendment's implementing regulations also do not move the needle. *Contra* Opp. 41–42. This Court need not decide whether the regulations are correct that the McDade

---

such as the question whether states may enforce their ethics rules against Department attorneys. ECF No. 45-1, at 17. In accordance with longstanding precedent, this Court should decline these invitations to address non-jurisdictional arguments that the parties themselves have not pressed. *See, e.g.*, *Huerta v. Ducote*, 792 F.3d 144, 150–53 (D.C. Cir. 2015).

Amendment did not "alter federal substantive, procedural, or evidentiary law." 28 C.F.R. § 77.1(b); *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400, 412 (2024) (courts must exercise "independent judgment" to determine "best reading of the statute"). As explained, the proceedings against Clark do not conflict with Article II, so the cited regulatory text is not relevant.

For similar reasons, the United States' out-of-circuit decisions construing the McDade Amendment have no application here. Opp. 43. In *United States v. Lowery*, 166 F.3d 1119 (11th Cir. 1999), the Eleventh Circuit declined to exclude evidence arguably obtained in violation of state ethics rules, explaining that federal rules of evidence—not ethics rules—govern the admissibility of evidence. *Id.* at 1124–25. In *Stern v. U.S. District Court*, 214 F.3d 4 (1st Cir. 2000), the First Circuit invalidated a district court rule governing subpoenas, reasoning that it was "more than an ethical standard," "impermissibly interfere[d] with federal grand jury practice[,] and transcend[ed] district court rulemaking authority." *Id.* at 15–20. Finally, *Supreme Court of New Mexico* held that a state ethics rule concerning subpoenas should not be applied to Department attorneys in the grand-jury context because it was preempted by federal law governing grand juries. 839 F.3d at 920–28. These decisions have no bearing here, given the absence of any conflict with any federal substantive, procedural, or evidentiary law. This Court thus need not decide if these cases are consistent with the McDade Amendment's unqualified mandate to apply state ethics rules to Department attorneys. *Cf. id.* at 930–31 (Tymkovich, C.J., concurring in part and dissenting in part) (McDade Amendment mandates compliance with *any* state "ethics" rule).

### B. Count II Fails to State a Claim.

Count II—the United States' Supremacy Clause claim based on a discriminatory-regulation theory—should also be dismissed. The United States does not dispute that its claim fails if there is "no discrimination . . . between similarly situated federal and [non-federal] employees." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 443 (1999). Yet the United States fails to identify even *one*

non-federal attorney who (1) engaged in conduct materially similar to Clark's; and (2) was treated more leniently by Defendants. That failure is fatal to the United States' claim.

Contrary to the United States' argument, Opp. 45, the bare allegation that similar charges have never been pursued against a non-federal attorney is not enough, as the absence of such charges does not show a "similarly situated" comparator exists and received differential treatment. *Acker*, 527 U.S. at 443; *McHenry Cnty. v. Raoul*, 44 F.4th 581, 594 (7th Cir. 2022); *cf. Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1137 (D.C. Cir. 2023) (explaining, in addressing motion to dismiss selective-enforcement claim, that "courts must assess whether a plaintiff is similarly situated to a person against whom the law was not enforced"). Nor is it *Defendants'* burden to *disprove* the United States' claim, as the United States implies. Opp. 45.[5]

At bottom, the United States' allegations suggest, at most, that misconduct connected to a draft document—and dishonest advocacy of the sort the Board found occurred here—is rare or does not come to Defendants' attention with any frequency. The Board certainly believed that "no other cases" of conduct "fully comparable" to Clark's conduct existed. Report and Recommendation of Bd. on Pro. Resp. at 99, ECF No. 23-5 (citation modified); *id.* at 6, 103. And that is unsurprising, given that Clark's conduct came to light as a result of congressional investigations following the attack on the United States Capitol on January 6, 2021. *See In re Clark*, 311 A.3d 882, 885 (D.C. 2024). The unusual nature of Clark's conduct does not mean Defendants are discriminating against the federal government by applying well-established,

[5] The only person the United States identifies as having been treated comparatively leniently is Kevin Clinesmith, another attorney for the *federal government*. Opp. 46. Even putting aside the flaws in the United States' allegations of differential treatment, the allegations concerning Clinesmith only underscore the lack of discrimination against the federal government. Mot. 43 n.7. The United States' related argument that Defendants have exhibited "animus toward federal attorneys *overseen by the current President*" is baseless and has no relevance to Count II, which requires discrimination against the *federal government*. Opp. 46 (emphasis added).

neutral ethics rules to him. Count II should be dismissed.

