**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HAMILTON P. FOX III, *et al.*,**<br><br>**Defendants.** | **No. 1:26-cv-01658-RJL** |

**ODC DEFENDANTS' SUPPLEMENTAL REPLY MEMORANDUM**
**IN SUPPORT OF DEFENDANTS' CONSOLIDATED**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................ii

ARGUMENT ....................1

I. The United States Mischaracterizes the Issues Presented in the Clark Proceeding....................1

II. Count III Is Forfeited and Meritless....................3

CONCLUSION....................5

## TABLE OF AUTHORITIES

### Cases

*Apprio, Inc. v. Zaccari*,
104 F.4th 897 (D.C. Cir. 2024) ........ 4

*Capitol Servs. Mgmt. v. Vesta Corp.*,
933 F.3d 784 (D.C. Cir. 2019) ........ 2

*Cheney v. U.S. Dist. Ct.*,
542 U.S. 367 (2004) ........ 5

*Clark v. Sweeney*,
607 U.S. 7, 9 (2025) ........ 4

*Ex parte Curtis*,
106 U.S. 371 (1882) ........ 4

*Giron v. Zeytuna, Inc.*,
597 F. Supp. 3d 29 (D.D.C. 2022) ........ 4

*Trump v. Thompson,*
142 S. Ct. 680 (2022) ........ 5

*Trump v. Thompson*,
20 F.4th 10 (D.C. Cir. 2021) ........ 5

*United States v. Nixon*,
418 U.S. 683 (1974) ........ 5

### Statutes

18 U.S.C. § 201(b)(2) ........ 4

18 U.S.C. § 208(a) ........ 4

28 U.S.C. § 530B(a) ........ 3

As explained in Defendants' joint reply brief in support of their motion to dismiss (Doc. 56), this Court should dismiss the United States' extraordinary suit that seeks to short-circuit attorney disciplinary proceedings pending in the D.C. Court of Appeals against Jeffrey Clark. The Defendants associated with the Office of Disciplinary Counsel (ODC) submit this supplemental reply brief to make two additional points. *See also* Doc. 24 (ODC Defendants' supplemental brief).

## I. <u>The United States Mischaracterizes the Issues Presented in the Clark Proceeding.</u>

Although the United States' claims are without merit no matter how one looks at the D.C. Court of Appeals proceeding, it is telling that the United States continues to mischaracterize the legal and factual issues that are pending before that court.

First, the disciplinary proceedings do not seek to "dictate the content" of "internal government deliberations," as the United States hyperbolically asserts. Doc. 41, at 1 (Opp.). The Clark case is also "not about vigorous debate." Doc. 23-5, at 28. Even if Clark is disciplined for his actions, Department attorneys will retain free rein to offer any substantive opinions in internal deliberations; they must avoid only dishonesty. *See* Doc. 23-1, at 3, 9-10, 38-39; Doc. 24, at 3-5.

Second, no one is arguing that Clark should be disciplined "merely" because his superiors "disagreed" with his "proposal" to send a letter he drafted to Georgia officials about the 2020 election. *Contra* Opp. 5. Nor is Clark's intent irrelevant to the disciplinary proceedings, as the United States asserts (at 10). *See* Doc. 23-5, at 68-69. Rather, as explained in the ODC Defendants' supplemental brief, the question before the D.C. Court of Appeals is whether to sanction Clark based on findings by the Board on Professional Responsibility that Clark (1) doggedly pressed his superiors to transmit a letter containing *false statements* that the Department of Justice's investigations into election irregularities had revealed outcome-determinative concerns; and (2) did so even though he *knew* those factual statements were false. Doc. 24, at 3-5 (citing relevant analysis of the Board).