### C. <u>Count III Fails to State a Claim.</u>

Finally, the United States fails to state a claim that Defendants have infringed on the President's Article II authority. The D.C. Court of Appeals has not made any finding of misconduct or imposed any disciplinary sanction on Clark, let alone rested such an action on grounds that "intrud[e] upon . . . Article II prerogatives." Compl. ¶ 131. Furthermore, both Clark and the United States may raise Article II defenses in the ongoing proceedings before the D.C. Court of Appeals—indeed, both have asserted arguments along those lines. Mot. 43–44. It cannot be unconstitutional for a court to conduct an impartial proceeding in which it will consider the very constitutional defenses the United States claims to be meritorious.

The United States' sole response is to assert, without citation or explanation, that "Defendants have no authority to even *initiate* their disciplinary process." Opp. 47 (emphasis added). But the United States concedes that it neither objects to the "structure or existence" of the D.C. Court of Appeals nor claims that the court is "incapable of hearing immunity and other constitutional claims." *Id.* Its sole objection appears to be that it believes that Clark is immune from discipline and that the case against him should be dismissed. But the United States fails to sufficiently develop the argument or point to any legal authority supporting its position and therefore has forfeited the claim. *E.g.*, *Giron v. Zeytuna, Inc.*, 597 F. Supp. 3d 29, 48 (D.D.C. 2022). In any event, the proper way to obtain a dismissal on grounds of immunity is to ask the adjudicating court to grant such a dismissal. *See, e.g.*, *Johnson v. Fankell*, 520 U.S. 911, 921 (1997). The United States may not file a collateral case to short-circuit that judicial proceeding based on speculation about how the D.C. Court of Appeals might rule.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

Date: September 10, 2026

/s/ Elizabeth B. Prelogar
ELIZABETH B. PRELOGAR [1011890]
Joshua Revesz [1616617]
Elissa R. Lowenthal [90007735]
Dev P. Ranjan [90019329]
Cooley LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, D.C. 20004
Phone: (202) 842-7800
Email: eprelogar@cooley.com

*Counsel for Anna Blackburne-Rigsby, in her official capacity as Chief Judge of the District of Columbia Court of Appeals; and the District of Columbia Court of Appeals*

/s/ Benjamin C. Mizer
BENJAMIN C. MIZER [204906]
Samuel I. Ferenc [1616595]
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, D.C. 20001-3743
Phone: (202) 942-5000
Email: benjamin.mizer@arnoldporter.com

*Counsel for Margaret M. Cassidy, in her official capacity as Chair of the Board on Professional Responsibility; and the Board on Professional Responsibility*

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

/s/ Mitchell P. Reich
MITCHELL P. REICH [1044671]
Senior Counsel to the Attorney General

/s/ Matthew R. Blecher
MATTHEW R. BLECHER [1012957]
Chief, Equity Section, Civil Litigation Division

/s/ Conrad Z. Risher
CONRAD Z. RISHER [1044678]
Adam J. Tuetken [242215]
Assistant Attorneys General
Karthik P. Reddy [1048848]
Special Assistant Attorney General
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 279-1261
Email: mitchell.reich@dc.gov

*Counsel for the District of Columbia*

*/s/ Sydney Foster*
SYDNEY FOSTER [982340]
Joseph W. Mead [1740771]
Kyle R. Freeny [1684764]
Fran Swanson [90025765]
Washington Litigation Group
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
Phone: (202) 521-8764
Email: sfoster@washingtonlitigationgroup.org

*Counsel for Hamilton P. Fox III, in his official capacity as District of Columbia Disciplinary Counsel; Theodore (Jack) Metzler, in his official capacity as District of Columbia Assistant Disciplinary Counsel; and the D.C. Office of Disciplinary Counsel*