The United States tries to paint a different picture of the Board's analysis, claiming that the Board recommended discipline simply because Clark proposed sending a letter expressing "inchoate views" that "differed from the agency's final views." Opp. 5. But the Board found that Clark "did not make a proposal regarding a debatable point." Doc. 23-5, at 73. Instead, the Board determined that the letter Clark relentlessly pressured his superiors to send included "intentionally false statements" about issues of fact—namely, "the results of the Justice Department's investigation." *Id.* at 6; *id.* at 95 ("[T]he dispute here was a dispute over the facts: What had the Justice Department learned in its investigations?"). The Board relied in part on testimony by a former Department official who was second-in-command at the relevant time. That official explained that even if Clark's letter had been sent and thus ultimately represented the Department's "position," the letter *still* "wouldn't be true." *Id.* at 72 (citation omitted). The official observed that the "attorney general . . . can't choose to lie" and convey in a letter "the opposite of what the department has actually concluded" in its fact-intensive investigations. *Id.* at 73 (citation omitted). Even the Board's statement that the United States selectively quotes, *see* Opp. 5; Compl. ¶ 75, emphasized that Clark sought to misrepresent these facts: The Board explained that "the question is *not* whether [*Clark*] believed there were problems with the election," but "whether the *Justice Department* had *uncovered potentially outcome-determinative issues* with the election," and Clark "knew" it had not. Doc. 23-5, at 78 (final emphasis added); *see id.* at 5, 29, 73-78, 101.

Of course, it is for the D.C. Court of Appeals—not this Court—to determine whether the Board's findings are supported by the record and justify a determination that Clark violated ethics rules. Doc. 23-1, at 4. But this Court may take judicial notice of not just the "existence" of the Clark proceedings, Opp. 40 n.16, but also the scope of the issues being litigated in them. *Capitol Servs. Mgmt. v. Vesta Corp.*, 933 F.3d 784, 789 (D.C. Cir. 2019) (courts may take judicial notice of "pleadings in related actions as evidence of what was alleged"). And the narrow scope of the issues pending in the D.C. Court of Appeals is relevant to this Court's analysis in at least two ways.

First, given the discrete issues presented in that case, there can be no question that the D.C.

Court of Appeals proceedings do not directly regulate the federal government in violation of the Supremacy Clause; those proceedings instead involve only a permissible "general rule of conduct" with "incidental" effects on Department attorneys' representation of the United States. Doc. 24, at 2-3 (cleaned up). Tellingly, the United States' argument to the contrary fails to grapple with the limited issues in play before the D.C. Court of Appeals. *See* Opp. 40 & n.16.[1] Second, the narrowness of the issues pending before the D.C. Court of Appeals underscores why it is so implausible for the United States to claim that the Clark proceedings are chilling Department attorneys from providing candid legal advice. Indeed, even the United States acknowledges that its chilling-effect theory rests in part on its belief that the Board and ODC have urged that Clark be disciplined "irrespective of his intent," *id.* at 10 (cleaned up)—a belief that is incorrect, as just explained. The United States' standing and ripeness arguments resting on a chilling-effect theory are therefore meritless for these additional reasons. *See* Doc. 56, at 2-4.

## II. <u>Count III Is Forfeited and Meritless.</u>

The United States makes only a cursory argument that it has pleaded a viable Article II claim in Count III. As the ODC Defendants set forth in their supplemental brief in support of the motion to dismiss, Article II does not grant officials in the Executive Branch other than the President absolute immunity in criminal and civil proceedings, and even Presidents have been subject to attorney disciplinary proceedings. Doc. 24, at 6-8. In addition, the deliberative-process privilege is a qualified privilege against the disclosure of information; it has nothing to say about immunity, let alone absolute immunity in the attorney-discipline context. *Id.* at 9-10.

The United States responds to none of this, and it does not cite *any* relevant legal authority in the entirety of its one-page section addressing Count III. Opp. 46-47. Thus, it has forfeited any argument it has. "In our adversarial system of adjudication, [courts] follow the principle of party

[1] In any event, the McDade Amendment, 28 U.S.C. § 530B(a), authorizes the disciplinary proceedings against Clark. *See* Doc. 56, at 20-23; Doc. 24, at 5-6.

presentation" where the "parties frame the issues for decision." *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (cleaned up). A "party forfeits an argument by mentioning it only in the most skeletal way, leaving the court to do counsel's work." *Apprio, Inc. v. Zaccari*, 104 F.4th 897, 910 (D.C. Cir. 2024) (cleaned up). Having failed to develop its legal argument or respond to any of the points raised by the ODC Defendants in their supplemental brief, the United States has forfeited Count III. *See, e.g.*, *Giron v. Zeytuna, Inc.*, 597 F. Supp. 3d 29, 48 (D.D.C. 2022) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." (cleaned up)).

Even if not forfeited, the United States' Article II theory is baseless. The United States does not contend that members of the Executive Branch enjoy any derivative immunity from the President. Instead, the United States offers a startling premise: "Article II prevents *any* regulation of the executive branch's internal deliberations." Opp. 47 (emphasis added).[2] It cites no case in support, and the ODC Defendants are aware of none. Under the United States' extraordinary view, for example, Congress could not forbid Executive Branch employees from recommending that a contract be awarded to companies they own, 18 U.S.C. § 208(a), or to entities that supplied them with a bribe, *id.* § 201(b)(2). That is not, and has never been, the law. *See, e.g.*, *Ex parte Curtis*, 106 U.S. 371, 372-73 (1882) (explaining Congress has long regulated "the conduct of certain officers and employe[es] of the United States" in order "to promote efficiency and integrity in the discharge of official duties, and to maintain proper discipline in the public service").

The only even arguably relevant case law that the United States cites for its Article II

[2] As set forth in the ODC Defendants' supplemental brief, that premise has little relevance here, as "'this case is not about vigorous debate,' but about all the steps that Clark took to try to compel the Department of Justice to issue a letter containing a statement of fact that Clark knew was false." Doc. 24, at 9 (cleaned up); *see also id.* at 3-5.

position is found some ten pages before it advances arguments about Count III, but the United States makes no attempt to connect the cases it cites to the Article II theory it advances. Rather, the United States cites cases for the unremarkable proposition that the "President[]" has an Article II "interest in the confidentiality of his decisionmaking." Opp. 37 (citing *United States v. Nixon*, 418 U.S. 683, 708 (1974); *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 385 (2004)). Tellingly, the United States does not argue that those decisions concerning the qualified presidential-communications privilege apply here. *Cf. Trump v. Thompson*, 20 F.4th 10, 25-26 (D.C. Cir. 2021) (describing narrow circumstances in which privilege applies and explaining it is qualified and can be waived), *stay of mandate & injunction pending review denied*, 142 S. Ct. 680 (2022).[3] Moreover, as explained in the ODC Defendants' supplemental brief (at 9-10), the existence of a *qualified* privilege against the *disclosure of information* does nothing to support the alarming claim of *immunity* the United States asserts. And inferring immunity from a privilege against disclosure makes no sense; the attorney-client privilege, for example, provides a robust shield against disclosure of information, but no one doubts that state courts can sanction attorneys for misconduct committed in the scope of the attorney-client relationship. In sum, the United States' skeletal and unprecedented theory of Article II power lacks any support, and Count III should be dismissed.

**CONCLUSION**

This Court should dismiss the Complaint for the foregoing reasons and for the reasons articulated in Defendants' other briefs supporting the motion to dismiss (Docs. 23-1, 24, 56).

---

[3] In the disciplinary proceedings the United States challenges, Clark argued that certain evidence was protected by the presidential-communications privilege. The Board disagreed, affirming the Hearing Committee's determination that Clark "did not have standing to assert privileges on behalf of the President" and that the privilege "could not be asserted over information that had already been publicly disclosed." Doc. 23-5, at 38. On the latter point, the Hearing Committee explained that information relevant to Clark's disciplinary proceeding had been "made public" through congressional hearings with the permission of then-former President Trump. Doc. 24-1, at 2-4 & n.1 (applying case law holding that privilege can be waived).

Date: September 10, 2026

Respectfully submitted,

*/s/ Sydney Foster*
Sydney Foster [982340]
Joseph W. Mead [1740771]
Kyle R. Freeny [1684764]
Fran Swanson [90025765]
Washington Litigation Group
1717 K Street, NW, Suite 1120
Washington, DC 20006
Phone: (202) 521-8764
Email: sfoster@washingtonlitigationgroup.org

*Counsel for Hamilton P. Fox III, in his official capacity as District of Columbia Disciplinary Counsel; Theodore (Jack) Metzler, in his official capacity as District of Columbia Assistant Disciplinary Counsel; and the D.C. Office of Disciplinary Counsel*